UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SARAH PATELLOS, | ) | |
| on behalf of herself and others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| vs. | ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| HELLO PRODUCTS, LLC | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |
| | ) | |

Plaintiff Sarah Patellos ("Plaintiff") brings this Class Action against Hello Products, LLC ("Hello" or "Defendant") on behalf of herself and all others similarly situated, and alleges the following based on her personal knowledge and the investigation of her counsel:

## I.   INTRODUCTION

1.      This is a consumer Class Action against Defendant Hello for false and misleading representations about its line of toothpastes containing activated charcoal.

2.       Activated charcoal is highly porous and has adsorptive qualities that can be useful in certain contexts. In recent years, health and beauty products containing activated charcoal have become a consumer sensation. Marketers, celebrities and social media influencers tout a variety of activated charcoal products for purported 'de-toxifying' properties and other nebulous, and often extreme, claims on enhanced wellbeing and health. Consumers have been willing to pay a premium for these alluring and trendy charcoal products.

3.      Defendant Hello, a company that sells oral care products, observed this trend and decided to capitalize on growing consumer interest. Hello developed a line of oral care products containing activated charcoal, including the following toothpastes: "hello activated charcoal epic

1

whitening fluoride free toothpaste," "hello activated charcoal epic whitening fluoride toothpaste," "hello activated charcoal whitening fluoride free toothpaste," "hello activated charcoal + hemp seed oil epic whitening fluoride free toothpaste," "hello activated charcoal + natural dragon fruit epic whitening fluoride free toothpaste," and "hello charcoal + natural acai epic whitening fluoride free toothpaste."[1] Hereinafter, these products as well as any other Hello toothpastes containing activated charcoal that have been available for purchase within the relevant statute(s) of limitations, will be referred to collectively herein as the "**Charcoal Toothpastes.**"

4.    In extensive online and print marketing, Defendant promotes its line of Charcoal Toothpastes as safe, "whitening," "de-toxifying," and generally beneficial to oral health. Multiple claims are printed on the product packaging and tube labeling for the Charcoal Toothpastes, including: "whitens naturally," "noticeably whiter teeth," and/or "epic whitening." The packaging and tubes also state the activated charcoal "is a detoxifier that removes surface stains and freshens breath." Similar claims are made repeatedly on the Hello website, on Amazon.com, and elsewhere in extensive online marketing and print advertising. Hello often employs the marketing slogan: "it's simple, black paste equals white teeth."

5.    Hello's marketing strategy has been very successful, and the Charcoal Toothpastes have become one of the top sellers in its product category. However, the message conveyed to consumers – that the Charcoal Toothpastes are gentle and safe for everyday use and are effective as a natural "epic" whitener and de-toxifier – is misleading and deceptive, and lacks a factual basis.

---

[1] Defendant generally avoids the use of capitalized letters in its brand name ("hello products"), product names and nearly all of its advertising and marketing materials. For purposes of this Complaint, capitalization is used when referring to Hello in its capacity as the Defendant. Otherwise, the Complaint will replicate the same use of lower case lettering used by Hello in its product names, descriptors and other written representations on its product packaging and in print and online marketing materials.

6.      For the types of marketing claims at issue, the Federal Trade Commission ("FTC") requires that Hello have competent and reliable evidence for its claims, at the time those claims were made. But in its speed to get the products to consumers, Hello failed to conduct competent, independent clinical testing and research on its Charcoal Toothpastes, or seemingly to review available scientific literature on the safety and effectiveness of activated charcoal in toothpastes. Hello did not, and never has, possessed the requisite clinical or scientific substantiation to support its multiple assertions on the benefits, safety and efficacy of activated charcoal for oral hygiene use.

7.      In fact, Hello knew, or would have known, that its claims lacked proper substantiation, had it looked into relevant and available scientific literature. Scientific literature on the safety and efficacy of activated charcoal in dentifrice (i.e., pastes or powders used to clean teeth), including publications in the Journal of American Dental Association (JADA) and the British Dental Journal (BDJ), have concluded that activated charcoal is not effective for whitening or 'detoxifying' the mouth, and can also be unsafe and harmful. Dental professionals, consumer publications, and some mainstream media outlets have reported on the questionable effectiveness of charcoal toothpastes, and even raised serious concerns about the safety of using activated charcoal for oral hygiene. Hello knew, or should have known, its claims regarding activated charcoal in dentifrice and the Charcoal Toothpastes were false, misleading and deceptive.

8.      Hello intended for consumers to rely on its claims, which are ubiquitous on the product packaging and online. Hello intended to induce consumers to purchase the Charcoal Toothpastes, and to do so at the $1 to $2 price premium Hello charged over its other toothpastes.

9.      Plaintiff and members of the potential class have been deceived by Hello's representations and omissions of material facts. Plaintiff and members of the potential class

3

reasonably relied upon Hello's claims and attributed value to Hello's false promises that the products were safe and gentle for everyday use and would be effective at teeth whitening as well as 'de-toxifying' the mouth. In reality the products provide none of those benefits. Some consumers got tired of waiting for the promised results and moved on to other products that could deliver as promised. Other, less-fortunate consumers, including those with fillings, caps, or other dental work, found out the hard way that activated charcoal can cause excessive abrasion of tooth enamel and dentin, staining, irritation of gums, and other negative effects.

10.     Hello's false and misleading claims enabled it to sell the Charcoal Toothpastes in great quantity and to charge a premium for the products. Hello has successfully induced its consumers to purchase the Charcoal Toothpastes that (i) do not possess the stated benefits or effectiveness, and (ii) are deficient as compared to other toothpastes, and may cause actual harm, due to the unsuitability of activated charcoal for use in oral hygiene. Plaintiff and putative class members have suffered an ascertainable out-of-pocket loss as a direct and proximate cause of Hello's false and misleading advertising claims and marketing practices.

11.     Defendant's claims and advertisements are consumer-oriented and materially deceptive and misleading, in violation of Sections 349 and 350 of New York General Business Law. Defendant's acts and omissions also constitute false advertising, unfair competition and/or unfair, unconscionable, deceptive or unlawful acts or business practices under the consumer protection and deceptive trade practices laws of various states. Defendant's conduct also constitutes a breach of express and implied warranties, as well as violations of common law, and Defendant was unjustly enriched as a result.

12.     Plaintiff brings this proposed Class Action on behalf of herself and other similarly situated consumers in the United States who purchased Hello's Charcoal Toothpastes within the

relevant statute of limitations period (the "Nationwide Class"), as well as a proposed subclass of members who purchased the Charcoal Toothpastes in the state of New York (the "NY Subclass"), and alternative subclasses of members who purchased the Charcoal Toothpastes in various other states with materially identical applicable consumer protection and deceptive trade practices laws ("Alternative NJ Subclass and other State Subclasses") (collectively herein the "Classes"). For the alleged violations of state statutory law and common law, Plaintiff seeks, on behalf of herself and the members of the Classes, to recover compensatory and statutory damages, treble or punitive damages as available, attorneys' fees and costs, as well as declaratory and injunctive relief.

## II.   PARTIES

13.     Plaintiff Sarah Patellos is a natural person and a citizen of New York City, New York. On May 17, 2019, Ms. Patellos purchased "hello charcoal epic whitening fluoride free toothpaste." Ms. Patellos purchased the toothpaste in reliance on the representations made in Hello's marketing and advertisements, on the toothpaste packaging, and on the website where she bought the toothpaste. Plaintiff would not have purchased the product but-for Defendant's false and misleading claims that the toothpaste had de-toxifying properties and that it would "noticeably whiten teeth." She also relied on Hello's claim to be safer than other whitening toothpastes.

14.     Defendant Hello Products LLC is a citizen of the state of New Jersey. It is registered in the state of New Jersey and has its principal place of business at 363 Bloomfield Avenue, Suite 2D, Montclair, NJ 07042. Defendant is an oral care company engaged in the business of selling toothpastes, dental floss, mouthwash, and related products to consumers from its website, www.hello-products.com, and through the brick-and-mortar and online stores of third-party retailers. It conducts mass marketing campaigns and distributes its Charcoal Toothpastes throughout the United States.

### III.   JURISDICTION AND VENUE

15.     This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), as the amount in controversy exceeds $5 million, exclusive of interest and costs; it is a Class Action of over 100 members; and Plaintiff is a citizen of a state different from Defendant.

16.     This Court has personal jurisdiction over Defendant, as many of the acts and omissions giving rise to this action occurred in the state of New York, including purchases of the Charcoal Toothpaste by the Plaintiff and members of the putative Classes. Defendant has sufficient minimum contacts with the state of New York and intentionally availed itself, and continues to avail itself, of the jurisdiction of this Court through its business ventures; specifically, the promotion, sale, marketing, and distribution of their products (including the Charcoal Toothpastes) in this state through online advertising targeted at New York residents and by physical sales of its products through hundreds of different retailers' storefronts in New York.

17.     Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, as Defendant does business throughout this district (including promoting, selling, marketing, and distributing the Charcoal Toothpastes at issue), and the Plaintiff purchased the Charcoal Toothpaste in this district.

### IV.   FACTUAL ALLEGATIONS

#### A.   Background

18.     Activated charcoal is made from coal, wood, coconut shells, sawdust, bamboo (bamboo is the ingredient Hello claims its activated charcoal is made from), or similar ingredients.

The raw material is superheated, treated with different chemicals, and then superheated a second time with steam.[2]

19.     Activated charcoal has adsorptive qualities that have proven to be quite useful in certain limited contexts. For decades, it has been used in the emergency medical treatment of certain types of poisonings and drug overdoses, because, when administered correctly, it can adsorb certain heavy metals, drugs and other toxins.[3] The effectiveness of medicinal activated charcoal in the emergency room setting is limited and dependent on specific factors, such as the type of drug or toxin, timing between ingestion of the toxin and ingestion of the medicinal charcoal, and dosage of each.[4]

20.     Activated charcoal has also been used in industrial and environmental settings to extract certain organic and inorganic substances from water.[5] For example, it is sometimes used to remove excess amounts of fluoride from drinking water.[6] It is used in juice manufacturing to

---

[2]"Activated Charcoal FAQ," General Carbon Corp. [http://generalcarbon.com/facts-about-activated-carbon/activated-carbon-faq/] (last accessed June 26, 2019) (General Carbon Corp. is an activated charcoal manufacturer).

[3]See generally, Robert W. Derlet & Timothy E. Albertson, "Activated Charcoal—Past, Present and Future," 145 West J. Med. 493 (Oct. 1986) [https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1306980/pdf/westjmed00158-0063.pdf].

[4]Id.; see also Derlet & Alberston, supra note 3, at 493–92 & Table 1; Jennifer A. Lowry, "Use of Activated Charcoal in Pediatric Populations," World Health Organization: Subcommittee of Expert Committee on the Selection and Use of Essential Medicines, Jan. 2008, at 2, [https://www.who.int/selection_medicines/committees/subcommittee/2/charcoal_rev.pdf ] (reviewing literature on medical use of activated charcoal).

