**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SARAH PATELLOS and ERIC FISHON, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HELLO PRODUCTS, LLC,<br><br>Defendant. | CASE NO. 1:19-CV-09577-PAE |

<u>**MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**HELLO PRODUCTS LLC'S MOTION TO DISMISS**</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

SUMMARY OF ALLEGATIONS AND BACKGROUND ........................................... 2

ARGUMENT ................................................................................................................. 5

I.      PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED UNDER RULE
        12(b)(1) BECAUSE THEY LACK ARTICLE III STANDING. ........................... 5

II.     PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED UNDER RULE
        12(b)(6) FOR FAILURE TO STATE A CLAIM. .................................................. 6

        A.      Plaintiffs' Complaint Should Be Dismissed In Its Entirety Because
                Plaintiffs Do Not Plausibly Allege That Hello's Charcoal
                Toothpastes Do Not Work As Represented. ................................................ 7

        B.      Plaintiffs Fail to Plead Their Fraud-Based Claims with the
                Particularity Required by Rule 9(b) (Counts 1, 2, 4-6)............................ 10

        C.      Plaintiffs' Fluoride-Specific Claims Are Preempted (All Counts). .......... 12

        D.      Plaintiffs' Breach of Warranty Claims Fail (Counts 1 & 2). .................... 14

        E.      Plaintiffs Cannot Bring a Claim for Violation of the New Jersey
                Consumer Fraud Act (Count 4)................................................................. 15

        F.      Plaintiffs Fail to Allege the Scienter Required to Support Their
                Intentional Misrepresentation Claim (Count 5). ....................................... 16

        G.      Plaintiffs Have Not and Cannot State a Negligent
                Misrepresentation Claim (Count 5). .......................................................... 18

        H.      Plaintiffs' Unjust Enrichment Claim Must Be Dismissed as
                Duplicative of Their Other Claims (Count 6). .......................................... 19

        I.      Plaintiffs Lack Standing To Seek Injunctive Relief. ................................ 19

CONCLUSION............................................................................................................. 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011)....................................................................................5, 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................7

*Belcastro v. Burberry Ltd.*,
    No. 16-CV-1080, 2017 WL 744596 (S.D.N.Y. Feb. 23, 2017)................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................7

*Bowling v. Johnson & Johnson*,
    65 F. Supp. 3d 371 (S.D.N.Y. 2014)...........................................................12, 13, 14

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)...........................................................................................19, 20

*Colangelo v. Champion Petfoods USA, Inc.*,
    No. 6:18-CV-1228, 2020 WL 777462 (N.D.N.Y. Feb. 18, 2020).........................7, 8

*Cooper v. Samsung Elecs. Am., Inc.*,
    374 F. App'x 250 (3d Cir. 2010) .........................................................................16

*Corsello v. Verizon New York, Inc.*,
    18 N.Y.3d 777 (2012) .........................................................................................19

*Davis v. Hain Celestial Grp., Inc*,
    297 F. Supp. 3d 327 (E.D.N.Y. 2018) .................................................................17

*Deshawn E. by Charlotte E. v. Safir*,
    156 F.3d 340 (2d Cir. 1998)................................................................................20

*Diversified Const. of WNY, Inc. v. Sheds USA, Inc.*,
    No. 04-CV-0739E, 2005 WL 1263151 (W.D.N.Y. May 26, 2005) .........................10

*DiVittorio v. Equidyne Extractive Indus. Inc.*,
    822 F.2d 1242 (2d Cir. 1987)..............................................................................10

*Duran v. Henkel of Am., Inc.*,
    No. 19 CIV. 2794, 2020 WL 1503456 (S.D.N.Y. Mar. 30, 2020)
    (Engelmayer, J.) ....................................................................................8, 9, 17, 20

*Eternity Glob. Master Fund, Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
    375 F.3d 168 (2d Cir. 2004)...............................................................................10

*Franulovic v. The Coca Cola Co.*,
    390 F. App'x 125 (3d Cir. 2010) .......................................................................16

*Gabriele v. Am. Home Mortg. Servicing, Inc.*,
    503 Fed. App'x. 89 (2d Cir. 2012).....................................................................16

*Gambles v. Sterling Infosystems, Inc.*,
    234 F. Supp. 3d 510 (S.D.N.Y. 2017).............................................................5, 6

*Gordon v. Hain Celestial Grp., Inc.*,
    No. 16-CV-6526, 2017 WL 213815 (S.D.N.Y. Jan. 18, 2017) ...........................18

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996)................................................................................10

*Hidalgo v. Johnson & Johnson Consumer Co.'s Inc.*,
    148 F. Supp. 3d 285 (S.D.N.Y 2015).................................................................19

*Hubbard v. Gen. Motors Corp.*,
    No. 95 CIV. 4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996)..........................15

*Hughes v. Ester C Co.*,
    330 F. Supp. 3d 862 (E.D.N.Y. 2018) ...............................................................19

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
    227 F.3d 8 (2d Cir. 2000) .................................................................................18

*Izquierdo v. Mondelez Int'l, Inc.*,
    No. 16-CV-04697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)..........................9

*Kelen v. Nordstrom, Inc.*,
    259 F. Supp. 3d 75 (S.D.N.Y. 2016)...............................................................5, 6

*Lama Holding v. Smith Barney, Inc.*,
    88 N.Y.2d 413 (1996) .......................................................................................16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................................................................6

*Mandarin Trading Ltd. v. Wildenstein*,
    16 N.Y.3d 173 (2011) .......................................................................................18

*Nirmul v. BMW of N. Am., LLC*,
    No. 10-CV-5586, 2011 WL 5195801 (D.N.J. Oct. 31, 2011)). Pl..........................16

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015).................................................................8, 9

*Premium Mortg. Corp. v. Equifax, Inc.*,
  583 F.3d 103 (2d Cir. 2009)..................................................................16

*Quinn v. Walgreen Co.*,
  958 F. Supp. 2d 533 (S.D.N.Y. 2013).....................................................15