[5]See generally "The History of Activated Carbon," Jurassic Activated Carbon, Feb. 9, 2014 [https://www.jurassiccarbon.com/blogs/news/12186281-the-history-of-activated-carbon].

[6]Manisha Poudyal & Sandhya Babel, "Removal of Fluoride using Granular Activated Carbon and Domestic Sewage Sludge," 82 Int'l Proceedings of Chem., Biological, and Envtl. Eng'g 139 (2015) [http://www.ipcbee.com/vol82/027-IEEA2015-C3024.pdf]; see also Behrooz Eftekhar et al., "The Effectiveness of Home Water Purification Systems on the Amount of Fluoride in Drinking Water," J. of Dentistry, Shiraz U. of Med. Sci., Sept. 2015, at 278, (noting that use of home water purification systems, including several using carbon-based filtration methods, reduced the amount of fluoride in water).

control color and remove organic compounds.[7] Activated charcoal can also adsorb water-soluble vitamins, including forms of Vitamins C and B.[8]

21.    Inspired by these longstanding (but limited and particular) uses of activated charcoal, enterprising companies like Hello have been eager to extrapolate charcoal's adsorptive properties for use in a much broader context, often with little to no substantiation. Products containing activated charcoal are increasingly prevalent, and promoted with vague claims of 'de-toxifying' properties as well false or overstated health and beauty benefits. Essentially, activated charcoal has been marketed to the public as capable of extracting nearly any undesirable element or substance, and in nearly any context. In this case, Hello inserted activated charcoal into its toothpastes and claimed its adsorptive properties would detoxify peoples' mouths and even whiten teeth.

22.    Simultaneous with the charcoal trend, consumer demand for teeth-whitening products has risen. The global market for teeth-whitening products is expected to reach $7.4 billion by 2024.[9] Dentists, dental scientists and researchers have raised concerns about the rapid growth of dental health 'fads,' including the use of charcoal toothpaste, which, even when "there is a lack of . . . scientifically supported information around such items, [] this does not stop them from being used."[10] As Dr. Ada Cooper, a spokesperson for the American Dental Association, recently stated: "**Just because something is popular doesn't mean it's safe**."[11]

---

[7] Cetin Kadakal et al., "Research Note: Effect of Activated Charcoal on Water-Soluble Vitamin Content of Apple Juice," 27 *J. of Food Quality* 171 (Apr. 2004) [https://doi.org/10.1111/j.1745-4557.2004.tb00647.x].
[8] *Id*.
[9] https://www.hexaresearch.com/research-report/teeth-whitening-products-market.
[10] Marco Antonio Dias da Silva & Anthony Damien Walmsey, "Fake News and Dental Education," 226 *British Dental Journal* 397, 397-99 (2019).
[11] "Beware Whitening Promise of Charcoal Toothpastes," The Family Dental Center, Mar. 2019, [https://thefamilydentalcenter.com/blog/beware-whitening-promise-of-charcoal-toothpastes/]. (emphasis added).

23.     Hello has leveraged the charcoal trend and consumer enthusiasm for teeth whitening with its development and marketing of a line of 'whitening' oral care products containing activated charcoal. In addition to the Charcoal Toothpastes, several other of Hello's other popular oral care products contain activated charcoal, including "hello charcoal mouthwash," "hello activated charcoal floss," and "hello toothbrush with activated charcoal."[12] Just as it does with its Charcoal Toothpastes, Hello touts these products as safe, "de-toxifying" and/or possessive of whitening and other beneficial properties.

24.     Hello has been quite successful in selling its products. In 2018, Hello CEO Craig Dubitsky estimated that Hello's revenue would exceed $20 million.[13] It reports that its toothpaste, "hello activated charcoal fluoride free whitening toothpaste" is the "#1 selling charcoal toothpaste in FDM (source: IRI MULO L52 weeks 3.24.19)."[14]

**B.      Contemporary Scientific Studies Challenge the Safety and Efficacy of Activated Charcoal for Use in Dentifrice**

25.     The first use of charcoal for oral hygiene dates back to Hippocrates in ancient Greece.[15] The Romans apparently followed this practice, along with other questionable oral care practices such as rinsing their mouths with urine.[16]

26.     In the United States, there have been several attempts to introduce charcoal as an oral health product. According to commentary published in the Journal of the American Dental

---

[12] "Charcoal Products," Hello Products, https://www.hello-products.com/shop/charcoal/ (last accessed June 25, 2019).

[13] Amy Feldman, "Taking on the Toothpaste Giants: How One Entrepreneur Built a Fresh $20 Million Brand," Forbes, Mar. 29, 2018, [https://www.forbes.com/sites/amyfeldman/2018/03/29/taking-on-the-toothpaste-giants-how-one-entrepreneur-built-a-fresh-20-million-brand/#4ba7c73c4019] (last accessed June 20, 2019).

[14] Reported at the bottom of all hello-products.com pages, https://www.hello-products.com/ (last accessed September 17, 2019).

[15] See S.W.B. Newsom, "Hygiene and the Ancient Romans," *J. of Infection Prevention*, at 25, June 2004 [https://journals.sagepub.com/doi/abs/10.1177/14690446040050030601].

[16] C. Valerius Catullus, "On Egnatius of the White Teeth," circa B.C. 84–54, (Tr. Richard Francis Burton, 1894), [http://www.perseus.tufts.edu/hopper/text?doc=Perseus:text:1999.02.0005:poem%3D39] (poem by the Roman poet Catullus referring to the practice of whitening teeth by rinsing with urine).

Association ("JADA") in 1932, a product named "Kramer's Original Charcoal Dental Cream," had been pronounced "not acceptable" as an Accepted Dental Remedies (ADR) by the Council on Dental Therapeutics (the "Council"). The Council found that "[c]linical experiences are recorded in which the particles of charcoal became imbedded in the gum tissue and produced a bluish line near the margin, which is removable only by surgical means."[17] When the Kramer's brand produced no evidence to rebut the clinical results, the Council denied it as an ADR "because it is a dentifrice intended for daily use that contains charcoal, a potentially harmful substance."[18]

27.    Decades after American dentistry rejected charcoal for use in dentifrice, the topic has again resurfaced, in light of the burgeoning consumer trend. In 2017, JADA published a literature review to "examine the efficacy and safety of charcoal and charcoal-based dentifrices." John K. Brooks et al., *Charcoal and Charcoal-Based Dentifrices*, 148 JADA 661 (2017) (hereinafter "*Charcoal-Based Dentifrices* (JADA 2017)"). The authors, Dr. John Brooks, DDS, Dr. Nasir Bashirelahi, PhD, and Dr. Mark A. Reynolds, DDS, PhD, reviewed the first 50 consecutive charcoal dentifrices from Google.com and Amazon.com to assess how the marketing claims of these products compared with efficacy and safety of charcoal-based dentifrices as found in the available scientific literature.[19]

28.    The authors of *Charcoal-Based Dentifrices* (JADA 2017) reviewed advertising claims about the charcoal-based dentifrice on the market, and found: "Nearly one-half of the charcoal-based dentifrices were advertised as being capable of detoxification, with most claiming to detoxify the oral cavity or teeth. **Our review failed to identify scientific support in the**

---

[17] John K. Brooks et al., "Commentaries: More on Charcoal and Charcoal-Based Dentifrices," 148 JADA 785 (2017), [http://dx.doi.org/10.1016/j.adaj.2017.09.027] (quoting S.M. Gordan, "Kramer's Original Charcoal Dental Cream: not acceptable for A.D.R.," 33 *JADA* 912, 912–13 (1946)).
[18] *Id.*
[19] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).

literature that topical application of charcoal can provide any detoxification benefits to the teeth or oral mucosa."[20]

29.     The authors additionally reported that "**[c]harcoal has been recognized as an abrasive mineral to the teeth and gingiva, and its inclusion in tooth preparations raises concern about damage to these oral structures, as well as increasing caries susceptibility due to the potential loss of enamel**."[21]

30.     While many of the products the authors reviewed were fluoride-free, the authors noted that in the charcoal-based toothpastes containing fluoride, the fluoride might "be rendered either chemically inert or minimally effective, as **charcoal is a well-known absorptive agent capable of inactivating fluoride**."[22]

31.     In conclusion, the authors of *Charcoal-Based Dentifrices* (JADA 2017) stated:

In our literature review, **we found insufficient scientific evidence to substantiate the cosmetic, health benefits** (antibacterial, antifungal, or antiviral; **reduced caries; tooth whitening; oral detoxification**), **or safety claims** of marketed charcoal-based dentifrices. Controlled clinical trials and laboratory investigations of charcoal-based dentifrices . . . are needed to determine product efficacy and safety.[23]

32.     Other studies have found similar problems with the use of activated charcoal in toothpastes. One study presented at the Academy of General Dentistry 2015 Annual Meeting, concluded that "activated charcoal was **more abrasive** than a whitening toothpaste on acrylic

---

[20]*Id.* (emphasis added). The authors were unable to identify any randomized, controlled clinical trials with a follow-up duration of 3 months or longer testing the safety or effectiveness of charcoal-based dentifrices. All of the available studies lacked adequate controls to measure clinical oral improvements with charcoal-based dentifrices.
[21]*Id.* (emphasis added).
[22]*Id.* (emphasis added).
[23]*Id.* (emphasis added).

resins" and warned that "[t]he fine black charcoal powder **may become embedded** in defects such as margins or cracks present on older dentition."[24]

33.     A May 2019 article in the British Dental Journal noted a "worrying approach" in the marketing of charcoal toothpastes that placed "a strong emphasis on benefits which appeal to consumers, which have yet to be disproved," and lamented "[t]his 'scientifically claimed until proved wrong' approach is favoured over substantiated, evidence-based promotion."[25] Linda H. Greenwall et al., *Charcoal-Containing Dentifrices*, 226 BDJ 697, 698 (2019) (hereinafter referred to as "*Charcoal-Containing Dentifrices* (BDJ 2019)"). The authors opined that "the ethics of such an approach to the marketing of health-influencing products is at best questionable. **False and deceptive messaging, together with the selective provision of information could be classed as misleading practice, contrary to the consumers' best interests and protection**."[26]

34.     *Charcoal-Containing Dentifrices* (BDJ 2019) notably concluded that charcoal-based dentifrices "may be considered to be **a fashionable, marketing 'gimmick'**" that is "based on folklore on the use of different forms of charcoal for oral and dental remedies," or improperly based on "present day uses of charcoal for medical purposes."[27]

**C.     Hello's Representations on the Charcoal Toothpastes' Labeling, Packaging, Advertising and Marketing**

35.     Since at least 2015, Defendant has packaged, marketed, distributed, and sold some or all of its Charcoal Toothpastes. Examples of the product packaging and tubes include:

---

[24]Brantley McCarty et al., "Activated Charcoal as a Whitening Dentifrice," Presented at Academy of General Dentistry 2015 Annual Meeting, June 18–21, 2015, San Francisco, CA [https://www.epostersonline.com/agd2015/node/72] (last accessed June 5, 2019).  (emphasis added).
[25]Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental Journal* 697, 698 (2019).
[26] *Id.* (emphasis added).
[27] *Id.* (emphasis added).