*Quiroz v. Beaverton Foods, Inc.*,
  No. 17-CV-7348, 2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019)..........17

*Reed v. Pfizer, Inc.*,
  839 F.Supp. 2d 571 (E.D.N.Y. 2012) ...................................................14

*Rodriguez v. Hanesbrands Inc.*,
  2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018).......................................17

*Rodriguez v. Hanesbrands Inc.*,
  No. 17-CV-1612, 2018 WL 2078116, at *8 (E.D.N.Y. Feb. 20, 2018), *adop*..................17, 18

*Rolo v. City Investing Co. Liquidating Trust*,
  155 F.3d 644 (3d Cir. 1998)..................................................................10

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)..................................................................10

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
  84 F.3d 629 (2d Cir. 1996)....................................................................16

*Scheuerman v. Nestle Healthcare Nutrition*,
  No. CIV. 10-3684, 2012 WL 2916827 (D.N.J. July 17, 2012) .............16

*Silva v. Smucker Nat. Foods, Inc.*,
  No. 14-CV-6154, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ..........15

*Sitt v. Nature's Bounty, Inc.*,
  No. 15-CV-4199, 2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) ..........19

*Solomon v. Bristol-Myers Squibb Co.*,
  No. CIV.A.07-1102, 2009 WL 5206120 (D.N.J. Dec. 30, 2009)..........10

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
  No. 14-CV-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ..........19

*Tears v. Bos. Sci. Corp.*,
  344 F. Supp. 3d 500 (S.D.N.Y. 2018).....................................................17

*Tyman v. Pfizer, Inc.*
  2018 WL 481890 (S.D.N.Y. Jan. 18, 2018) ........................................................11

*Tyman v. Pfizer, Inc.*,
  No. 16-CV-06941, 2017 WL 6988936 (S.D.N.Y. Dec. 27, 2017) ....................................11, 18

*Weaver v. Chrysler Corp.*,
  172 F.R.D. 96 (S.D.N.Y. 1997) ........................................................16

*Weisblum v. Prophase Labs, Inc.*,
  88 F. Supp. 3d 283 (S.D.N.Y. 2015)........................................................18

*Wick v. Wabash Holding Corp.*,
  801 F. Supp. 2d 93 (W.D.N.Y.2011) ........................................................15

*Wis. Pub. Intervenor v. Mortier*,
  501 U.S. 597 (1991)........................................................12

*Wright v. Publishers Clearing House, Inc.*,
  No. 2:18-cv-02373, 2020 WL 729884 (E.D.N.Y. Feb. 13, 2020) ............................................9

**Statutes**

21 U.S.C. § 321(i) ........................................................12

21 U.S.C. § 352(a) ........................................................13

21 U.S.C. § 355.3 ........................................................13

21 U.S.C. § 362(a) ........................................................13

21 U.S.C. § 379r(a) ........................................................13

21 U.S.C. § 379s(a) ........................................................13

Consumer Fraud Act, N.J. Stat. § 56-1-56:8-198 (1976)........................................................5

N.Y. Gen. Bus. Law § 349 (2014) ........................................................4, 9, 10

N.Y. Gen. Bus. Law § 350 (1963) ........................................................4, 19

**Rules**

Fed. R. Civ. P. 9(b) ........................................................10, 11

Fed. R. Civ. P. 12(b)(1) ........................................................5, 6

Fed. R. Civ. P. 12(b)(6)........................................................6, 7

**Other Authorities**

21 C.F.R. § 355.1 ..............................................................................................................13

21 C.F.R. § 355.50(b) ..................................................................................................13, 14

http://www.fda.gov/Cosmetics/GuidanceRegulation/LawsRegulations/
    ucm074201.htm ........................................................................................................12

## INTRODUCTION

Plaintiffs Sarah Patellos and Eric Fishon ("Plaintiffs") bring this putative class action complaint against Defendant Hello Products, LLC ("Hello"), purportedly to challenge statements related to Hello's activated charcoal toothpaste products. Plaintiffs do not allege they were harmed or injured by the products, nor that the products failed to work as advertised. Instead, Plaintiffs simply list every Hello labeling and advertising claim they could find, allege (without any basis) that these claims are not substantiated, and now wait to see if anything will survive a challenge to their thin pleading. Plaintiffs' entire complaint is fatally deficient under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and should be dismissed on either independent basis.

Aside from the single allegation that Plaintiffs purchased Hello's products (*see* First Am. Compl. ("FAC" or "Complaint") ¶¶ 16-17), the Complaint says nothing of their experience with the products, relying instead on conclusory statements and generic articles about activated charcoal. Without allegations that Hello's products personally caused them harm or failed to work as advertised, Plaintiffs have not shown that they suffered a concrete and particularized injury and therefore do not meet the threshold subject matter jurisdiction requirements of Rule 12(b)(1). This failure alone is enough to require dismissal of Plaintiffs' complaint.

Even if Plaintiffs could somehow establish Article III injury, each of their causes of action fails under Rule 12(b)(6). ***First***, Plaintiffs' entire complaint should be dismissed because Plaintiffs have not alleged that the products did not work as Hello advertised. ***Second***, Plaintiffs fail to plead their fraud-based claims with the particularity required by Rule 9(b). ***Third***, Plaintiffs' claims regarding the safety and efficacy of Hello's fluoride toothpastes are expressly preempted by federal law. ***Fourth***, Plaintiffs' breach of warranty claims fail because they do not allege any actual breach, they failed to provide the requisite notice, and they lack privity with Hello because they purchased through third-party retailers. ***Fifth***, Plaintiffs are both New York residents who allegedly

purchased Hello products in New York, so they do not have standing to allege a violation of New Jersey (or any other state's) law. **Sixth**, Plaintiffs have failed to allege any facts supporting scienter on Hello's behalf and thus cannot bring a fraud claim. **Seventh**, Plaintiffs' negligent misrepresentation claim is barred by the economic loss rule and, in any event, Plaintiffs did not and cannot allege a special relationship with Hello such that a duty exists (let alone one that was breached). **Eighth**, Plaintiffs' unjust enrichment claim is improper because Plaintiffs have traditional claims available to them. **Finally**, Plaintiffs have no standing to seek injunctive relief as they did not and cannot allege that they would purchase Hello's products again.