13

36.     Printed on the external cardboard packaging of the Charcoal Toothpastes is the following:[28]



37.     All of Hello's toothpaste tubes and packaging include an ingredient list with parentheticals that describe the function of each ingredient. The ingredients list printed on the tube and cardboard packaging for each of the Charcoal Toothpastes includes, *inter alia*: "**Charcoal powder (whitens, polishes and cleans teeth/freshens breath)**."

38.     The tubes and cardboard packaging for each of the Charcoal Toothpastes state: "**use: whitens, helps remove plaque with regular brushing.**"

39.     Featured predominantly in the printed labeling of the tubes and cardboard packaging for *all* but one of the six currently available Charcoal Toothpastes is the claim: "**epic whitening**."

40.     The following claims are printed on the external cardboard packaging for all of the fluoride free Charcoal Toothpastes:[29]

"**noticeably whiter teeth**" or "**whitens naturally**"
"**removes plaque**"

---

[28] "**what's up with charcoal?** black paste might look weird, but it works brilliantly. the activated charcoal (made from sustainable bamboo) is a detoxifier that removes surface stains and freshens breath. a friendly word of advice: black paste can be messy. please spit responsibly and clean the sink once you've rinsed ;-)."

[29] The fluoride-free Charcoal Toothpastes include the hello activated charcoal "epic whitening fluoride free," "epic whitening fluoride," "+ hemp seed oil epic whitening fluoride free," "+ natural dragon fruit epic whitening fluoride free," and "+ natural acai epic whitening fluoride free" pastes.

"**freshens breath**" or "**slays dragon breath**" or "**mind blowing freshness**"

41.     The following claims are printed on the external cardboard packaging of the Charcoal Toothpaste containing fluoride (hello activated charcoal epic whitening fluoride toothpaste):

> "**noticeably whiter teeth**"
> "**prevents cavities**"
> "**safe for enamel**"
> "**awesome for fresh breath**"

42.     On its website Hello makes the following claims regarding the fluoride-free Charcoal Toothpastes, as well as the purpose and benefits of activated charcoal in its oral care products:



- "**a friendly force of nature**. say hello to activated charcoal, **a natural whitener and detoxifier** that helps make smiles brighter and breath fresher. now that's pretty coal."[30]
- "it's simple, **black paste = white teeth**."[31]

---

[30]Shop Charcoal, Hello-Products.com, https://www.hello-products.com/shop/charcoal/ (last accessed September 25, 2019).
[31] https://www.hello-products.com/shop/charcoal-whitening-toothpaste/ (last accessed September 25, 2019).

- "**our activated charcoal toothpaste whitens naturally and gently without peroxide, and is safe for everyday use**. beyond whitening teeth, it kicks plaque to the curb. . . ."[32]
- "this paste is **specially formulated with activated charcoal** (made from sustainable bamboo), **an epic whitener and detoxifier that removes surface stains**. . . ."[33]
- "**thoughtfully formulated with activated charcoal** (made from sustainable bamboo) and dragon fruit, our paste slays dragon breath, **vanquishes stains, whitens epically** . . . . #brushhappy"[34]
- "this fluoride free superpasteTM is **thoughtfully formulated for daily use with activated charcoal (made from sustainable bamboo), which helps epically whiten your teeth** and freshen your breath like nobody's business. it's so fab, you'll be saying ah-sah-yee-ha. #brushhappy"[35]

43.     Regarding the Charcoal Toothpaste that is not fluoride-free ('hello activated charcoal epic whitening fluoride toothpaste with fresh mint + coconut oil') the site states:

> "activated charcoal (made from sustainable bamboo) **is nature's way to epically whiten teeth** and freshen your breath like nobody's business. here at hello, we believe in a brusher's right to choose, **so this charcoal paste contains fluoride, which helps to prevent cavities and strengthen enamel**. if fluoride isn't your thing, we have a fluoride free charcoal paste, too. and **don't worry, our charcoal toothpastes have been specifically formulated to be gentle enough for daily use**."[36]

44.     Hello's website also includes a short article titled "why add charcoal to toothpaste?" written by Connie Gregson.[37] Notable statements from Ms. Gregson, who is identified as the "friendly head of r+d at hello products," include the following:

> "charcoal is associated with many things: barbeque grilling and chilling, whiskey distilling and swilling, multitasking and facial masking, etc. but as it turns out, **charcoal's also a powerful teeth whitener**. yep you heard us correctly."

> "**the tooth-whitening variety of charcoal is known as activated charcoal**, and **it's been designed to safely go where no charcoal has (hopefully) gone before: inside your mouth**."

---

[32] https://www.hello-products.com/product/charcoal-whitening-toothpaste/ (last accessed September 25, 2019).

[33] https://www.hell)o-products.com/product/charcoal-whitening-hemp-toothpaste/ (last accessed September 25, 2019) (regarding the "+ hemp seed oil epic whitening fluoride free" superpasteTM).

[34] https://www.hello-products.com/product/charcoal-whitening-dragonfruit-toothpaste/ (last accessed September 25, 2019) (regarding the "+ natural dragon fruit epic whitening fluoride free" superpasteTM).

[35] https://www.hello-products.com/product/charcoal-whitening-acai-toothpaste/ (last accessed September 25, 2019) (regarding the "+ natural acai epic whitening fluoride free" superpasteTM).

[36] https://www.hello-products.com/product/activated-charcoal-whitening-fluoride/ (last accessed September 25, 2019) ('hello activated charcoal epic whitening fluoride toothpaste with fresh mint + coconut oil').

[37] https://www.hello-products.com/about/ingredients/activated-charcoal/ (last accessed September 25, 2019).

"designed to make sure that the charcoal coats the entirety of your mouth, leaving no bicuspid behind."

Ms. Gregson goes on to explain:

"activated charcoal is formed when high pressure gas is forced into charcoal making it much more porous. **this porousness makes it extremely adsorptive**. and yes, you read that right: we said "adsorptive" – not absorptive. the difference is that activated charcoal literally "adds" to its mass by grabbing other molecules. hence adsorption. think a static-y cloth that cleans by getting stuff to cling, as opposed to a paper towel that's soaking up a liquid. **this structure helps activated charcoal adsorb the odors that cause bad breath and the tannins that can stain teeth**, when used in toothpaste form, the charcoal can get into nooks and crannies really well."

45.    Hello makes the same and similar claims elsewhere online, including Amazon.com:



**take a brush on the wild side.**

say hello to activated charcoal (made from sustainable bamboo), nature's way to epically whiten teeth, detoxify your mouth and freshen your breath like nobody's business. it's been specifically formulated to be safe for enamel, so use hello every time you brush for maximum friendliness. please spit responsibly and clean your sink after each use. #brushhappy

- provides noticeably whiter teeth.
- detoxifies and freshens breath.
- gentle and safe for everyday use.
- vegan, made in the usa, and never tested on animals.
- no alcohol, peroxide, artificial sweeteners/flavors, sls/sulfates, dyes, microbeads, parabens, and gluten.
- *Certified Cruelty-Free and Vegan through PETA since 01/26/2016, Cert_#0000016 2, *This product is certified BPA free by CCL as of 4/8/2010 TSB-1016A
- **Please see ingredients label to verify all components of this product.

**hello**

we think it's time personal care was, well, personal. relevant. beautiful. delicious. friendly. and as natural as we can make it. we're on a mission to make the world a friendlier place, starting with your mouth. hello is a new kind of naturally friendly™ oral care, created by an entrepreneurial bunch using thoughtful ingredients so delicious you'll rush to brush. for reals.



black paste = white teeth.

crazy concept, we know, but this black paste will whiten like nobody's business. a friendly word of caution: black paste can get a little messy if you're not mindful. please remember to spit responsibly.



get black to nature.

our charcoal line features thoughtful ingredients like coconut oil, tea tree oil and xylitol that are sure to rock your world. bonus, the delicious mint found in our pastes is grown in the willamette



your swish come true.

our black rinse (yup, it's black) is thoughtfully formulated to make swishing fun and friendly. it rocks activated charcoal from sustainable bamboo, a natural detoxifier that keeps breath next-level

**D.    Hello's Marketing Claims are Debunked or Unsubstantiated by Scientific Evidence**

**(i)    *"De-Toxifying"***

46.    As previously described, Hello consistently touts its Charcoal Toothpastes as 'detoxifying' in its product packaging, advertising and online marketing. For example, Hello's

website presents activated charcoal as "**a natural whitener and detoxifier** that helps make smiles brighter and breath fresher. now that's pretty coal."[38]

47.     In reality, the charcoal trend as a whole is entirely rooted in a popular misconception of what "detoxification" – a largely vacuous term – really means. Detoxification is a *medical term* that refers to emergency treatments for dangerous levels of drugs, alcohol, or poisons, like heavy metals.[39] It is in this very specific context – an emergency medical detoxification – that activated charcoal has been used successfully. Yet, writes Scott Gavura in *Activated Charcoal, The Wellness Scam* (Science Based Medicine, Aug. 8, 2019): "what's popularly called a 'detox' today has nothing to do with actual medical detoxification," and "[f]ake detox, the kind you find in magazines, and sold in pharmacies, juice bars, and health food stores, is make-believe medicine. The use of the term 'toxin' in this context is meaningless…. but **it sounds just scientific enough to be plausible**."[40] Mr. Gavura goes on, "if you hear the words 'detox' uttered anywhere but an emergency room, keep in mind that you're hearing a marketing pitch, not credible health evidence."[41] "Despite the marketing hype, activated charcoal has no ability to suck out the toxic chemicals from the rest of your body."[42]

48.     Multiple scientific and popular consumer publications have made note of this logical fallacy and have debunked the broadly asserted 'detoxifying' properties of activated charcoal (particularly in its most commonly available form as an ingestible supplement). In April 2017, Consumer Reports published *Activated Charcoal Isn't a Magic Health Bullet,* wherein Julia Calderone writes: "In recent years, people have tried to translate the very limited success of

---

[38] Shop Charcoal, Hello-Products.com, https://www.hello-products.com/shop/charcoal/ (last accessed September 25, 2019).
[39] Scott Gavura, "Activated Charcoal, The Wellness Scam," *Science Based Medicine*, Aug. 8, 2019 [https://sciencebasedmedicine.org/activated-charcoal-the-wellness-scam/ ].
[40] *Id*.
[41] *Id*.
[42] *Id*.

activated charcoal in the ER to their everyday lives, assuming that if it can adhere to and remove certain drugs in an emergency room, it can stop all kinds of toxins, making an already healthy person even healthier."[43] Lisa Sasson, M.S., R.D., clinical associate professor of nutrition at New York University is quoted as saying "**this logical leap is not based in science**."[44]

49.     In another example from 2017, the Superfoodly.com website published *Activated Charcoal Uses May Be Harmful, Possibly Cancerous?* stating: "The problem is that none of these cleansing/detox benefits are backed by science…. using [charcoal] to remove toxins from your body is **nonsensical**, unless you literally just ingested poison (and even then, only certain types will it absorb). There are no clinical trials or peer reviewed research which suggests activated charcoal removes toxins daily when used as a supplement."[45]

50.     Moreover, the 'detoxifying' claims at issue in this Complaint are far more outlandish than even those claims on ingestible charcoal supplements discussed (and debunked) above. The logic of employing charcoal as a 'detoxifier' in *topically applied* personal care products (such as the Charcoal Toothpastes) is much more attenuated and is, in fact, *wholly unsupported*.