For all of these reasons, Plaintiffs' Complaint should be dismissed in full.

## SUMMARY OF ALLEGATIONS AND BACKGROUND

Hello sells dozens of unique oral care products for babies, children, and adults, including toothpastes, mouthwashes, and toothbrushes. Hello's adult toothpaste products include a line of toothpastes containing activated charcoal, which come in both fluoride and fluoride-free versions. First Am. Compl. ("FAC") ¶3.[1] Hello's Charcoal Toothpastes are among the leading charcoal toothpastes on the market. *Id*. ¶¶ 2, 5. As reflected by its name, "Hello" is a "naturally friendly™" company, started by a small group of entrepreneurs who were seeking to develop products that utilized thoughtful, responsibly-sourced ingredients, that were never tested on animals, and that employed fun, witty and *honest* labeling. *See generally* https://www.hello-products.com/.

Plaintiffs filed their First Amended Complaint on February 28, 2020, listing a number of claims that Plaintiffs allege Hello made with respect to its Charcoal Toothpastes. Plaintiffs, in fact,

---

[1] Plaintiffs' Complaint refers to all of Hello's charcoal toothpastes containing fluoride as the "Fluoride Charcoal Toothpastes," the fluoride free ones as "Fluoride-Free Charcoal Toothpastes" and all of the charcoal toothpastes collectively as "Charcoal Toothpastes." *Id.* ¶ 3. For ease of reference (but not conceding that these toothpastes can be grouped together for all litigation purposes), Hello adopts the same terminology herein.

list over 30 different product claims in their Complaint, including everything from "slays dragon breath" and "epic whitening" to "a friendly force of nature" and "awesome for fresh breath." *See* FAC ¶¶ 4-5, 30, 46-57, 60, 62, 70-71, 81, 83, 107. But Plaintiffs provide no details about which exact claims they seek to challenge in their lawsuit, and they allege no facts detailing when, where or whether Plaintiffs viewed or relied on any of the referenced claims at all. Hello can only guess whether, for example, Plaintiffs seriously plan to try to prove that reasonable consumers are confused over whether the products, in fact, slay the breath of dragons. *Id.* ¶¶ 51, 53.

While not a model of clarity, the Complaint appears to contend generally that Hello is liable to Plaintiffs and a class of other consumers because Hello (1) made various claims regarding its Charcoal Toothpastes and their "whitening, cleansing, polishing, breath freshening, stain-lifting, plaque-removing, detoxifying, adsorptive" qualities, (2) marketed the Charcoal Toothpastes as "generally safe, effective and beneficial for daily, long term oral care use," and (3) made statements about its Fluoride Charcoal Product's ability to help prevent cavities and strengthen enamel when Hello "did not possess the requisite evidence to substantiate its claims concerning the benefits and safety of its Charcoal Toothpastes." *Id.* ¶¶ 4, 7, 11, 54, 70-72, 81, 107, 142.

Plaintiff Sarah Patellos resides in New York and alleges that she purchased Hello's popular fluoride-free toothpaste online on Amazon based on statements she had seen regarding Hello's ability to naturally whiten her teeth and "that it was safer and less damaging than other whitening toothpastes." *Id.* ¶ 16. The Complaint does not detail where Ms. Patellos saw these representations or when, or what the specific statements were that allegedly influenced Ms. Patellos's purchase. There are also no allegations about whether Ms. Patellos actually used Hello's toothpaste, for how long, what her experience with it was, and whether it did in fact meet her supposed expectations. Plaintiff Eric Fishon alleges that he purchased at least three types of Hello's charcoal toothpaste,

including both the fluoride and fluoride-free versions, from Target online and Amazon. *Id.* ¶ 17. Mr. Fishon allegedly relied on various statements that Hello's paste had "teeth whitening and detoxifying effects from the activated charcoal, and would promote and benefit oral health, as well as strengthen teeth (as claimed on the Charcoal Toothpastes)." *Id.* Like Ms. Patellos, Mr. Fishon makes no allegations about his use of the products, his experience with them, whether it did, in fact, meet his supposed expectations, or why he purchased Hello on repeated occasions. *Id.*

Plaintiffs' factual allegations about their experiences and Hello's products end there. The remainder of Plaintiffs' Complaint consists of summaries and out-of-context quotations from various articles regarding charcoal and charcoal pastes, none of which are specific to Hello's Products (*id.* ¶¶ 7, 22-29, 31-40, 59, 61, 64-66, 73, 75, 76, 77, 78, 80, 82-85, 97, 99), summaries of federal regulations (*see id.* ¶¶ 6, 87-94), speculation about Hello's Charcoal Toothpastes' lack of the "ADA Seal of Acceptance" (*id.* ¶¶ 8, 41–45),[2] and conclusory statements about Hello's substantiation, "knowledge," and consumers' reliance and injury (*see id.* ¶¶ 7, 13, 58, 60, 61, 65, 68, 72, 81, 86, 95-105–111).

Based on these vague and unsupported allegations and the simple fact that Plaintiffs purchased Hello products, Plaintiffs claim that Hello is liable to a class of consumers across the country for Breach of Express Warranty (Count 1), Breach of the Implied Warranty of Merchantability (Count 2), Deceptive Acts and Practices under New York's General Business Law § 349 (Count 3a[3]), False Advertising under New York's General Business Law § 350 (Count 3b),

---

[2] Hello has never claimed that its Charcoal Toothpastes have been granted the ADA Seal of Acceptance, and nowhere in their Complaint do Plaintiffs allege Hello has made any such claim. *Id.* ¶¶ 8, 41–45.