> "**At the root of the activated charcoal health fad is the misuse, or misunderstanding, of the word 'toxin.'**" In a detox-crazy world, toxins are used to refer to impurities or anything undesirable in your body: stains on your teeth, dirt or dust on your skin, naturally present sugars in your juice, a hangover after a night out. **Personal care products** (**like teeth whiteners**, face masks, soaps, shampoos, and deodorants) containing activated charcoal **bank on the idea that impurities can be draw out during use**. . . But **there is little to no research to prove that the trace amounts of activated charcoal, combined with other ingredients, in these products are effective and much more than just marketing**."[46]

---

[43] Julia Calderone, "Activated Charcoal Isn't a Magic Health Bullet," Consumer Reports (April 13, 2017) [https://consumerreports.org/dietary-supplements/activated-charcoal-fad-not-a-magic-health-bullet/].
[44] *Id.*
[45] "Activated Charcoal Uses May Be Harmful, Possibly Cancerous?," Superfoodly (July 28, 2017) [https://www.superfoodly.com/activated-charcoal-uses-side-effects/].
[46] Katie Mui, "Activated Charcoal: The Powerful Detox Ingredient You Don't Want in Your Regular Diet," GoodRx, Feb. 7, 2019 [https://www.goodrx.com/blog/what-is-activated-charcoal-detox-medication-interactions/]. (emphasis added).

51.     Indeed, as previously discussed, the findings published in *Charcoal-Based Dentifrices* (JADA 2017) reflected the researchers' inability to identify scientific support "**that topical application of charcoal can provide any detoxification benefits to the teeth or oral mucosa.**"[47] This included "antibacterial, antifungal, or antiviral" benefits, as well as reduced caries or a more general (and ill-defined) notion of "oral detoxification."[48]

**(ii)    *"Whitening"***

52.     Hello's whitening claims for the Charcoal Toothpastes (made on its product packaging, labelling, marketing and advertising) include but are not limited to: "epic whitening," "noticeably whiter teeth," "it's simple, black paste = white teeth." See, e.g., ¶¶ 35-45 *supra*.

53.     When a toothpaste is advertised as a "whitening" toothpaste, most reasonable consumers believe it will leave their teeth whiter. However, dentists and researchers have warned that charcoal toothpaste companies' "whitening" claims are misleading, due to the failure to clarify the distinction between intrinsic and extrinsic whitening mechanisms. As opposed to intrinsic whiteners, the British Dental Journal explains, many "products whiten teeth, to different extents, by the removal of surface (extrinsic) stains, which may reform relatively quickly in, for example, a smoker. Typically, these products do not change the intrinsic colour of the tooth, which is largely determined by the colour of the dentine."[49]

54.     Linda Greenwell, in her 2017 article *Charcoal Toothpastes: What We Know So Far*, concluded: "[t]here is no evidence that the use of charcoal toothpaste has an effect on intrinsic (internal) staining of teeth or on intrinsic whitening of the teeth."[50] In 2019 Ms. Greenwell, as co-

---

[47] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).
[48] *Id*.
[49] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental J.* 697, 699 (2019).
[50] Linda Greenwall & Nairn H.F. Wilson, Opinion, "Charcoal Toothpastes: What We Know So Far," *Clinical Pharmacist* (July 13, 2017) [https://www.pharmaceutical-journal.com/opinion/correspondence/charcoal-toothpastes-what-we-know-so-far/20203167.article?firstPass=false].

author *Charcoal-Containing Dentifrices* (BDJ 2019), re-affirmed the conclusion that activated charcoal "does not change the colour of the teeth other than by abrasive action similar to that of a 'smoker's toothpaste'. . . ."[51] "The common interchangeable use and misuse of the terms 'whitening' and 'bleaching' is therefore misleading and confusing to consumers and patients, with the marketing of some charcoal and other dentifrices being no exception."[52]

    55.    It has been clearly established that the Charcoal Toothpastes do not intrinsically whiten teeth. As such, any claimed "whitening" properties of the Charcoal Toothpastes are limited to the removal of extrinsic surface stains, and therefore misleading.[53] This is especially the case in light of the fact that Hello often makes its "whitening" claims separately from, and in addition to, other claims concerning the lifting and removal of surface stains or removal of plaque.

    56.    Hello's "whitening" claims are also deceptive for additional reasons (aside from the often misleading issue of intrinsic whitening vs. extrinsic stain-lifting). Hello presents the Charcoal Toothpastes as possessive of naturally whitening qualities due to the unique attributes of activated charcoal. For example, it explains on its website that the porousness and adsorptive properties of charcoal enable it to "adsorb… the tannins that can stain teeth."[54] This is misleading and deceptive. Any extrinsic stain-lifting that could be viewed as 'whitening' is *not achieved from adsorptive qualities of the charcoal*; rather it is achieved by the *particularly abrasive effects of the charcoal*.

    57.    As discussed in more detail in the following section, charcoal toothpastes are highly abrasive to tooth enamel, due to the composition and fractal shape of charcoal particles, as well

---

[51] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental J.* 697, 699 (2019).
[52] *Id.*
[53] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).
[54] https://www.hello-products.com/about/ingredients/activated-charcoal/ (last accessed September 25, 2019).

other characteristics of charcoal toothpastes.[55] Charcoal is employed in dentifrice as an abrasive whitening agent to achieve the mechanical removal of extrinsic stains.[56] The porousness and adsorptive qualities of charcoal are largely irrelevant in the context of purported teeth whitening, and Hello's representations in this regard are similarly frivolous to its 'detoxifying' claims.

58.     Moreover, rather than whitening, long-term use of the Charcoal Toothpastes could potentially result in a darkened and yellow tooth appearance. This is because, when teeth are regularly brushed with highly abrasive substances such as charcoal, the enamel can wear down and cause the tooth's dull, internal dentin to show through.[57] As Dr. Ada Cooper, spokesperson for the American Dental Association, has explained: "Using materials that are too abrasive can actually make your teeth look more yellow, because it can wear away the tooth's enamel and expose the softer, yellower layer called dentin."[58]

(iii)     *"Safe for Everyday Use"*

59.     On its website, Hello has an FAQ section that states: "are hello products safe?" and provides the response: "a resounding YES."[59] Hello bombards consumers with a 'friendly' and 'natural' messaging intended to leave a strong impression that the brand is *extremely* conscientious of health, safety and wellbeing. Hello presents its Charcoal Toothpastes as "naturally friendly,"

---

[55] U I Pertiwi et al., *Surface Changes of Enamel After Brushing with Charcoal Toothpaste,* IOP Conf. Series: Journal of Physics: IOP Conf. Series 884 (2017) (iopscience.iop.org) (doi:10.1088/1742-6596/884/1/012002); *see also* Linda Greenwall & Nairn H.F. Wilson, Opinion, "Charcoal Toothpastes: What We Know So Far," *Clinical Pharmacist* (July 13, 2017); Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental Journal* 697, (2019).
[56] *See, e.g.,* Matthias Epple et al., "A Critical Review of Modern Concepts for Teeth Whitening," 79 *Dentistry J*., 7 (Aug. 1, 2019) [https://www.mdpi.com/2304-6767/7/3/79/htm].
[57] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017) ("Charcoal has long been recognized as an abrasive mineral to the teeth and gingiva, and its inclusion in tooth preparations raises concerns about damage to these oral structures, as well as increasing caries susceptibility due to the potential loss of enamel.").
[58] "Beware Whitening Promise of Charcoal Toothpastes," The Family Dental Center, Mar. 2019, [https://thefamilydentalcenter.com/blog/beware-whitening-promise-of-charcoal-toothpastes/].
[59] Frequently Asked Questions, Hello-Products.com, https://www.hello-products.com/faq (last accessed June 25, 2019).

"thoughtfully designed," and also free of numerous ingredients that are increasingly considered undesirable or unnatural (such as sls/sulfates, parabens, and BPA).[60]

60.     Printed on the Charcoal Toothpastes' toothpaste tubes and packaging is Hello's claim that benefits come "with regular brushing." Hello describes its fluoride-free Charcoal Toothpastes as "safe for everyday use," to achieve whitening "naturally and gently."[61] The Charcoal Toothpastes that contain fluoride are presented as "safe for enamel" (printed on the cardboard packaging), and the website states that it "helps to prevent cavities and strengthen enamel."[62]

61.     Activated charcoal, however, is known to be a highly abrasive and harmful substance to tooth enamel.[63] Multiple scientific studies have noted its abrasiveness presents a risk to enamel and gingiva in the context of oral care products. As noted in 2017: "[c]harcoal has been recognized as an abrasive mineral to the teeth and gingiva, and its inclusion in tooth preparations raises concern about damages to these oral structures, as well as increasing caries susceptibility due to the potential loss of enamel."[64] *Charcoal-Containing Dentifrices* (BDJ 2019) re-affirmed that, because the 'whitening' effects activated charcoal was achieved "by abrasive action," "its use may pose some risk to the enamel and gingiva."[65]

---

[60] "hello charcoal teeth whitening toothpaste is fluoride free, vegan, and free from sls/sulfates, artificial sweeteners/flavors, parabens, microbeads, triclosan, and gluten. like all of our pastes, it's made in the USA with globally sourced ingredients in BPA-free tubes, and of course, we never test on animals – that would be insanely unfriendly. brush happy."  https://www.hello-products.com/product/charcoal-whitening-toothpaste/ (last accessed September 25, 2019).

[61] https://www.hello-products.com/product/charcoal-whitening-toothpaste/ (last accessed September 25, 2019).

[62] https://www.hello-products.com/product/activated-charcoal-whitening-fluoride/ (last accessed September 25, 2019).

[63] *See, e.g.*, John K. Brooks et al., "Commentaries: More on Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 785 (2017) [http://dx.doi.org/10.1016/j.adaj.2017.09.027] (quoting S.M. Gordan, "Kramer's Original Charcoal Dental Cream: not acceptable for A.D.R.," 33 *JADA* 912, 912–13 (1946)) (Concluding a charcoal dental cream was not an acceptable dental remedy "because it is a dentifrice intended for daily use that contains charcoal, a potentially harmful substance").

[64] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).