[3] Plaintiffs' Complaint erroneously contains two causes of action labeled as "Count Three." For clarity's sake, Hello's Motion identifies these two causes of action as Count 3a and Count 3b.

Violation of New Jersey's Consumer Fraud Act § 56 (Count 4), Intentional or Negligent Misrepresentation (Count 5), and Unjust Enrichment (Count 6).

**ARGUMENT**

## I. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(1) BECAUSE THEY LACK ARTICLE III STANDING.

In ruling on a motion to dismiss under Rule 12(b)(1) for lack of standing, "a court must accept as true the material factual allegations contained in the complaint, but is 'not to draw inferences from the complaint favorable to the plaintiffs.'" *Gambles v. Sterling Infosystems, Inc.*, 234 F. Supp. 3d 510, 516 (S.D.N.Y. 2017) (Engelmayer, J.); *see also* Fed. R. Civ. P. 12(b)(1). Article III standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Id.* Where, as here, a plaintiff lacks Article III standing, the Court has no subject matter jurisdiction to hear their claims, requiring that the case be dismissed. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145, 148-49 (2d Cir. 2011) (affirming dismissal of complaint where plaintiff did not plead a concrete, particularized and actual or imminent injury).

Plaintiffs must "demonstrate standing for each claim and form of relief sought." *Gambles*, 234 F. Supp. 3d at 516. To do so, plaintiffs are "constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed in a favorable decision." *Amidax Trading Grp.*, 671 F.3d at 145-46; *see also Kelen v. Nordstrom, Inc.*, 259 F. Supp. 3d 75, 79 (S.D.N.Y. 2016) (Engelmayer, J.). For an injury to be concrete, Plaintiffs must show that the injury "'actually exist[s],' meaning it is 'real, and not abstract.'" *Kelen*, 259 F. Supp. 3d at 79 (citations omitted). In determining whether a plaintiff's injury is concrete, a court "need not credit a complaint's conclusory statements." *Gambles*, 234 F. Supp. 3d at 517; *see also Amidax Trading Grp.*, 671 F.3d at 146. For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992); *Gambles*, 234 F. Supp. 3d at 518. To make this showing, Plaintiffs must allege and show that they "***personally have been injured.***" *Id.* (emphasis added).

Here, as in *Amidax*, Plaintiffs lack standing to bring their claims, as they have not alleged a "concrete, particularized" and "actual or imminent" injury-in-fact. *Id.* Indeed, Plaintiffs' complaint is devoid of ***any*** allegation that either of them suffered ***any*** loss or harm because of Hello's toothpastes. Instead, they improperly rely on generalized statements that "[c]onsumers have been harmed by these false and misleading representations because they purchased the Hello Charcoal Toothpastes that were not as represented." (FAC ¶ 109.) But these conclusory class allegations "add[] nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they ***personally have been injured***, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Gambles*, 234 F. Supp. 3d at 517 (emphasis added). Plaintiff's Complaint does not contain a single factual allegation showing that Plaintiffs personally were harmed or how. This fatal defect means Plaintiffs cannot proceed in an Article III court (or any court, for that matter). *Amidax Trading Grp.*, 671 F.3d at 145, 149; *Kelen*, 259 F. Supp. 3d at 80 (dismissing case pursuant to Rule 12(b)(1) for lack of standing where plaintiff did "not allege any tangible injury to herself" and failed to show "a risk of harm to a concrete interest").

## II.     PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM.

Because dismissal of Plaintiffs' Complaint under Rule 12(b)(1) for lack of standing is required, the Court need not reach Hello's arguments regarding dismissal under Rule 12(b)(6). *Id.* Hello nevertheless explains why Rule 12(b)(6) also requires dismissal of Plaintiffs' claims.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). A complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* "[T]he doors of discovery" do not unlock "for a plaintiff armed with nothing more than conclusions," which should be disregarded along with formulaic recitations of elements as well as unwarranted deductions and inferences. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Twombly*, 550 U.S. at 545. Plaintiffs' conclusory, unsupported allegations fall short.

### A.  Plaintiffs' Complaint Should Be Dismissed In Its Entirety Because Plaintiffs Do Not Plausibly Allege That Hello's Charcoal Toothpastes Do Not Work As Represented.

Each of Plaintiffs' causes of action requires factual allegations that Plaintiffs were personally injured because of Hello's representations. *See Colangelo v. Champion Petfoods USA, Inc.,* No. 6:18-CV-1228, 2020 WL 777462, at *1 (N.D.N.Y. Feb. 18, 2020). Yet conspicuously absent from Plaintiffs' Complaint is ***any*** allegation that Hello's Charcoal Toothpastes did not provide Plaintiffs exactly what was promised.

In *Colangelo*, a case involving the same causes of action Plaintiffs bring here (as well as some additional claims), the court found the lack of such an allegation fatal. *Id.* at *1, *6. There, the plaintiffs brought a putative consumer class action alleging that the defendant falsely advertised that its dog food did not contain certain substances. *Id.* Plaintiffs claimed they paid a premium for the dog food and that they would not have purchased defendant's products had they known that defendant's representations were false. *Id.* at *1, *5. The defendant moved to dismiss, arguing, in part, that plaintiffs failed to allege they purchased any dog food that did not conform to defendant's representations. *Id.* at *5. The court agreed that, absent allegations that the products plaintiffs purchased did not conform to the defendant's representations, the plaintiffs' claims based on those

7

representations were insufficiently pled. *Id.* at *6.[4] Similarly here, Plaintiffs have not alleged that the Hello products they purchased did not live up to Hello's representations.

Nor can Plaintiffs' conclusory allegations of a purported "price premium" save their Complaint. *See, e.g.*, FAC ¶¶ 10, 103, 109, 110, 139, 141-142, 150, 161, 166, 178. For price premium allegations to state an injury, they must be factually supported by allegations that the claimant "did not receive the full value of [their] purchase." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015); *see also Duran v. Henkel of Am., Inc.*, No. 19 CIV. 2794, 2020 WL 1503456, at *7 (S.D.N.Y. Mar. 30, 2020) (Engelmayer, J.) ("To allege injury under a price premium theory, a plaintiff must allege not only that defendants charged a price premium, but also that there is a 'connection between the misrepresentation and any harm from, or failure of, the product.'").