[65] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental Journal* 697, (2019).

24

62.     Moreover, the abrasive damage to tooth enamel caused by charcoal can set the stage for spiraling into additional oral health issues. It has been shown that increased surface roughness of teeth creates an environment conducive to increased bacteria in the oral cavity. This, in turn, can lead to other problems and is correlated with high caries and periodontal disease.

63.     The findings of a controlled scientific study, published in a 2017 article *Surface Changes of Enamel After Brushing with Charcoal Toothpaste*, confirmed that charcoal-based toothpastes are more abrasive and affecting on the surface roughness on a tooth as compared to other non-charcoal whitening toothpastes.[66] The study acknowledged that all effective toothpastes must be abrasive to some degree, and ideal toothpastes are those "with the ability to maximally clean teeth with a minimal degree of abrasiveness. . . ."[67] Charcoal's abrasiveness is related to its composition and irregular particle shape, which is "star shaped" or "fractal shaped."[68] However, the "research concluded that there were increasing surface roughness values of tooth surfaces after the use of toothpaste containing charcoal, and the increased surface roughness was statistically significant . . . ."[69] Increased surface roughness on a tooth's enamel is "a strategic place for bacteria to adhere to the tooth's surface," and "[t]he presence of bacteria in the oral cavity is one of the causes of high caries and periodontal disease risk."[70]

64.     Still more problematic, experts have noted that certain characteristics of charcoal toothpastes tend to prolong users' brushing time and increase brushing vigorousness, which can serve to *further exacerbate the abrasive effect* of charcoal toothpastes. The first such characteristic is the distinct black color of pastes containing charcoal. "Charcoal-containing toothpastes are black

---

[66] U I Pertiwi et al., *Surface Changes of Enamel After Brushing with Charcoal Toothpaste*, IOP Conf. Series: Journal of Physics: IOP Conf. Series 884 (2017) [iopscience.iop.org] (doi:10.1088/1742-6596/884/1/012002).
[67] *Id.*
[68] *Id.*
[69] *Id.*
[70] *Id.*

in colour and brushing off the colour tends to prolong brushing, or the use of excessive brushing force, which may lead to the abrasion of teeth."[71] The same phenomena occurs with toothpastes claimed to have 'whitening' properties:

> "In considering abrasivity, it is to be remembered that users of charcoal-based dentifrices may have been persuaded to buy the product by claims of tooth whitening. . . and in the pursuing of this goal may brush frequently and vigorously and for extended periods of time using the product. Such behavior may be seen in individuals who believe that a charcoal-based dentifrice may offer them a low cost, 'quick-fix,' tooth whitening option; if a little is good, more will achieve, if not exceed the desired goal quicker. As with any form of excessive toothbrushing, **excessive brushing with a charcoal-based dentifrice may cause more harm than good**, especially to tooth-coloured restorations with relatively low abrasion resistance."[72]

65.     Studies also show that the abrasive effects from use of charcoal toothpastes can lead to bad aesthetic effects in some users. "Particles of charcoal included in charcoal toothpaste may accumulate in crevices and other defects in teeth, including cracks in the teeth of older individuals."[73] For "patients with established periodontal disease," the use of charcoal-based dentifrices may result in "the accumulation of charcoal particles deep in periodontal defects and pockets, causing grey/black discoloration of the periodontal tissues."[74]

66.     The negative aesthetic effects and discoloration caused by charcoal toothpaste can additionally require replacement of dental implants that have acquired grey or black marginal charcoal staining. Particles of charcoal "may build up in gaps between dental restorations and teeth, resulting in a grey or black line around restoration margins with less than ideal adaptation.

---

[71] Linda Greenwall & Nairn H.F. Wilson, Opinion, "Charcoal Toothpastes: What We Know So Far," *Clinical Pharmacist* (July 13, 2017).
[72] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental Journal* 697, (2019). (emphasis added).
[73] Linda Greenwall & Nairn H.F. Wilson, Opinion, "Charcoal Toothpastes: What We Know So Far," *Clinical Pharmacist* (July 13, 2017).
[74] Linda H. Greenwall et al., *Charcoal-Containing Dentifrices*, 226 British Dental Journal 697, (2019).

Such negative effects on dental attractiveness may necessitate the costly replacement of the affected filings, veneers or crowns."[75]

67.     Further, charcoal is known to strongly affect fluoride, and the scientific journals have noted that fluoride might "be rendered either chemically inert or minimally effective" in a toothpaste containing charcoal.[76] Thus, in the Charcoal Toothpastes that contain fluoride the fluoride content may be effectively inactivated by the charcoal. Class members who purchased the fluoride pastes, were thus potentially deprived of the oral care benefit and level of safety that they thought they were getting (for example, Hello claims that its fluoride-containing Charcoal Toothpaste "prevents cavities") when they chose a fluoride paste over a fluoride-free paste.

68.     *Charcoal-Based Dentifrices* (JADA 2017) recommended that dental practitioners warn their patients about this issue and the use of charcoal toothpastes. Dentists, the authors wrote, should "educate their patients about the unproven claims of oral benefits and possible health risks associated with the use of charcoal dentifrices and **the potential increased risk of developing caries with the use of these nonfluoridated or possibly charcoal-inactivated fluoride products**."[77]

69.     The safety of the Charcoal Toothpastes for everyday use is thus under serious doubt, and not just for particular consumers (such as the elderly or those with periodontal disease or dental implants). The scientific journals have clearly raised concerns for typical consumers of average age and oral health as well.

---

[75] Linda Greenwall & Nairn H.F. Wilson, Opinion, "Charcoal Toothpastes: What We Know So Far," *Clinical Pharmacist* (July 13, 2017).
[76] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).
[77] *Id*. (emphasis added).

**E.      Hello Knew or Should Have Known its Claims were False and Deceptive**

70.      Defendant Hello knew or should have known that its products did not have the promised benefits or represented traits.[78] Defendant Hello also knew or should have known that there is considerable concern that the products could be unsafe for many of its consumers.

71.      Hello invested significant effort and money in its marketing campaign, yet chose to make its claims without any disclosed effort to research or scientifically substantiate the claims made therein. Multiple scientific studies and journals, including but not limited to those cited above, were easily available to Defendant, had it chosen to look. Moreover, those findings as well as the general concerns of dental professionals were also reported in consumer reports and some mainstream media outlets. A small sampling of media coverage and public statements made during the time Hello marketed and sold its Charcoal Toothpastes includes, but is not limited to, the following (see also ¶¶ 47-50 *supra*):

- An ABC News article in June 2017, *How Safe is Activated Charcoal?* reported that Dr. Upen Patel, D.D.S., had concerns about charcoal toothpaste because it had not been evaluated by the American Dental Association for long term use, and also due to the possible erosion of the enamel, abrasiveness, gums, and tissue. Dr. Patel stated: "Because of how small those particles are, they can get stuck in your gums and in small cracks in your teeth, so you can have these little black lines in your gums and your teeth you can't get out."[79]

- A September 2018 piece in Prevention.com, *Is Charcoal Toothpaste the Answer to Whiter Teeth?,* quoted Dr. Kenneth Magid, D.D.S., adjunct clinical associate professor at NYU College of Dentistry: "Not only do charcoal toothpastes not meet the criteria that I would use to recommend them, but they may be too abrasive and damaging to teeth." "Since charcoal toothpastes aren't regulated by any agency or approved by the ADA, many of the products may be too abrasive for regular use and can possibly remove the enamel outside of the teeth or damage porcelain restorations such as veneers or crowns." "Once the enamel

---

[78] The FTC requires companies to "have a reasonable basis for advertising claims before they are disseminated, and "a firm's failure to possess and rely upon a reasonable basis for objective claims constitutes an unfair and deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act. . . ." *See* FTC Policy Statement Regarding Advertising Substantiation, appended to *In the Matter of Thompson Medical Co.,* 104 F.T.C. 648, 839 (1984), *aff'd,* 791 F.2d 189 (D.C. Cir. 1986).

[79] Irene Cruz, "How Safe Is Activated Charcoal?," ABC 10 (June 9, 2017) [https://www.abc10.com/article/news/local/how-safe-is-activated-charcoal/447456019].

wears away, there's no way to regrow it, and on top of that, it can actually make your teeth look duller and darker instead of brighter. This is due to the underlying dentin showing through. . . . In addition to darkening your smile, wearing down your enamel will also make your teeth more sensitive to temperature and prone to cavities."[80]

- A BBC article in May 2019, *Charcoal Toothpastes 'don't whiten teeth,'* cited the British Dental Journal for the premise that "charcoal-based toothpastes, which claim to whiten teeth, are a 'marketing gimmick' which could increase the risk of tooth decay," and are "more abrasive than regular toothpastes, potentially posing a risk to the enamel and gums." The article quoted Dr. Greenwall-Cohen as stating that charcoal particles in toothpastes can "get caught up in the gums and irritate them," and also be problematic for fillings.[81]

- In August 2018 Harper's Bazaar published *Is Charcoal Toothpaste Safe to Use*? (and re-published in July 2019), reporting on the many the doubts on charcoal oral care products as well as issues raised by the British Dental Journal. Among other issues the article explains: "Unlike your liver and kidneys, the teeth and gums don't perform a detoxifying function of the body, and since so-called toxins aren't generally hanging out in your mouth anyway, there's not much point in using your tooth cleaning to purge them."[82]

- In May 2019 the DailyMail published *Charcoal-based Toothpastes do NOT whiten teeth and may lead to tooth decay as dentists warn the products are reliant on 'marketing gimmicks and folklore*, wherein Professor Damien Walmsley, scientific adviser for the British Dental Association states: "Charcoal-based toothpastes offer no silver bullets for anyone seeking a perfect smile, and come with real risks attached." "These abrasive formulations may be effective at removing surface stains, but prolonged use may also wear away tooth enamel. Research now shows it could even cause discoloration of the gums."[83]

- Dr. Ada Cooper, DDS, spokesperson for the American Dental Association, warned of charcoal toothpastes in *Beware Whitening Promise of Charcoal Toothpastes* in March 2019: "Just because something is popular doesn't mean it's safe." "Charcoal is recognized as an abrasive material to teeth and gums." "Using materials that are too abrasive can actually make your teeth look more yellow, because it can wear away the tooth's enamel and expose the softer, yellower layer called dentin."[84]

---

[80] Macaela Mackenzie, "Is Charcoal Toothpaste the Answer to Whiter Teeth?," Prevention (Sept. 26, 2018) [https://www.prevention.com/beauty/a23470865/charcoal-toothpaste/].

[81] "Charcoal Toothpastes 'don't whiten teeth,'" BBC: Health, May 10, 2019 [https://www.bbc.com/news/health-48216116].

[82] Lauren Hubbard & Alexandra Tunell, "Is Charcoal Toothpaste Safe to Use?," Harper's Bazaar, Aug. 14, 2018 (updated: Harper's Bazaar Staff, "Is Charcoal Toothpaste Safe to Use?," July 31, 2019) [https://www.harpersbazaar.com/beauty/health/advice/a3764/charcoal-toothpaste-pros-cons/].