As this Court recently explained in *Duran*, this required showing "often takes the following form: A plaintiff alleges that a company marketed a product as having a 'unique quality,' that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality." *Id.* at 7. The *Duran* complaint alleged a price premium in connection with the defendant's "no flakes" claim for hair gel because the plaintiffs alleged that the claim allowed the defendant to charge a premium for the gel, that the plaintiff paid the premium, and then used the product only to discover flakes in his hair. *Id.* at 1, 8. In other words, the complaint in *Duran* alleged that the product did

---

[4] In *Colangelo*, the court went on to consider the plaintiffs' claims regarding other representations that the plaintiffs had alleged were false as to their purchases. *Id.* at 6-9. Here, Plaintiffs do not identify a *single* representation to which the Hello products they personally purchased did not conform. Thus, all of Plaintiffs' claims fail.

not, in fact, work as claimed, and this Court thus found that the plaintiff in that case had adequately alleged a price premium theory of injury. *Id.* at 8.[5]

Plaintiffs' allegations here are more like the allegations found deficient in *Belcastro v. Burberry Ltd.,* No. 16-CV-1080, 2017 WL 744596, at *1 (S.D.N.Y. Feb. 23, 2017). In that case, the plaintiff claimed that he "would not have purchased the [products], or would not have paid the price he did," had he known that the advertising representations were false. *Id.* The defendant moved to dismiss based on the plaintiff's failure to identify actual damages resulting from the defendant's actions. *Id.* at *3. The court explained that the plaintiff's allegations fell short because they merely pleaded an "ephemeral injury based solely on deception." *Id.* The court reasoned that absent "some connection between the deception and the price actually paid by the plaintiff," i.e., that the defendant "charges a higher price for products" with deceptive advertising, conclusory allegations of a price premium fail. *Id.* at *4-5.

Plaintiffs here make no connection between the prices Hello charges for its products, Hello's specific representations about its products, the actual products Ms. Patellos or Mr. Fishon received, and whether they worked as advertised for Ms. Patellos or Mr. Fishon (or anyone else). Their threadbare recitals of a price premium thus fail. "Simply because Plaintiffs [have] recite[d] the word 'premium' multiple times in their Complaint does not make Plaintiffs' injury any more cognizable." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (dismissing consumer protection claim brought under New York General Business Law § 349 where the plaintiff failed to adequately allege injury-in-fact); *see also Wright v. Publishers Clearing House, Inc.*, No. 2:18-cv-02373, 2020 WL 729884, at *9 (E.D.N.Y. Feb.

---

[5] Similarly, in *Orlander*, the court held that the plaintiff adequately alleged injury where the plaintiff said he purchased a two-year protection plan, but did not receive those services. 802 F.3d at 302.

13, 2020) (finding that complaint failed to state a cause of action under § 349 where the plaintiff did not allege that the product was not as advertised and instead relied on "boilerplate recitations of the formula for calculating a price premium" because such conclusory allegations fail to "allege that *the plaintiff* suffered actual or pecuniary harm").

### B. Plaintiffs Fail to Plead Their Fraud-Based Claims with the Particularity Required by Rule 9(b) (Counts 1, 2, 4-6).

"Rule 9(b) applies to all averments of fraud" and is "not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004). Rule 9(b) "requires that the plaintiff '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Eternity Glob. Master Fund, Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996)); Fed. R. Civ. P. 9(b). The heightened pleading requirement is designed, in part, to "provid[e] a defendant fair notice of plaintiff's claim, to enable preparation of defense." *DiVittorio v. Equidyne Extractive Indus. Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987).

To meet Rule 9(b)'s high standard, "a complaint must do more than assert generalized facts, it must allege facts *specific to the plaintiff*." *Solomon v. Bristol-Myers Squibb Co.*, No. CIV.A.07-1102, 2009 WL 5206120, at *8 (D.N.J. Dec. 30, 2009); *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 659 (3d Cir. 1998), *abrogated on other grounds by Forbes v. Eagleson*, 228 F.3 471, 484 (3rd Cir. 2000) ("Because the Complaint fails to allege what actually happened to [the plaintiffs], plaintiffs have not pled fraud with the specificity required by Rule 9(b)."); *Diversified Const. of WNY, Inc. v. Sheds USA, Inc.*, No. 04-CV-0739E, 2005 WL 1263151,

at *2 (W.D.N.Y. May 26, 2005) (Rule 9(b) not satisfied because of lack of allegations and because of concession that plaintiff had not personally been defrauded by defendant).

Each of Plaintiff's claims is rooted in supposed misrepresentations or omissions regarding Hello's Charcoal Toothpaste packaging and online presence.[6] Thus, the "gravamen of plaintiffs' complaint is plainly fraud" since they "allege, repeatedly, that [Hello] intentionally made 'deceptive,' 'fraudulent,' 'misleading,' and 'demonstrably false' factual representations in labeling and marketing the [] products, [] and purposefully concealed material information about them, [] to induce consumers to rely upon that information and buy and pay premiums for the [] Products." *Tyman v. Pfizer, Inc.*, No. 16-CV-06941, 2017 WL 6988936, at *10 (S.D.N.Y. Dec. 27, 2017), *report and recommendation adopted,* No. 16-CV-6941(LTS)(BCM), 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018). Their allegations must therefore pass Rule 9(b)'s muster.