[83] Victoria Allen, "Charcoal-based Toothpastes do NOT whiten teeth and may lead to tooth decay as dentists warn the products are reliant on 'marketing gimmicks and folklore," DailyMail (May 9, 2019), [https://www.dailymail.co.uk/health/article-7010219/Charcoal-based-toothpastes-NOT-whiten-teeth.html].

[84] The Family Dental Center, Mar. 2019, "Beware Whitening Promise of Charcoal Toothpastes," [https://thefamilydentalcenter.com/blog/beware-whitening-promise-of-charcoal-toothpastes/].

72.     It is entirely implausible that Defendant Hello, a major oral care company with particularly sophisticated marketing savvy, failed to notice medical, dental, scientific and media coverage of reported ineffectiveness and risks associated with charcoal dentifrice. (Unlike consumers, whose attention to the claims of the oral care industry will likely be limited to time in the shopping aisle looking at product packaging).

73.     Hello's awareness that its claims were scientifically or medically unsubstantiated can also, arguably, be inferred from what it does *not* say in its website FAQs. For example, to the posited question, "are hello products safe?" Hello answers:

> "a resounding YES. safety and efficacy are of the utmost importance to us. . . . for a majority of our fluoride offerings, we've done third party testing that demonstrated our pastes are effective at removing stains while being gentle on your teeth. these tests are called PCRs (pellicle cleaning ratios) and RDAs (relative dentin abrasivity) . . . ."[85]

Note what is not said—Hello does not say that it has done third-party testing of its Charcoal Toothpastes, and omits any mention of their relative dentin abrasiveness.[86]

## F.     Hello Intended Consumers' Reliance and Induced Consumers' Purchase of the Charcoal Toothpastes

74.     While dentists, the scientific community, consumer groups and even some mainstream media outlets raised and reported on concerns about charcoal toothpastes – at best a "marketing gimmick" and, at worst, harmful to teeth, dentistry implants and overall oral health – Hello unabashedly proceeded with its false and deceptive advertising and marketing campaign. Hello continues to make extreme and inaccurate claims, without scientific evidence to substantiate

---

[85]"safety & allergens," Frequently Asked Questions, Hello-Products.com, https://www.hello-products.com/faq/#safety%20&%20allergens (last accessed June 25, 2019).
[86] "We observed that activated charcoal was more abrasive than a whitening toothpaste on acrylic resins. . . ." Brantley McCarthy et al., "Activated Charcoal as a Whitening Dentifrice," Academy of General Dentistry 2015 Annual Meeting (June 18-21, 2015) [https://www.epostersonline.com/agd2015/node/72].

them. It continues to hype up the attributes of activated charcoal, and also highlights its trendiness and positive press coverage, "as featured in Glamour, Brit + Co, teenVogue."[87]

75.      Hello's marketing was constructed in order to induce consumers to purchase Charcoal Toothpastes over other products, and to do so at a price premium.  Hello charges more for its Charcoal Toothpastes than it does for Hello's other non-charcoal toothpastes. On its website, Hello charges $4.99 per 4 ounce tube of non-charcoal toothpaste. The Charcoal Toothpastes are sold at $5.99 and $6.99 per 4 ounce tube.[88]

### G.      Consumers' Reliance was Reasonable

76.      Each and every purchaser of a tube of the Charcoal Toothpastes was exposed to Hello's claims. In addition to online and print marketing, the claims are printed all over the cardboard packaging and labelled on the toothpaste tubes.

77.      Consumers reasonably relied on Hello's claims. Hello's ubiquitous messaging that it is "thoughtful," "naturally friendly," "free of harmful ingredients," and other stylistic branding flourishes together foster a reasonable expectation that Hello is a trustworthy brand, that its claims were legitimate, and that the products were safe and effective. Consumers reasonably relied on the oft-repeated specific claims that the Charcoal Toothpastes had whitening properties and were safe for everyday use. They also relied on Hello's statements concerning the Charcoal Toothpastes' 'detoxifying' properties, which, while vague, do convey a common understanding that the product is at least safe to use and beneficial to health, as well as effective.

78.      A reasonable consumer could not practicably test or verify Hello's claims. Consumers cannot be expected to research the claims made by the sellers they pay for products.

### H.      Hello's Wrongful Conduct Injured Consumers

---

[87] Hello Products, https://www.hello-products.com (last accessed Sept. 10, 2019).
[88] Toothpaste, Hello Products, https://www.hello-products.com/shop/toothpaste/ (last accessed Sept. 10, 2019).

79.     Consumers have been harmed by these false and misleading representations because they purchased the Charcoal Toothpastes that were ineffective and/or harmful, and did so at a price premium. Consumers relied on Hello's claims and were induced to believe that the Charcoal Toothpastes (sold at $5.99 for the original 'fresh mint + coconut oil' charcoal pastes, and at $6.99 for the SuperpastesTM containing additional 'special' ingredients such as hemp seed oil, natural dragon fruit, natural acai) provide benefits that the non-charcoal Hello toothpastes (sold at $4.99) and other competitor 'natural' toothpastes do not. In fact, they do not bring these benefits. Consumers paid a $1 to $2 premium for a toothpaste with the unproven, potentially harmful ingredient, over the regular toothpastes.

80.     Hello claims that it has tested and verified the effectiveness and safety of its non-charcoal whitening toothpastes, but notably, it makes no such claim for the Charcoal Toothpastes. Moreover, Hello's non-charcoal toothpastes contain certain active and effective ingredients that are not present in the Charcoal Toothpastes.[89] Because the charcoal powder is ineffective as a substitute for those ingredients, the consumer is harmed in a second way that is distinct from, and in addition to, the $1 to $2 price premium paid for nonexistent benefits of activated charcoal. Not only do Hello's Charcoal Toothpastes not bring an additional benefit for the $1 to $2 premium, they also may not provide the basic effectiveness at cleaning and whitening that is provided by other non-charcoal, regular toothpastes. Consumers were damaged by the entire cost of a tube of toothpaste that doesn't whiten teeth or fulfill cleaning and oral health maintenance basics of regular toothpastes.

---

[89] For example, Hello's non-charcoal toothpaste 'hello naturally whitening fluoride toothpaste farm grown mint' includes calcium carbonate (polishes and cleans teeth) (gently whitens teeth), and zinc citrate (controls tartar). However, neither of these are ingredients in the Charcoal Toothpastes, and were ostensibly replaced by charcoal powder in the Charcoal Toothpastes. Thus, had members of the Class purchased Hello's regular, non-charcoal 'naturally whitening' toothpaste, it appears they would own a more effective product containing tested and proven ingredients, and for the price of $4.99. Instead, they paid $5.99-$6.99 for a toothpaste that didn't contain effective ingredients (replaced with the unproven, ineffective and potentially harmful ingredient).

81.     Hello took unfair advantage of its competitors and of its consumers, and has collected substantial profits as a result of their numerous false claims over activated charcoal for oral hygiene and the Charcoal Toothpastes. Hello should not be permitted to retain its substantial benefit from the injuries to Plaintiff and the Classes, nor should it be permitted to continue to benefit from its deceptive practices.

## V.       CLASS ACTION ALLEGATIONS

82.     Pursuant to CAFA and the Federal Rules of Civil Procedure 23(a) and (b)(3), Plaintiff brings this lawsuit as a Class Action on behalf of herself and all other similarly situated members of the Nationwide Class and NY Subclass, as defined below. Plaintiff also brings this suit on behalf of the proposed Alternative NJ Subclass and other State Subclasses, which have yet to defined but will be comprised of members who purchased the Charcoal Toothpastes in states other than New York, and grouped by states whose consumer protection and deceptive trade practices laws are materially identical (and for whom common questions of law predominate). The proposed Nationwide Class and Subclasses are collectively referred to herein as the "Classes." This Class Action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

The Nationwide Class is defined, subject to timely amendment following discovery, as follows:

> All persons who purchased Hello Products, LLC toothpastes containing activated charcoal for personal use within the United States within the applicable statute of limitations (the "Class").

The NY Subclass is defined, subject to timely amendment following discovery, as follows:

> All persons who purchased Hello Products, LLC toothpastes containing activated charcoal for personal use within the state of New York within the applicable statute of limitations (the "NY Subclass").

83.     Excluded from the Classes are: (1) Defendant and their subsidiaries, affiliates, employees, officers, directors, assigns, and successors, as well as any entities or divisions in which any of the Defendants have a controlling interest; (2) the Judge to whom this case is assigned to and any member of the Judge's immediate family; and (3) anyone asserting claims for personal injury in connection with the Charcoal Toothpastes. Plaintiff reserves the right to amend the definition of the Classes if discovery and/or further investigation reveal that the Classes should be expanded or otherwise modified.

84.     **Numerosity**: Each of the Classes are so numerous that joinder of all members is impracticable. The exact number of each of the Classes' members are presently unknown, and can only be ascertained from records maintained by, and in the possession and control of Defendant. However, Plaintiff reasonably estimates that the Nationwide Class consists of tens of thousands of members, and the NY Subclass consists of thousands of members.

85.     **Commonality and Predominance**: Common questions of law and fact exist as to all members of each of the Classes. These common questions predominate over any questions affecting only individual members of the Classes and include, but are not limited to, the following:

a.      Whether Defendant made and breached an express warranty to the named Plaintiff and the Classes;

b.      Whether Defendant misrepresented the effectiveness of its Charcoal Toothpastes at "de-toxifying";

c.      Whether Defendant misrepresented the effectiveness of its Charcoal Toothpastes at "whitening";

d.      Whether Defendant misrepresented the gentleness and safety of its Charcoal Toothpastes;

e.      Whether the Charcoal Toothpastes were merchantable and fit for normal use, and in accord with statements and promises made on their packaging;

       f.      Whether a reasonable consumer would be deceived by Defendant's claims regarding the Charcoal Toothpastes;

       g.      Whether the labeling, packaging and marketing of the Charcoal Toothpastes deceived consumers into paying a higher price than they otherwise would;

       h.      Whether the acts and omissions of Defendant violated Section 349 or 350 of the New York General Business Law;

       i.      Whether Defendant knowingly and intentionally engaged in wrongful and unlawful conduct in connection with the sale, and consumers' purchase of, its Charcoal Toothpastes;

       j.      Whether the acts and omissions of Defendant in its advertising, labeling, packaging and marketing the Charcoal Toothpastes violated the New Jersey Consumer Fraud Act and other materially similar state consumer protection and deceptive trade practices laws;

       k.      Whether Defendant should be enjoined from the continued unlawful marketing, advertising, promotion, distribution, labeling, and sale of the Charcoal Toothpastes;

       l.      Whether Plaintiff and the Class have sustained an ascertainable loss as a result of Defendant's actions, and the nature and calculation of that loss;

       m.      Whether Defendant was unjustly enriched by the sale of the Charcoal Toothpastes and the profits earned therefrom should be disgorged; and

       n.      Whether the actions of Defendant were willful and malicious, or manifested with knowing and reckless indifference and disregard toward the rights of Plaintiff and the Class, warranting punitive damages.