Plaintiffs' allegations fall far short of Rule 9(b)'s standard. Plaintiffs fail to plead ***any*** facts, let alone with particularity, explaining how exactly Hello defrauded them, or that the Hello products did not work for them, or anyone else. There are no allegations that their teeth were not whiter after proper use of Hello toothpaste; no allegations that their breath was not fresh; no allegations that their teeth were somehow harmed from the use of Hello's toothpaste; no allegations that using Hello products did not prevent cavities, and so on. The Complaint merely

---

[6] Count 1 – Alleging that Hello breached an express warranty by misrepresenting that its product had certain characteristics (FAC ¶¶ 119-129); Count 2 – Alleging that Hello breached the implied warranty of merchantability by selling product that was "not in conformance with [Hello's] representations" (FAC ¶¶ 130–136); Count [4] – Alleging that Hello's alleged "misrepresentations that the Charcoal Toothpastes (i) are safe and gentle enough for everyday use, (ii) are effective for naturally whitening teeth, (iii) de-toxify the mouth, and (iv) have adsorptive properties that freshen breath, lift stains, remove plaque, and provide other benefits" violated New Jersey's Consumer Fraud Act (FAC ¶¶ 156–167); Count [5] – Alleging Hello's acts constituted intentional or negligent misrepresentation (FAC ¶¶ 168–175); Count [6] – Alleging that "[a]s a result of Hello's deceptive, fraudulent and misleading labeling, advertising, marketing, and sales" Hello was unjustly enriched (FAC ¶¶ 176–179).

generalizes—without any factual allegations relating specifically to Plaintiffs or specifically to Hello's products—that activated charcoal does not work to whiten or otherwise care for individuals' oral health and cosmetic desires. *See* FAC ¶ 11.

Plaintiffs' Complaint includes over thirty different and varied claims purportedly from Hello's product packaging and website. *See, e.g.*, FAC ¶¶ 4, 46–57, 60, 62, 70-71, 81, 83, 106, 107, 115-116, 122, 123, 132, 148, 149, 172.  But Plaintiffs' Complaint fails to allege with any particularity which claim(s) on this laundry list they contend are false, or which claims they relied on in making their alleged purchases and when. Because all of this information is missing from Plaintiffs' Complaint, Hello is unable to adequately address Plaintiffs' claims and they should be dismissed.

### C.    Plaintiffs' Fluoride-Specific Claims Are Preempted (All Counts).

Plaintiffs' state law challenge to Hello's claims regarding the safety and efficacy of its fluoride pastes is expressly preempted by federal law and must be dismissed. An otherwise valid state law is preempted if: (1) Congress expressly preempts the state law; (2) Congress completely occupies the law's field of operation; (3) compliance with both federal and state law is impossible; or (4) the state law presents an obstacle to the achievement of the full purposes and objectives of Congress. *See Wis. Pub. Intervenor v. Mortier,* 501 U.S. 597, 603–07 (1991). Here, Congress has enacted the United States Federal Food Drug, and Cosmetic Act (the "FDCA") which is a "comprehensive statutory framework for regulating the development and marketing of food, drugs, and cosmetics." *See Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 373 (S.D.N.Y. 2014).

Under the FDCA, fluoride toothpaste is both a drug and cosmetic. *See* 21 U.S.C. § 321(i) (defining    cosmetics);    http://www.fda.gov/Cosmetics/GuidanceRegulation/LawsRegulations/ ucm074201.htm (explaining that fluoride toothpaste is both a drug and cosmetic under FDCA definitions). The FDCA expressly preempts state labeling laws that differ from or are not identical

to federal law, which prohibits misbranding of both drugs and cosmetics (21 U.S.C. §§ 352(a); 362(a); 21 U.S.C. §§ 379r(a), 379s(a)). The FDA has exclusive regulatory authority over enforcement. *See Bowling*, 65 F. Supp. 3d at 374.

Fluoride toothpastes are expressly regulated by the FDA through the issuance of a final monograph. A "monograph" is a federal regulation that "sets out the FDA-approved active ingredients for a given therapeutic class of [over-the-counter] drugs and provides the conditions under which each active ingredient is [generally recognized as safe and effective]." *Id.* Where an applicable monograph exists, manufacturers do not need to obtain individual FDA approval and may market products in accordance with the monograph, including labeling requirements. *Id.*

The FDA has published a monograph in the Code of Federal Regulations that governs "Anticaries Drug Products,"[7] including toothpaste. *See* 21 C.F.R. 355.1. The monograph states that "[a]n over-the-counter anticaries drug product in a form suitable for topical administration to the teeth is generally recognized as safe and effective and is not misbranded if it meets each condition in this part and each general condition established in 330.1 of this chapter." *Id.* The monograph also makes clear that toothpastes that contain fluoride ***must*** state on the packaging that fluoride "aids in the prevention of dental (select one of the following: "cavities," "decay," "caries," "decay)," or "caries (cavities)"). *See* 21 C.F.R. § 355.50(b). And the monograph permits fluoride products to use variations of that claim on its labeling. *Id.* "In other words, pursuant to the 1995 Monograph, manufacturers of OTC drugs containing sodium fluoride are allowed (1) to represent that such drugs prevent tooth decay and (2) to provide further labeling to explain how decay is prevented." *Bowling*, 65 F. Supp. 3d at 373.

---

[7] Defined as "A drug that aids in the prevention and prophylactic treatment of dental cavities (decay, caries)." 21 U.S.C. § 355.3.

As Judge Scheindlin explained in a similar case:

> [P]reemption is certainly appropriate when a state law prohibits labeling that is permitted under federal law. But it is *also* appropriate when a state law prohibits labeling that is *not prohibited* under federal law. The standard, in other words, is not whether a state law actively undermines federal law. It is whether state law diverges from federal law *at all* . . . . For plaintiffs to establish that their state law claims are not preempted, it is insufficient to show that the FDA has not permitted the label 'Restores Enamel.' Rather, plaintiffs would need to plead facts suggesting that the FDA has affirmatively *prohibited* the label. Otherwise, plaintiffs' state law causes of action would be, in effect, imposing a labeling requirement that is 'not identical with' labeling requirements under federal law.