86.    **Typicality**: Plaintiff's claims are typical of the claims of the proposed Classes, as Plaintiff and all members of the Classes purchased Charcoal Toothpastes after exposure to the same material misrepresentations and/or omissions appearing the packaging, Defendant's websites, Defendant's Amazon.com listing, and/or other forms of advertising. Plaintiff and members of the Classes have suffered the same injury as a result. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent members of the Classes.

87.    **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has retained counsel highly experienced in prosecuting consumer class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of members of the Classes, and have the resources to do so. Neither Plaintiff nor her counsel have any interests adverse to those of the Classes.

88.    **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the relatively small size of the claims of the individual members of the respective Classes, absent a class action, most members would likely find the cost of litigating their claims against Defendant to be prohibitive. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the time and resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The class action device presents no management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    CAUSES OF ACTION

### COUNT ONE
*Nationwide Class*
**Breach of Express Warranty**
**Uniform Commercial Code § 2-313**

89.    Plaintiff re-asserts and references the allegations in this Complaint, and incorporates as if fully set forth herein.

90.    Plaintiff brings this claim under Article 2 of the Uniform Commercial Code (the "UCC") (as adopted and applied by the states), individually and on behalf of the members of the Nationwide Class.

91.     Under Section 2-313 of the UCC, affirmations of fact or promise made by the seller to the buyer, which relate to the goods and are a basis of the bargain, create an express warranty that the goods shall conform to the affirmation or promise. In connection with the sale of the Charcoal Toothpastes, Hello issued written express warranties concerning the Charcoal Toothpastes. These included, but were not limited to, express warranties that the Charcoal Toothpastes (i) are safe and gentle enough for everyday use, (ii) are effective for whitening teeth and (iii) de-toxify the mouth.

92.     Defendant's affirmations of fact or promise were made to Plaintiff and members of the Nationwide Class lass on the product packaging of the Charcoal Toothpastes, on Hello's website and in other online sites and print advertising. These affirmations of fact or promise became part of the basis of the bargain between the Defendant on one hand, and Plaintiff and Nationwide Class members on the other, thereby creating express warranties that the Charcoal Toothpastes would conform to Defendant's affirmations of fact, representations, and promises.

93.     Plaintiff and members of the Nationwide Class reasonably and justifiably relied on Hello's express warranties, believing that the Charcoal Toothpastes they purchased would conform to the express warranties.

94.     Defendant breached its express warranties because the Charcoal Toothpastes do not, in fact conform to the affirmations of fact or promise, and the Charcoal Toothpastes do not perform as expressly warranted.

95.     Plaintiff and the Nationwide Class members were injured as a direct and proximate result of Defendant's breach because the Plaintiff and the Nationwide Class members did not receive goods as warranted by Defendant. Plaintiff and the members of the Nationwide Class did not receive the benefit of the bargain, as the Charcoal Toothpastes did not have the promised

benefits, effectiveness, safety or value as represented.  The Plaintiff and members of the Nationwide Class suffered injuries because, had they known the true facts, they would not have purchased the Charcoal Toothpastes and/or would not have paid the price premium Hello charged for the Charcoal Toothpastes, as compared to similar products that did conform as warranted and represented.

96.     As a direct and proximate result of Hello's breaches of express warranty, Plaintiff and the Nationwide Class members have been damaged by the difference in value between the Charcoal Toothpastes as advertised and the Charcoal Toothpastes as actually sold, in an amount to be proven at trial.

## COUNT TWO
### *Nationwide Class*
### Implied Warranty of Merchantability
### Uniform Commercial Code § 2-314

97.     Plaintiff re-asserts and references the allegations in this Complaint, and incorporates as if fully set forth herein.

98.     Plaintiff brings this claim under Article 2 of the UCC (as adopted and applied by the various states), individually and on behalf of the members of the Nationwide Class.

99.     Under Section 2-314 of the UCC, a warranty that the goods shall be merchantable is implied in the contract for their sale, if the seller is a merchant with respect to goods of that kind. To be considered merchantable, the good must be safe and fit for the intended use, and conform to the promise or affirmations of fact made on the label or packaging.

100.     In this case, Hello qualifies as a merchant, and a warranty of merchantability was implied in the sale of Charcoal Toothpastes to the Plaintiff and members of the Nationwide Class. Hello sold the Charcoal Toothpastes clearly labeled as having certain characteristics. Hello knew

the use for which the Charcoal Toothpastes were intended, and impliedly warranted them to be of merchantable quality, safe and fit for use.

101.    With each sale of falsely labelled Charcoal Toothpastes to the Plaintiff and Nationwide Class members, Hello has breached the implied warranty of merchantability.

102.    Plaintiff and Nationwide Class members reasonably relied on Hello's affirmations, as well as the projected trustworthiness of the company. Had the Plaintiff and Nationwide Class members known of the true nature of the Charcoal Toothpastes and that they were not of merchantable quality, not safe or fit for their intended use, and not in conformance with Hello's representations, they would not have purchased them, or they would not have been willing to pay the inflated price.

103.    As a direct and proximate result of Hello's breaches of implied warranty of merchantability, Plaintiff and the Nationwide Class members have been damaged by the difference in value between the Charcoal Toothpastes as advertised and the Charcoal Toothpastes as actually sold, in an amount to be proven at trial.

**COUNT THREE**
*NY Subclass*
**Deceptive Acts and Practices**
**Violation of New York General Business Law § 349**

104.    Plaintiff re-asserts and references the allegations in this Complaint, and incorporates as if fully set forth herein.

105.    Plaintiff brings this Count individually and on behalf of the members of the NY Subclass.

106.    By the acts and conduct alleged herein, Defendant Hello committed unfair or deceptive acts and practices. These acts and conduct include, but are not limited to, Defendant's misrepresentations that the Charcoal Toothpastes (i) are safe and gentle enough for everyday use,

(ii) are effective for whitening teeth and (iii) de-toxify the mouth. Defendant's unlawful conduct also included omitting material facts, such as failing to disclose to consumers that (i) its claims lacked a scientific basis or credible substantiation; and (ii) the safety and effectiveness of charcoal for use in dentifrice was counter-indicated in scientific literature.

107.    The foregoing deceptive acts and practices were likely to deceive or mislead reasonable consumers, and were consumer-oriented so as to induce consumers to purchase the Charcoal Toothpastes.

108.    Defendant's deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and benefits of the Charcoal Toothpastes. They misled reasonable consumers who acted reasonably under the circumstances, inducing them to purchase the Charcoal Toothpastes, and to do so at a price premium.

109.    As a result of Defendant's false, misleading, and deceptive statements and representations, including but not limited to the misrepresentations described herein, Plaintiff and members of the NY Subclass have suffered, and continue to suffer, economic injury. They were injured because, had they known the true facts (that the Charcoal Toothpastes did not have the represented characteristics and benefits), they would not have purchased the Charcoal Toothpastes and/or would not have paid the price premium Hello charged for the Charcoal Toothpastes, as compared to similar products that did not bear these misrepresentations.

110.    Plaintiff and the NY Subclass were damaged by the difference in value between the Charcoal Toothpastes as advertised and the Charcoal Toothpastes as actually sold.

111.    Pursuant to New York General Business Law § 349, Plaintiff seeks an order of this Court enjoining Hello from continuing to engage in unlawful, unfair or fraudulent business practices, or any other conduct prohibited by law. Plaintiff and the NY Subclass members may be

irreparably harmed and/or denied an effective and complete remedy if such an order is not granted. The unfair and deceptive acts and practices of Hello, as described above, present a serious threat to Plaintiff and the NY Subclass members. Plaintiff thus prays for relief as set forth below.

**COUNT THREE**
*NY Subclass*
**False Advertising**
**Violation of New York General Business Law § 350**

112.    Plaintiff re-asserts and references the allegations in this Complaint, and incorporates as if fully set forth herein.

113.    Plaintiff brings this Count individually, and on behalf of the NY Subclass.

114.    By the acts and conduct alleged herein, Hello committed unfair or deceptive acts and practices that constitute violations of Section 350 of the New York General Business Law, which makes false advertising unlawful.

115.    Hello's misleading marketing, advertising, packaging and labeling of the Charcoal Toothpastes is false advertising likely to deceive a reasonable consumer. Hello's marketing, advertising, packaging and labeling of the Charcoal Toothpastes misrepresents the true benefits, effectiveness, safety of the Charcoal Toothpastes, including but not limited to its claims that the Charcoal Toothpastes are safe for everyday use, effective at whitening teeth, and to detoxify the mouth.

116.    Plaintiff and members of the NY Subclass were indeed deceived regarding the characteristics of Hello's Charcoal Toothpastes. Plaintiff and members of the NY Subclass who purchased the falsely labeled Charcoal Toothpastes were reasonable under the circumstances and could not have known the Charcoal Toothpastes they purchased did not in fact bear the properties and qualities as advertised, marketed, packaged and labeled.

117.    As a result of Defendant's deceptive and false advertising, Plaintiff and members of the NY Subclass have suffered, and continue to suffer, an injury that they could not have reasonably avoided. They were injured because, had they known the true facts (that the Charcoal Toothpastes did not have the promised characteristics, properties and benefits), Plaintiff and members of the NY Subclass would not have purchased the Charcoal Toothpastes and/or would not have paid the price premium Hello charged for the Charcoal Toothpastes, as compared to similar products that were not falsely advertised.

118.    Plaintiff and members of the NY Subclass were damaged by the difference in value between the Charcoal Toothpastes as advertised and the Charcoal Toothpastes as actually sold. Plaintiff and the members of the NY Subclass have suffered an ascertainable loss caused by Defendant's misrepresentations and false advertising.

119.    In addition to the consumer injuries alleged herein, Defendant's deceptive and false advertising, marketing and labeling practices have caused harm to competition and the public interest.

120.    Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way, and which constitutes false advertising in violation of Section 350 of the New York General Business Law.

121.    On behalf of herself and other members of the NY Subclass, Plaintiff seeks to enjoin Hello from continuing to engage in false advertising and any other unlawful acts and practices, pursuant to New York General Business Law Section 350. Plaintiff and the NY Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted. The injuries and harms caused by Defendant's conduct are serious and ongoing.

122.    Pursuant to New York General Business Law Section 350-e, Plaintiff, on behalf of herself and the members of the NY Subclass, seeks to recover the actual damages or $500, whichever is greater, and seeks to have these damages trebled. They also seek any other statutorily available damages, and to recover reasonable attorneys' fees and costs.

## COUNT FOUR
### Nationwide Class and/or Alternative NJ Subclass and Other State Subclasses
**Violation of New Jersey Consumer Fraud Act §56, and/or Violations of Materially Similar State Consumer Protection and Deceptive Trade Practices Laws**

123.    Plaintiff re-asserts and references the allegations in this Complaint, and incorporates as if fully set forth herein.