*Id.* at 375. Here, as in *Bowling*, Plaintiffs contend that the state laws of New York and New Jersey (and all or some of the remaining 50 states, FAC ¶ 165) prohibit Hello from making claims about the efficacy and safety of fluoride when used in a toothpaste. *See* FAC ¶¶ 79-81. But the FDA's regulations already cover fluoride toothpaste, and expressly permit Hello to make the claims it does. *See* 21 C.F.R. § 355.50(b); *Bowling*, 65 F. Supp. 3d at 375. Thus, this application of state law is expressly preempted by the FDCA and the applicable regulations, as the FDA's monograph allows the claims Hello makes about its fluoride products. Plaintiffs even recognize as much. *See* FAC ¶¶ 86–94. Therefore, Plaintiffs cannot state any cause of action regarding fluoride safety and efficacy, and all claims must be dismissed with prejudice insofar as they relate to fluoride products.

### D.    Plaintiffs' Breach of Warranty Claims Fail (Counts 1 & 2).

It is hard to understand why Plaintiffs' Complaint includes breach of warranty claims when they have not alleged that Hello breached any warranty—express or implied—regarding their individual product purchases. *See Reed v. Pfizer, Inc.,* 839 F.Supp. 2d 571, 578 (E.D.N.Y. 2012) (requiring that plaintiffs plead "that an express warranty existed, was breached, and that [Plaintiffs] had relied on that warranty."). They do not include a single allegation that the Hello products they purchased failed to work exactly as (expressly or implicitly) advertised. *See* Sections I, II.A, *supra*.

14

In order to state a claim for breach of an express warranty, Plaintiffs must also provide timely notice of any breach. *See Hubbard v. Gen. Motors Corp.,* No. 95 CIV. 4362, 1996 WL 274018, at \*5 (S.D.N.Y. May 22, 1996) (dismissing breach of warranty claim because "Plaintiff's Complaint lacks any allegation that plaintiff notified [the seller] of the claimed defect."); *Quinn v. Walgreen Co.,* 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (dismissing breach of warranty claims because complaint did not allege that timely notice was provided). Plaintiffs do not allege they provided any notice of any breach of express warranty by Hello, nor is Hello aware of any such breach.

As for Plaintiffs' claim for breach of implied warranty, Plaintiffs must allege privity of contract in order to state a claim. *Wick v. Wabash Holding Corp.,* 801 F. Supp. 2d 93, 108 (W.D.N.Y.2011) ("absent any privity of contract between Plaintiff and Defendant, such claim cannot be sustained as a matter of law except to recover for personal injuries."). Here, Plaintiffs allege that they purchased their products through third-party retailers, Target and Amazon, and thus their breach of implied warranty claim fails. *See* FAC ¶¶ 16-17. In any event, implied warranties do not guarantee that "the product will fulfill a 'buyer's every expectation' but simply 'provides for a minimum level of quality.'" *See Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154, 2015 WL 5360022, at \*11 (E.D.N.Y. Sept. 14, 2015). Plaintiffs do not allege that their Hello purchases did not provide a "minimum level of quality" for use as a dentifrice, and their implied warranty claims fail on this basis as well.

Thus, Plaintiffs' breach of warranty claims should be dismissed.

### E.    Plaintiffs Cannot Bring a Claim for Violation of the New Jersey Consumer Fraud Act (Count 4).

Plaintiffs lack standing to assert a claim under the New Jersey Consumer Fraud Act ("NJCFA"). Neither Patellos nor Fishon is a resident of New Jersey and neither of them purchased

products in New Jersey. FAC ¶¶ 16-17. Plaintiffs therefore do not have standing to assert claims grounded in New Jersey or any other state's laws. *See, e.g.*, *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010) (Arizona resident who purchased product in Arizona "not entitled to sue under the [NJCFA] because the transaction in bore no relationship to New Jersey other than the location of [the Defendant's] headquarters."); *Nirmul v. BMW of N. Am., LLC,* No. 10-CV-5586, 2011 WL 5195801 (D.N.J. Oct. 31, 2011)).[8]

**F.    Plaintiffs Fail to Allege the Scienter Required to Support Their Intentional Misrepresentation Claim (Count 5).**

Under New York law, fraud requires "[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421 (1996)). Fraudulent intent, or scienter, can only be shown by "(1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 Fed. App'x. 89, 97 (2d Cir. 2012) (quoting *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996)). As with all claims grounded in fraud, facts supporting scienter must be pleaded with particularity.  *See Weaver v. Chrysler Corp.*, 172 F.R.D.

---

[8] Even if Plaintiffs had standing to bring a claim under New Jersey law, such a claim would fail in any event because Plaintiffs base their claim entirely on allegations that Hello's product claims "lack substantiation."  *See Franulovic v. The Coca Cola Co.*, 390 F. App'x 125, 128 (3d Cir. 2010) (affirming denial of leave to amend complaint to add prior substantiation claim under NJCFA*); Scheuerman v. Nestle Healthcare Nutrition*, No. CIV. 10-3684, 2012 WL 2916827, at *9, *11 (D.N.J. July 17, 2012) (affirming grant of summary judgment in defendant's favor because "prior substantiation claims are not cognizable under the NJCFA").

96, 101 (S.D.N.Y. 1997). But a plaintiff cannot support an inference of fraudulent intent by alleging, without support, that "a large company such as the defendant would have learned" as part of its ordinary course of business that its labels were misleading. *Rodriguez v. Hanesbrands Inc.*, No. 17-CV-1612, 2018 WL 2078116, at *8 (E.D.N.Y. Feb. 20, 2018), *adopted by,* No. 17-CV-1612, 2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018). Nor do allegations that a "defendant had a motive to misrepresent" the product to gain a marketing advantage suffice. *See Quiroz v. Beaverton Foods, Inc*., No. 17-CV-7348, 2019 WL 1473088, at *10–11 (E.D.N.Y. Mar. 31, 2019).