124.    Defendant's acts, omissions and practices described herein are in violation of multiple states' consumer protection, unfair competition and deceptive trade practices laws that may apply to currently unknown members of the Nationwide Class who made their purchase in U.S. states other than New York. For purposes of manageability, and to the extent the same questions of fact and law predominate, the New Jersey Consumer Fraud Act is pled herein. Alternatively, and as a separate and alternative theory of recovery to the other Counts alleged herein, various Subclasses might be created for the application of other states' laws (as the Court may deem appropriate, in its consideration of materially identical state laws with materially similar elements).

125.    The New Jersey Consumer Protection Act prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact" in connection with the sale or advertisement of merchandise. N.J.S.A. § 56:8-2.

126.    Defendant's product packaging constitutes an "advertisement" within the meaning of Section 56-8-1(a) of the New Jersey Consumer Fraud Act, as it is an attempt by publication,

dissemination, solicitation, indorsement, or circulation to induce consumers to acquire an interest in Defendant's merchandise, or to increase consumption thereof.

127.    Defendant's Charcoal Toothpastes constitute "merchandise" within the meaning of Section 56-8-1(c) of the New Jersey Consumer Fraud Act, as they are directly or indirectly offered to the public for sale and they fall within the statutory categories.

128.    Defendant's policies, acts and practices in connection with the advertisement and sale of the Charcoal Toothpastes were designed and intended to induce consumers' reliance and purchase of the Charcoal Toothpastes. Hello's advertising and representations concerning the Charcoal Toothpastes were deceptive, false, and misleading, including but not limited to its claims that the Charcoal Toothpastes (i) are safe and gentle enough for everyday use, (ii) are effective for whitening teeth and (iii) de-toxify the mouth. Hello also consciously omitted the disclosure of material facts to consumers concerning the Charcoal Toothpastes, such as failing to disclose to consumers that (i) its claims lacked a scientific basis or credible substantiation; and (ii) the safety and effectiveness of charcoal for use in dentifrice was counter-indicated in scientific literature. Hello's misrepresentations and omissions of material facts in its marketing, advertising and sale of the Charcoal Toothpastes were, and continue to be, unconscionable and unlawful and in contravention of public policy.

129.    Had Defendant not falsely represented its merchandise and/or omitted material information regarding its merchandise, Plaintiff and members of the Classes would not have purchased the Charcoal Toothpastes, or would have paid less for them.

130.    Defendant's acts, omissions and practices described herein foreseeably and proximately caused Plaintiff and other members of the Classes to suffer an ascertainable loss in the form of, *inter alia,* monies spent to purchase Charcoal Toothpastes that they otherwise would

44

not have. They are entitled to recover such damages, together with appropriate penalties (including treble damages), attorneys' fees and costs of suit.

131.    Plaintiff alternatively alleges that Hello violated the substantive laws of all or some of the 50 states and United States territories where consumers reside, which might include:

Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-1 through 8-19-15; Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471 through 45.50.561; Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521 through 44-1534; Arkansas Deceptive Trade Practices Act, Ark. Code. Ann. §§ 4-88-101 through 4-88-207; California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; California Consumer Legal Remedies Act, Cal Civ. Code § 1750; Colorado Consumer Protection Act CRS 6-1-101, *et seq*.; Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a-q; Delaware Consumer Fraud Act, Del. Code Ann. Tit. 6 § 2511, *et seq.*, Deceptive Trade Practices Act, Del. Code Ann. Tit. 6, § 2531, *et seq*.; District of Columbia Consumer Protection Act, D.C. Code § 28-390, *et seq*.; Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.;* Georgia Fair Business Practices Act, Ga. Code. Ann. §§ 10-1-390 through 407; Hawaii Unfair or Deceptive Acts and Practices Act, Haw. Rev. Stat. §§ 480-1, *et seq.;* Idaho Consumer Protection Act, Idaho Code Ann. § 48-601; Illinois Consumer Fraud Act, 815 ILCS 505/1-505/12; Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1-505/7; Indiana Deceptive Consumer Sales Act, Indiana Code §§ 24-5-0.5-1 to -12; Iowa Consumer Fraud Act, Iowa Code Section 714H.16; Kansas Consumer Protection Act, Kan Stat. Ann. § 50-623, *et seq.;* Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110 through 367.990; Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. §§ 51:1401 through 51:1420; Maine Unfair Trade Practices Act, 5 M.R.S.A. §§ 205-A-214; Maine Uniform Deceptive Trade Practices Act, 10 M.R.S.A. §§ 1211-1216; Maryland Consumer Protection Act, Md. Code Com. Law § 13-101, *et seq*.; Massachusetts Regulation of Business Practices for Consumers Protection, Mass. Gen. L. Ch. 93A; Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901, *et seq*.; Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69; Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.44; Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 through 407.307; Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. §§ 30-14-101 through 30-14-142; Nebraska Consumer Protection Act, Neb. Rev. St. §§ 59-1601 through 59-1623; Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. St. §§ 87-301 through 87-306; Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903-598.0999, Nev. Rev. Stat. § 41.600; New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. §§ 358-A:1 through 358-A:13; New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq*.; New Mexico Unfair Trade Practices Act, N.M. Stat. § 57-12-1, *et seq*.; North Carolina Unfair and Deceptive Acts and Practices Act, N.C. Gen. Stat. § 75.1.1 through 75-35; North Dakota Unlawful Sales or Advertising Practices Law D. Cent. Code §§ 51-15-01 through 51-51-11**;** Ohio Consumer Sales Practices Act, Ohio Rev. Code. Ann. §§ 1345.13, *et seq*.; Ohio Deceptive Trade Practices Act, Ohio Rev. Code Ann. §§ 4165.01 through 4165.04; Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §§ 751 through 763; Oklahoma Deceptive Trade Practices Act, Okla. Stat. tit. 78, §§ 51 through 55;

Oregon Unlawful Trade Practices Law, Or. Rev. Stat. §§ 646.605 through 646.656; Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 through 201-9.3; Rhode Island Unfair Deceptive Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1 through 6-13.1-27; South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10 through 39-5-160; South Dakota Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37-24-1 through 37-24-35; Tennessee Consumer Protection Act, NCA Tenn. Code Ann. § 47-18-101, *et seq*.; Texas Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, *et seq.*; Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1 through 13-11-23; Utah Truth in Advertising, Utah Code Ann. §§ 13.11a-1 through 13.11a-5; Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §§ 2451 through 2480g; Virginia Consumer Protection Act, Va. Code § 59.1-196, *et seq.*; Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.010 through 19.86.920; West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-6-101 through 46A-6-110; Wisconsin Deceptive Trade Practice Act, Wis. Stat. § 100.18; Wyoming Consumer Protection Act, Wyo. Stat. Ann. §§ 40-12-101 through 114.

132.   As a direct and proximate result of Hello's statutory violations, Plaintiff and the members of the Classes have been injured and suffered damages in the amount of the purchase price of the Charcoal Toothpaste they purchased and/or the price premium paid.

133.   By reason of Hello's violations, Plaintiff and the Classes are entitled to relief and to recover damages, including treble damages where available and other statutorily provided damages and remedies, and to recover costs and attorneys' fees.

### COUNT FIVE
### *Nationwide Class*
### Intentional or Negligent Misrepresentation

134.   Plaintiff re-asserts and references the allegations in this Complaint, and incorporates as if fully set forth herein.

135.    Defendant had a duty to provide a non-deceptive and lawful description of the benefits, properties, and qualities of the Charcoal Toothpastes and to not conduct itself in contravention of public policy.

136.   In its product packaging, labeling, marketing and advertising, Defendant made false and misleading representations to Plaintiff and the members of the Nationwide Class, and/or

omitted the disclosure of material facts. Defendant knew or should have known the representations and omissions rendered its claims on the Charcoal Products false or misleading. Defendant acted without reasonable grounds for believing the representations were true, and intended that said representations induce reliance of the Plaintiff and the members of the Nationwide Class.

137.    Plaintiff and members of the Nationwide Class reasonably and justifiably relied upon the Defendant's representations and omissions, which were in violation of Defendant's duties.

138.    As a result of Defendant's wrongful conduct, Plaintiff and members of the Nationwide Class have suffered and continue to suffer injury, including but not limited to the amounts paid for the Charcoal Toothpastes.

## COUNT SIX
### *Nationwide Class*
### Unjust Enrichment

139.    Plaintiff re-asserts and references the allegations in this Complaint, and incorporates as if fully set forth herein.

140.    As a result of Hello's deceptive, fraudulent and misleading labeling, advertising, marketing and sales of the Charcoal Toothpastes, Hello was enriched at the expense of Plaintiff and other members of the Nationwide Class, through the purchase price payments for Charcoal Toothpastes. The Charcoal Toothpastes did not have the qualities, properties and benefits that Hello represented them to have.

141.    Because the Charcoal Toothpastes were not as Hello purported them to be, it is unequitable and unjust to permit Hello to retain its ill-gotten financial benefits from the sale of the Charcoal Toothpastes. Therefore, Plaintiff and the Nationwide Class seek disgorgement and restitution of such financial benefits, as set forth below.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated in the NY Subclass, the Nationwide Class, and any other created Subclasses, prays for relief as follows:

(a) Certification of this case as a class action, and of the Nationwide Class and NY Subclass proposed herein (and any other Subclasses) under the Federal Rules of Civil Procedure, designation of the Plaintiff as the representative of the Classes, and appointment of the undersigned counsel as counsel for the Classes;

(b) An order enjoining Defendant from making further misrepresentations regarding the Charcoal Toothpastes, including but not limited to statements that the Charcoal Toothpastes:

   a. Whiten teeth;

   b. Detoxify the mouth;

   c. Are safe and gentle for everyday use.

(c) An order requiring Defendant to issue appropriate corrective advertisements, and to retract its prior false and misleading claims;

(d) Restitution, disgorgement, refund and/or return of all monies, revenues and profits obtained by Hello by means of misleading, deceptive and unlawful acts or practices;

(e) Actual Damages in an amount to be determined at trial;

(f) Statutory damages in the maximum amount provided by law;

(g) Punitive damages;

(h) Costs, expenses, and reasonable attorneys' fees pursuant to applicable statutes;

(i) Pre-judgment and post-judgment interest; and

(j) All such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff and the Classes hereby demand a jury trial of the claims asserted in this Complaint.

Dated: October 16, 2019                              Respectfully submitted,

                                                     /s/ *William B. Federman*
                                                     William B. Federman
                                                     (S.D. New York #WF9124)
                                                     FEDERMAN & SHERWOOD
                                                     10205 N. Pennsylvania Ave.
                                                     Oklahoma City, Oklahoma 73120
                                                     (405) 235-1560
                                                     (405) 239-2112 (facsimile)
                                                     wbf@federmanlaw.com

                                                     *Counsel for Plaintiff Sarah Patellos and the*
                                                     *Proposed Classes*