This Court recently held allegations similar to those here insufficient to raise an inference of scienter. *See Duran*, 2020 WL 1503456, at *10 (Engelmayer, J.) (allegations that ingredient did the opposite of what was claimed with cites to articles and allegation that defendant had a scientist on staff familiar with the ingredient were insufficient to raise a strong inference of fraudulent intent). Other courts agree. *See, e.g.*, *Quiroz*, 2019 WL 1473088, at *10–11 (allegations that defendant had a financial motive and employed scientists who were familiar with the ingredient at issue were not enough to support inference of fraudulent intent); *Davis v. Hain Celestial Grp., Inc*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) (dismissing fraud claim for lack of facts demonstrating scienter); *Tears v. Bos. Sci. Corp.*, 344 F. Supp. 3d 500, 515 (S.D.N.Y. 2018) (same).

Like *Duran*, *Quiroz*, *Davis*, and *Tears*, Plaintiffs' Complaint does not sufficiently allege scienter. It does nothing more than allege that there are articles in the ether suggesting that an ingredient in Hello's toothpaste does not, ***by itself***, do what Hello's packaging claims its product does ***as a whole***, or that ***different products*** may not work as described. *See generally* FAC ¶¶ 26–29; 32–40; 97. And Plaintiffs only offer conclusory allegations regarding Hello's knowledge of those articles or buried Amazon reviews by anonymous users. *See* FAC ¶¶ 97-98; 100; 101. Plaintiffs' general allegations about the regulatory scheme to which Hello's products are subject

do not support a fraud claim (and instead show why Plaintiffs' claims are preempted, *see* Section II.C, *supra*). Nor is Plaintiffs' conclusory and unsupported statement that "Hello knew or should have known that it did not possess the legally required substantiation for its claims" of any legal effect. FAC ¶ 96. None of these generalizations are supported by "specific facts suggesting the defendants' knowledge of the falsity of their representations." *Rodriguez*, 2018 WL 2078116, at *7.

Thus, Plaintiffs' fraud claim should be dismissed for this reason as well.

### G.   Plaintiffs Have Not and Cannot State a Negligent Misrepresentation Claim (Count 5).

Under New York law, a negligent misrepresentation claim requires, *inter alia*, that (1) the defendant had a duty, as the result of a special relationship, to give correct information, and (2) the defendant made a false representation that he or she should have known was incorrect. *See Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 21 (2d Cir. 2000). As with their other claims, this claim fails because Plaintiffs have pleaded no *false* representation. *See supra* Section II.A.

Further, Plaintiffs' negligent misrepresentation claim fails because they have only pleaded economic loss (in the form of an unsupported price premium), which is insufficient under New York law. *See, e.g.*, *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (dismissing negligent misrepresentation claim in putative class action where only damages were economic losses); *Gordon v. Hain Celestial Grp., Inc.*, No. 16-CV-6526, 2017 WL 213815, at *7 (S.D.N.Y. Jan. 18, 2017) (same).

Were that not enough, Plaintiffs did not and cannot plead any special or "privity-like" relationship with Hello that would give rise to a duty (i.e. that Hello has "unique or specialized expertise" or is "in a position of confidence and trust with the injured party."). *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011); *Tyman*, 2017 WL 6988936, at *15

(relationship between personal care product manufacturer and consumer does not, by itself, give rise to a special relationship for purposes of negligent misrepresentation); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *25 (E.D.N.Y. Sept. 22, 2015) (dismissing negligent misrepresentation claim under New York law for failure to plead a special relationship between manufacturer of yogurt and consumer).

### H.   Plaintiffs' Unjust Enrichment Claim Must Be Dismissed as Duplicative of Their Other Claims (Count 6).

An unjust enrichment claim is only available in "unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 876 (E.D.N.Y. 2018) (granting summary judgment on unjust enrichment claim). Here, Plaintiffs' unjust enrichment claim fails because it merely duplicates their "conventional contract or tort claim[s]." *Id.* Although none of Plaintiffs' claims should ultimately survive this motion, unjust enrichment is unavailable as a catchall for allegations that fail to meet the standards required for pleading the claims. *See Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 791, (2012) (dismissing unjust enrichment claim); *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199, 2016 WL 5372794, at *18 (E.D.N.Y. Sept. 26, 2016) (dismissing unjust enrichment claim that overlapped with claims based on section 349 and 350 of New York's General Business Law). Plaintiffs' Unjust Enrichment claim should therefore be dismissed.

### I.   Plaintiffs Lack Standing To Seek Injunctive Relief.

When seeking prospective injunctive relief, the plaintiff must prove the likelihood of future or continuing harm. *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983). Plaintiffs cannot make this showing where their allegations instead show they are "unlikely to purchase [the challenged] products again." *Hidalgo v. Johnson & Johnson Consumer Co.'s Inc.*, 148 F. Supp. 3d 285, 291

(S.D.N.Y 2015); *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (plaintiff "must show a likelihood that he or she will be injured in the future" to claim injunctive relief); *Lyons,* 461 U.S. at 111 ("[A] plaintiff who has not alleged that she will purchase the offending product in the future has not established the likelihood of future injury required by Supreme Court and Second Circuit precedent.").

Plaintiffs here cannot seek injunctive relief because they do not plead any intention to purchase the product again, and Plaintiffs' allegations that they would not have purchased a product but for defendant's misrepresentation is "effectively a concession that [plaintiff] does not intend to purchase the product in the future." *Duran,* 2020 WL 1503456, at *12 (Engelmayer, J.) (dismissing injunctive relief claims where plaintiff in consumer class action alleged that he would not have purchased the product with the claims made at the price stated). Plaintiffs' request for injunctive relief must therefore be stricken. FAC at VII.(b)-(d).

## CONCLUSION

Because Plaintiffs do not have standing to bring their claims and have otherwise failed to state claims, Hello respectfully requests that the Court dismiss this case in its entirety with prejudice.

Dated: June 26, 2020

Respectfully submitted,
Kirkland & Ellis LLP

*/s/ Robyn Bladow*
Robyn Bladow (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
Email: robyn.bladow@kirkland.com

Joseph Sanderson
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: joseph.sanderson@kirkland.com

*Attorneys for Defendant Hello Products LLC*