UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SARAH PATELLOS, et al.,

                              Plaintiffs,

-v-

HELLO PRODUCTS, LLC,

                             Defendant.

19 Civ. 9577 (PAE)

<u>OPINION & ORDER</u>

---

PAUL A. ENGELMAYER, District Judge:

      This putative class action involves claims of misleading advertising for charcoal-based toothpastes.  Sarah Patellos and Eric Fishon, New York residents, bring a putative class action against defendant Hello Products, LLC ("Hello"), a Delaware limited liability company which makes such toothpastes.  Plaintiffs allege that Hello's labels and web advertisements, which claim that its toothpastes are safe, effective, and promote whitening, are misleading because charcoal, when used in toothpastes, dangerously abrades enamel and does not provide the oral hygienic benefits Hello promises.  Plaintiffs bring claims of: (1) breach of express warranty under New York Uniform Commercial Code ("NY UCC") § 2-313; (2) breach of implied warranty under NY UCC § 2-314; (3) deceptive and unfair trade practices under New York General Business Law ("GBL") § 349; (4) false advertising under GBL § 350; (5) common law negligent misrepresentation; (6) common law intentional misrepresentation/fraud; and (7) common law unjust enrichment.

      Pending now is Hello's motion to dismiss plaintiffs' Second Amended Complaint ("SAC").  For the reasons that follow, the Court denies the motion to dismiss the breach of

express warranty, intentional misrepresentation/fraud, and GBL claims; and grants that motion as to the breach of implied warranty, negligent misrepresentation and unjust enrichment claims.

### A.    Factual Background[1]

Hello is a wholly owned subsidiary of Colgate Palmolive Company.  SAC ¶ 32.  Since 2015, Hello has packaged, marketed, distributed, and sold oral care products, including a number of toothpastes that contain activated charcoal ("charcoal toothpastes").[2]  *Id.*  ¶¶ 3, 61.  Some of these toothpastes also contain fluoride.  *Id.*

Hello promotes and advertises these charcoal toothpastes by emphasizing that they are a safe and effective tool to whiten teeth, remove stains, and freshen breath, among other attributes. *Id.* ¶ 2.  In particular, the packaging for the various charcoal-toothpaste products contains the following statements: "epic whitening"; "whitens helps remove plaque with regular brushing"; "noticeably whiter teeth"; "whitens naturally"; "removes plaque"; "freshens breath"; "slays dragon breath"; and "mind blowing freshness."  SAC ¶¶ 64–66.  Similarly, on its website, Hello claims that, as to the charcoal ingredient in its fluoride-free charcoal toothpastes: "our activated charcoal toothpaste whitens naturally and gently without peroxide and is safe for everyday use";

---

[1] This factual account draws from the SAC, Dkt. 21.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").  For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] These products include: "hello activated charcoal epic whitening fluoride toothpaste," "hello activated charcoal+ matcha green tea fluoride toothpaste," "hello activated charcoal epic whitening fluoride-free toothpaste," "hello activated charcoal whitening fluoride-free toothpaste," "hello activated charcoal + hemp seed oil epic whitening fluoride-free toothpaste," "hello activated charcoal + natural dragon fruit epic whitening fluoride-free toothpaste," and "hello charcoal + natural acai epic whitening fluoride-free toothpaste."  SAC ¶ 3.

the toothpastes are "an epic whitener and detoxifier that removes surface stains"; and "[the] paste slays dragon breath, vanquishes stains, whitens epically." *Id.* ¶ 68.  As to the charcoal toothpastes that contain fluoride, Hello's website states, among other things, that the "charcoal toothpastes have been specifically formulated to be gentle enough for daily use." *Id.* ¶ 69. Hello's marketing materials for these products also emphasize the "detoxifying and adsorptive properties of activated charcoal" in its toothpastes.  *Id.* ¶ 72.

Patellos read Hello's claims regarding its charcoal toothpaste in advertisements on Amazon.com and on the toothpaste packaging itself.  *Id.* ¶ 25.  On May 17, 2019, relying on the advertisement's representations that the toothpaste would "naturally whiten her teeth" and was "safer and less damaging than other whitening toothpastes," she ordered Hello's "charcoal epic whitening fluoride-free toothpaste" through Amazon.com.  *Id.*  Patellos claims to have particularly relied on the representations that the activated-charcoal ingredient had special properties that made it worthwhile to pay a price premium for Hello's toothpaste.  *Id.*  These included that the toothpaste "would naturally whiten teeth, lift stains, remove toxins, and that it would be safe and gentle enough for daily use." *Id.*  Patellos used the toothpaste for a period of time, but it did not whiten her teeth as expected.  She also discovered that rather than "naturally whitening her teeth," the charcoal toothpaste "was actually abrading her enamel, and had not been proven safe for use." *Id.*

On February 22, 2019, Fishon, via the Target website, bought Hello's "activated charcoal epic whitening fluoride toothpaste," "activated charcoal epic whitening fluoride-free toothpaste," and "activated charcoal + hemp seed oil epic whitening fluoride-free toothpaste." *Id.* ¶ 27.  A few months later, in spring 2019, Fishon bought additional Hello charcoal-toothpaste products through Amazon.com.  *Id.*  Before the purchases, he had read Hello's advertising claims on the

Amazon and Target websites and on the toothpastes' packaging and labeling.  *Id.*  In making these purchases, he "specifically relied upon the representations that the Charcoal Toothpastes had teeth whitening and detoxifying effects from the activated charcoal," "would be safe and gentle enough for daily use," and that the activated charcoal ingredient and its purported benefits justified paying a price premium.  *Id.*  After a period of use, Fishon, too, found that the products did not work as marketed.  *Id.*  He found the charcoal ingredient "an unnecessarily abrasive agent on teeth and enamel" and "potentially unsafe," apart from failing to "naturally whiten" his teeth as promised.  *Id.* ¶ 30.  Thus, he claims, it was "not worthy of the price premium paid."  *Id.*

> **B.**      **Procedural History**

On October 16, 2019, plaintiffs filed the original complaint, Dkt. 1, and, on February 28, 2020, the First Amended Complaint ("FAC").  Dkt. 6.  On June 26, 2020, Hello moved to dismiss.  Dkt. 18.  On June 29, 2020, the Court issued an order, which, *inter alia*, gave plaintiffs until July 17, 2020, to file any amended complaint in response to the motion to dismiss.  Dkt. 20.

On July 17, 2020, plaintiffs filed the SAC.  Dkt. 21.  It pleads that Hello's claims about the benefits of its charcoal toothpastes are false, *id.* ¶ 73, and that consumer experience and dental experts indicate that long-term use of Hello's charcoal toothpaste "wears down [a tooth's] enamel" and can cause permanent damage and a yellow appearance as a result of long-term enamel erosion.  *Id.* ¶ 85.  It brings seven claims:  (1) breach of express warranty under NY UCC § 2-313; (2) breach of implied warranty under NY UCC § 2-314; (3) deceptive and unfair trade practices under New York General Business Law ("GBL") § 349, (4) false advertising under GBL § 350; (5) common law negligent misrepresentation; (6) common law intentional misrepresentation/fraud; and (7) common law unjust enrichment.

On September 4, 2020, Hello filed a motion to dismiss, Dkt. 26, and a memorandum of law in support, Dkt. 27 ("Def. Mem.").  It principally argues that the SAC does not plead its claims with the required particularity, that plaintiffs did not give Hello the required notice for their breach of warranty claims, and that the SAC does not plead privity with Hello, as required for the implied-warranty and negligent-misrepresentation claims.  On September 17, 2020, plaintiffs filed an opposition.  Dkt. 28 ("Pl. Opp'n").  On September 24, 2020, Hello filed a reply.  Dkt. 29 ("Reply").

## II.     Legal Standards Governing Motions to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.  When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff."  *Koch*, 699 F.3d at 145.  That tenet, however, does not apply to legal conclusions.  *See Iqbal*, 556 U.S. at 678.  Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

## III.    Discussion

### A.     Preemption Challenge to Fluoride-Related Claims

Hello argues that plaintiffs' challenges to its claims about the safety and efficacy of the fluoride in their toothpaste products are expressly preempted by federal law.  Under the Food Drug & Cosmetics Act, Hello notes, "[w]here the FDA has issued an applicable monograph, the

manufacturer may bypass the individual approval process by marketing its product according to the specific conditions laid out in the monograph." *Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 319 (S.D.N.Y. 2017); *see* Def. Mem. at 13; Reply at 8.  And here, the FDA has issued a monograph related to fluoride in dental products, which, Hello claims, its marketing tracks.  *See* Anticaries Drug Products for Over-the-Counter Human Use; Final Monograph, 60 Fed. Reg. 52474, 52506 (Oct. 6, 1995) (codified at 21 C.F.R. pt. 355); *see also Canale*, 258 F. Supp. 3d at 321 ("The monograph simply permits the sale, without a new drug application, of products the active ingredient of which is [fluoride,] . . . and it provides that the product is not misbranded if it contains the claims regarding decay prevention set forth in the monograph."); *id.* ("There is nothing in the monograph regarding whitening toothpastes or products. . . ."  The Monograph does not "otherwise immunize any other representation made by the products' manufacturer.").

Hello's preemption argument appears now to be academic because plaintiffs, in their opposition, agree that claims as to the safety and efficacy of the fluoride in Hello's products would be preempted.  Plaintiffs instead deny having brought such claims.  That is not clear from the face of the SAC.  It, for example, notes the potential interaction of fluoride and charcoal in Hello's products, *see, e.g.*, SAC ¶ 98 ("[T]he fluoride in the Fluoride Charcoal Toothpastes may be impacted or inactivated by the charcoal.").  Regardless, plaintiffs now explicitly renounce any claim "challenging the safety or efficacy of fluoride."  Pl. Opp'n at 18.  They clarify that "the only way" in which their claims touch on fluoride "is with respect to the possible adverse effects (or interference) of charcoal on the efficacy of fluoride in the fluoride Charcoal Toothpastes"; they state as a factual point that charcoal, "when used in a fluoride toothpaste, may render the fluoride 'either chemically inert or minimally effective.'"  *Id.* at 18, 20 (quoting SAC ¶ 97).

And, plaintiffs state, they are not claiming "that the fluoride [in the products at issue] was, in fact rendered inert, nor do they assert it as a specific basis for the claims or damages alleged [in the SAC.]" *Id.* (citing SAC ¶ 98 & n.101).

Because plaintiffs have clearly renounced any claims related to fluoride in Hello's products, either as a stand-alone ingredient or based on its interaction with other ingredients, there is no live dispute on this point. Nevertheless, for avoidance of doubt, the Court dismisses as preempted, and as abandoned, any claims in the SAC that might be construed as relating to the safety or efficacy of fluoride in Hello's products, including based on the interaction of fluoride with other ingredients. *See Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08 Civ. 442 (TPG), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").

### B.   Challenges to the Particularity of Plaintiffs' Pleadings

Hello first argues that the SAC has not pled its claims with requisite particularity.

#### 1.   Fraud-Based Claims

Hello argues that Counts One (breach of express warranty), Two (breach of implied warranty), Five (negligent misrepresentation), Six (intentional misrepresentation), and Seven (unjust enrichment) sound in fraud and thus must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b). Def. Mem. at 5; *see Tyman v. Pfizer, Inc.*, No. 16 Civ. 06941 (LTS), 2017 WL 6988936, at *8–10 (S.D.N.Y. Dec. 27, 2017) (in false advertising case, holding Rule 9(b) to apply, because "the gravamen of the complaint is plainly fraud" in that plaintiffs "allege, repeatedly, that [defendant] intentionally made deceptive, fraudulent, misleading, and demonstrably false factual representations in labeling and marketing the

ChapStick Products, and purposefully concealed material information about them" (quotations and citations omitted)).  Plaintiffs do not vigorously dispute that point.

For the reasons below, the Court finds that the SAC's allegations of false and fraudulent statements by Hello as to its toothpaste products satisfy Rule 9(b)'s heightened pleading standard, such that it is unnecessary for the Court to determine whether the Rule applies.  As a result, the Court sustains Counts One, Two, Five, Six, and Seven against this challenge.[3]

Rule 9(b) requires that claims sounding in fraud: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004).  The SAC satisfies this standard.

As to the first Rule 9(b) requirement, the SAC details extensively the statements on the products' packaging and on Hello's website that it contends are fraudulent.  These are that the toothpastes whiten teeth, freshen breath, detoxify, and are safe for daily use.  *See, e.g.*, SAC ¶¶ 63 (the charcoal ingredient "whitens, polishes and cleans teeth/freshens breath"), 64–66 ("epic whitening"; "whitens helps remove plaque with regular brushing"; "noticeably whiter teeth" or "whitens naturally"; "removes plaque"; "freshens breath"; "slays dragon breath"; "mind blowing freshness"), 67 ("noticeably whiter teeth"; "safe for enamel"; and "awesome for fresh breath"), 68 ("our activated charcoal toothpaste whitens naturally and gently without peroxide and is safe for everyday use"; "an epic whitener and detoxifier that removes surface stains"; "vanquishes stains, whitens epically"; "kicks plaque to the curb"), 69 ("charcoal toothpastes have been specifically formulated to be gentle enough for daily use"), 70 ("activated charcoal adsorb the

---

[3] For independent reasons reviewed *infra*, Counts Two, Five, and Seven require dismissal.

odors that cause bad breath and the tannins that can stain teeth, when used in toothpaste form"),

72 (explaining the "detoxifying and adsorptive properties of activated charcoal" in its

toothpastes).  Although some of Hello's statements are hyperbole and hence inactionable—for

example, that the "paste slays dragon breath" and "kicks plaque to the curb," *id.* ¶ 68—the others

listed above are actionable and specified in sufficient detail in the SAC.

 As to the second Rule 9(b) requirement, the SAC identifies the speaker: Hello.

 As to the third Rule 9(b) requirement, the SAC satisfactorily states where the statements

were made, including by supplying pictures of the product labels and website pages on which the

claims were made, and how the plaintiffs came to see those statements before their purchases in

2019.  *See, e.g.*, *id.* ¶¶ 61–62, 68, 71.

 As to the fourth requirement, the SAC adequately pleads why these statements are false.

It details why Hello's charcoal-toothpaste products are, purportedly, not safe for enamel, citing

numerous academic sources finding claims to this effect false.  *See id.* ¶¶ 8 (citing British Dental

Journal as expressing concern that charcoal toothpastes could "cause harm to oral health,

structures, and aesthetics") 11 ("dentifrice is known to be abrasive to enamel and the gums"), 85

(citing Dr. Ada Cooper, spokesperson for American Dental Association, stating that "long-term

use of the Hello Charcoal Toothpastes could potentially result in a darkened and yellow tooth

appearance.  This is because, when teeth are regularly brushed with highly abrasive substances

such as charcoal, the enamel can wear down and cause the tooth's dull, internal dentin to show

through."), 90 ("Multiple scientific studies have noted [charcoal's] abrasiveness presents a risk to

enamel and gingiva[.]"), 120 (citing articles on how charcoal can hurt enamel).  To the same end,

the SAC also details plaintiffs' experiences suggesting that the products proved unsafe for

enamel.  *See, e.g.*, *id.* ¶¶ 25 ("rather than 'naturally whitening' her teeth, the product was actually

abrading [Ms. Patello's] enamel"), 147 n.129 ("abrading their enamel").  As to Hello's representations about its products' whitening of teeth and promotion of oral care, the SAC recounts the contrary experiences of both plaintiffs. *See, e.g.*, *id.* ¶¶ 25 ("Ms. Patellos' expectations concerning whitening were not met. The product did not effectively whiten her teeth as expected."), 27 ("After a period of use, Mr. Fishon found that the products fell short of his expectations. They did not strengthen his teeth, improve or promote his oral health, or effectively whiten his teeth."), 144 (claiming that Hello's toothpastes do "not provide the basic safety and oral health maintenance that otherwise similar non-charcoal dentifrices do").  Insofar as the SAC challenges as false Hello's claims that the charcoal in its toothpaste products has an oral "detoxifying" effect, it also adequately sets out the basis for this claim. *See, e.g.*, *id.* ¶ 10 ("For example, the promise that the Charcoal Toothpastes functioned as an oral detoxifier that can remove surface stains through adsorption is pseudo-scientific, and essentially an impossibility.").  The SAC, finally, alleges that Hello's misleading claims caused plaintiffs to pay a premium for the toothpaste. *See id.* ¶¶ 12 ("Consumers (including the named Plaintiffs) would not have paid premium prices or even purchased them at all, but-for the representations on the attributes of activated charcoal and the benefits of its products could naturally and safely deliver."), 139 ("Plaintiff and purported class members paid a premium price for the mislabeled and falsely advertised products").

In pursuing dismissal, Hello argues that plaintiffs fail to allege the "how" of the fraud because Patellos did not plead how she determined that the toothpaste abraded her enamel.  Def. Mem. at 6.  It is correct that the SAC does not specifically state how Patellos determined that her enamel was being abraded—whether, for example, by touching her teeth, visually examining them, or obtaining the perspective of a dentist.  But the SAC compensates for this point by citing

extensive documentation indicating that charcoal in toothpaste can abrade enamel and recounting

Patellos's claims that her enamel became abraded after use of Hello's charcoal-based toothpaste

over a period of time.  Hello does not cite any precedent that Rule 9(b) requires more fulsome

pleadings as to the "how" factor.

      The Court thus finds that the SAC satisfies Rule 9(b).

### 2.      Non-Fraud Claims Based on New York GBL

      Plaintiffs bring two claims under the New York GBL—Counts Three (deceptive acts and

practices) and Four (false advertising).  Hello does not argue that these are subject to Rule 9(b),

but it argues that they are not pled with even the lesser particularity required by Rule 8.

      That is wrong.  Rule 8 requires that pleadings contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  The SAC satisfies that standard as to Counts

Three and Four.  *See, e.g.*, SAC ¶¶ 190 ("These acts and conduct include, but are not limited to,

Defendant's deceptive and inaccurate misrepresentations that the Charcoal Toothpastes (i) are

safe and gentle enough for everyday use, (ii) are effective for naturally whitening teeth, (iii) de-

toxify the mouth, and (iv) have adsorptive properties that freshen breath, lift stains, remove

plaque, and provide other benefits."), 192 ("Defendant also represented the Charcoal Toothpastes

to be superior and safer than its competitors, which was directly refuted by a scientific study

finding that charcoal pastes were more abrasive on tooth enamel than whitening pastes without

charcoal."); *see also Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged.").

### C.    Challenges as to Notice with Respect to Express Warranty Claim

Hello next argues that the SAC's breach of express warranty claims require dismissal because Patellos and Fishon failed to provide it timely notice.  Section 2-607(3) of the NY UCC provides that, "[w]here a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."

As to Patellos, the SAC alleges timely notice.  As alleged, she purchased Hello's charcoal-toothpaste product in May 2019.  SAC ¶ 25.  The SAC states that, "after a period of use Ms. Patellos[] [discovered that her] expectations" were not met.  *id.*; *see id.* ("[R]ather than 'naturally whitening' her teeth, the product was actually abrading her enamel, and had not been proven safe for use.").  Patellos first put Hello on notice of the defect she claimed in its charcoal-based toothpaste products, and thus of its alleged breach of warranty, giving it an opportunity to cure, when she and Fishon filed their original putative class-action Complaint on October 16, 2019. The original Complaint was served on Hello by registered mail, which received it on November 19, 2019.  *id.* ¶ 177.

"[T]he sufficiency and timeliness of the notice is generally a question for the jury." *Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018, at *4 (S.D.N.Y. May 22, 1996).  Here, the SAC adequately pleads that notice seven months after purchase was reasonably timely, insofar as the defect that Patellos claims was one that, by its nature, became apparent not immediately but over time.  *Cf. Archstone v. Tocci Bldg. Corp. of N.J., Inc.*, 959 N.Y.S.2d 497, 499 (2012) (holding notice of alleged breach of warranty more than two years after the delivery of wall panels was unreasonable, because where the alleged defect is in connection with qualities

that are apparent, such as size and color, the good should be inspected upon delivery and complained of soon after).

The question is closer as to Fishon.  He first bought one of Hello's charcoal toothpastes on February 22, 2019, and then bought additional similar products from Hello later that spring. *See* SAC ¶ 27.  The SAC alleges that "after a period of use, Mr. Fishon found that the products fell short of his expectations."  *Id.*  As pled, Fishon first put Hello on notice of the defects he alleges in Hello's charcoal-based toothpaste products, and thus of its alleged breach of warranty, when he (with Patellos) filed the original Complaint and served it on Hello.  *id.* ¶ 177.  Thus, it took Fishon three months longer to provide notice to Hello.  At summary judgment or trial, Hello will be at liberty to argue that Fishon's notice (and Patellos's) were untimely.  But, because the timeliness of notice is generally a question of fact for the jury, *Hubbard*, 1996 WL 274018, at *4, the Court will not dismiss Fishon's claim on this ground.

Hello separately challenges whether the form of plaintiffs' notice, the initial complaint filed in this litigation, was proper.[4]  Hello argues that notice cannot take the form of a complaint. Hello, however, does not point to authority categorically so holding.  And a district court in this Circuit has upheld this form of notice.  In *Tomasino v. Estee Lauder Cos.*, the court held that a plaintiff was not "required to provide pre-suit notice of the alleged warranty breaches," as "New York cases applying N.Y. U.C.C. § 2-607(3) suggest that a plaintiff's pleadings may constitute reasonable notice in certain cases."  44 F. Supp. 3d 251, 262 n.6 (E.D.N.Y. 2014).  It cited, *inter alia*, *Panda Capital Corp. v. Kopo Int'l, Inc.*, which applied NY UCC § 2–607(3) and held "that

---

[4] The SAC undisputedly pled the date and method of notice, as required.  *See* SAC ¶ 177; *Petrosino v. Stearn's Prods., Inc.*, No. 16 Civ. 7735 (NSR), 2018 WL 1614349, at *8 (S.D.N.Y. Mar. 30, 2018) ("Proper factual allegations should, at least, include the date and method by which Plaintiff afforded such notice to Defendant.").

the complaint and subsequent amended complaint in this action themselves constituted such notice."  662 N.Y.S.2d 584, 586 (1997).

Hello urges the Court to reject *Tomasino*, on the policy ground that allowing a complaint to serve as notice "would 'impede the purposes of the notice requirement.'"  Def. Mem. at 7–8 (quoting 4 Anderson U.C.C. § 2-607:21 (3d. ed.)).  In some circumstances, service that does not occur until the filing of a lawsuit will prove delinquent.  But the full quote from the treatise on which Hello relies for this policy point undermines its notion that, as a categorical matter, notice by complaint is forbidden.  It states:

> Mere service of a complaint upon the seller is not sufficient to comply with the notice requirement of U.C.C. § 2-607(3)(a).  A finding that service of a complaint is sufficient notice would impede the purposes of the notice requirement, inasmuch as service *often* occurs months or even years after the buyer is injured.  Such a period of time prevents a seller from minimizing his damages.

4 Anderson U.C.C. § 2-607:21 (emphasis added).  As the treatise notes, what is key is not the form of the notice, but its timing—that notice be given promptly after the injury occurs (or, as here, is apparent).  And because a legal action generally need not be filed soon after an injury, the filing of a complaint often may not constitute proper notice.  The treatise, however, does not advocate, let alone cite case authority for, a hard and fast rule under which a complaint filed promptly after discovery of injury could not supply notice.

Here, at least as pled, Patellos filed her first complaint sufficiently promptly after discovering the defect in the toothpaste.  *See Tomasino*, 44 F. Supp. 3d at 260 ("'The purpose of the notice requirement is not to inform the seller of his own act, but to reveal to him that the buyer chooses to assert the act as a breach and seek a legal remedy therefore,' so that the seller need not bear the hardship of 'allowing a buyer at any time within the period of the Statute of Limitations to assert that the goods are or were defective though no objection was made when

14

they were received.'" (quoting *In re Gotham Silver Co.*, 91 F. Supp. 520, 523 (S.D.N.Y. 1950))

(cleaned up).  It will be for the finder of fact to determine whether plaintiffs filed their

complaints, and hence gave notice, sufficiently timely.

### D.      Challenges Based on Plaintiffs' Lack of Privity with Hello

#### 1.      Breach of Implied Warranty

Hello next argues that plaintiffs' breach of implied warranty claim fails because plaintiffs

were not, as pled, in privity with Hello, as required under New York law.  Hello is correct.

Because plaintiffs do not claim to have bought the toothpastes from Hello directly, but

instead from the Target and Amazon websites, to adequately pursue the implied warranty claim,

they would need to plead privity between themselves and Hello.  *See Marshall v. Hyundai Motor*

*Am.*, 51 F. Supp. 3d 451, 469 (S.D.N.Y. 2014) (explaining that under New York law, "a plaintiff

claiming rights as a third-party beneficiary must demonstrate: (1) the existence of a valid and

binding contract between other parties, (2) that the contract was intended for his benefit and (3)

that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption

by the contracting parties of a duty to compensate him if the benefit is lost" (quotations

omitted)).  The sole claim that the SAC makes as to this requirement, however, is conclusory.  It

is that plaintiffs "were in direct privity with Defendant and/or its agents, or were intended third-

party beneficiaries of the warranties breached herein [] to the extent required by law."  SAC ¶

172; *see* Pl. Opp'n at 13.  That allegation is, however, insufficient.  It is devoid of facts

indicating that the contracts between Hello and the two online sellers of its toothpaste at issue,

Amazon and Target, were intended to benefit the plaintiffs.  *See, e.g.*, *Catalano v. BMW of N.*

*Am., LLC*, 167 F. Supp. 3d 540, 557 (S.D.N.Y. 2016) ("[The plaintiff] presents no allegations,

other than naked assertions, to show that any contracts between BMW and dealerships were

intended to benefit him or other class members . . . .  [The plaintiff's] allegations are therefore insufficient to show that the class members were intended third-party beneficiaries, even at the pleading stage.").  This claim thus must be dismissed.

### 2.    Negligent Misrepresentation

The SAC fails for similar reasons to state a claim for negligent misrepresentation.  Under New York law, a negligent misrepresentation claim requires a showing that the defendant had a duty, as the result of a special, privity-like relationship, to give the plaintiff correct information. *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 584 (2d Cir. 2005).  A

> relationship is considered "so close as to approach that of privity" when the following criteria are met: 1) the defendant makes a statement with the awareness that the statement was to be used for a particular purpose; 2) a known party or parties rely on this statement in furtherance of that purpose; and 3) there is some conduct by the defendant linking it to the party or parties and evincing defendant's understanding of their reliance.

*Id.* (quoting *Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 339 (1989).  "In contrast, where the statement at issue is directed at a 'faceless of unresolved class or persons,' no duty of care arises."  *Id.* (quoting *White v. Guarente*, 43 N.Y.2d 356, 361 (1977)).  And, "in the commercial context, a closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the 'existence of a special relationship capable of giving rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech.'"  *Izquierdo v. Mondelez Int'l, Inc.*, No. 16 Civ. 4697 (CM), 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996)) (cleaned up).

> [L]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.  Professionals, . . . by virtue of their training and expertise, may have special relationships of confidence and trust with their clients,

and in certain situations [New York State Courts] have imposed liability for negligent misrepresentation when they have failed to speak with care.

*Kimmell*, 89 N.Y.2d at 263.

Here, plaintiffs argue that there was privity between them and Hello because Hello hired a research scientist, Connie Gregson, and "held out her 'unique expertise'" to the public, thereby "creat[ing] the requisite special relationship" between it and toothpaste purchasers. Pl. Opp'n at 14 (quoting SAC ¶ 222). As the SAC pleads, Hello published a short article by Gregson on its website titled, "*why add charcoal to toothpaste*?," and described her there as the "friendly head of r+d at hello products" who has "more degrees than a thermometer," and who "created the formulations of [Hello's] products." SAC ¶¶ 65, 70. The SAC alleges that Hello's website "touted" Gregson's credentials and "induced consumers' trust and reliance" on its claims about "the safety, function, and attributes of charcoal for use in oral care." *Id.* ¶¶ 10, 122. Plaintiffs liken their claims to those upheld in *Hughes v. Ester C Co.*, 960 F. Supp. 2d 439 (E.D.N.Y. 2013), involving claims against the manufacturers of a vitamin. Pl. Opp'n at 15.

This case in fact is afield from *Hughes*, for the reasons Judge Roman recognized in dismissing a negligent misrepresentation claim in *Eidelman v. Sun Products Corp.*, No. 16 Civ. 3914 (NSR), 2017 WL 4277187, at *5 (S.D.N.Y. Sept. 25, 2017). *Hughes*, as Judge Roman noted, "relied on the volume and content of the representations made by the defendant-manufacturer, taken together," in holding that the plaintiff-consumer had plausibly alleged a special relationship. *Id.* at *5. The plaintiff in *Hughes* had alleged that the defendant's website contained a section entitled "Ask an Expert," which represented that "the expert believed the tablet was backed by good clinical research and that the company was completely committed to clinical studies." *Id.* (quoting *Hughes*, 960 F. Supp. 2d at 475) (cleaned up). Here, however, the SAC does not point to any claims by Hello about clinical research, including by Ms. Gregson.

As in *Eidelman*, the claims are well short of those catalogued in *Hughes*, "in volume and substance." *Id.* Those to which the SAC points instead are standard commercial advertisements. And "courts have consistently held that advertisements alone are not sufficient" to create a privity-like relationship. *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14 Civ. 3826 (MKB), 2015 WL 5579872, at *25 (E.D.N.Y. Sept. 22, 2015).

The Court accordingly finds that the SAC does not allege the requisite "privity-like" relationship with Hello necessary to "overcome the presumption that advertisements are generally insufficient to establish" the requisite "special relationship." *Eidelman*, 2017 WL 4277187, at *5.

## E.    Challenges to the Unjust Enrichment Claim

Hello moves to dismiss the SAC's unjust enrichment claim as duplicative. That motion is meritorious.

 "Unjust enrichment is not a catchall cause of action to be used when others fail. . . .  An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). Rather, it "is available *only* in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* (emphasis added).

Here, plaintiffs do not distinguish their unjust enrichment claim from their other claims. The SAC states that the basis of the unjust enrichment claim is not merely "the standard false-advertising claims, but also [] the inherent unsafety and risk of the Charcoal Toothpastes." SAC ¶ 241; *id.* ¶ 242 (claim is based on "Hello's deceptive, fraudulent and misleading labeling, advertising, marketing and sales of the Charcoal Toothpastes, its material representations and

omissions, and other wrongful conduct, [leading] Hello [to be] unjustly enriched by it['s] sales

of the Charcoal Toothpastes."). As such, that claim essentially replicates (1) the SAC's express

warranty claim, *see id.* ¶¶ 176 ("Plaintiffs and the Class members did not receive the benefit of

the bargain, as the Charcoal Toothpastes did not have the promised benefits, effectiveness,

safety, value or other properties as represented."), 178 ("Plaintiffs and the Class members have

been damaged by the difference in value between the Charcoal Toothpastes as advertised and the

Charcoal Toothpastes as actually sold."); (2) the SAC's claim under GBL § 349 for deceptive

acts and practices, *see id.* ¶¶ 190 ("[Hello's] deceptive acts and practices were likely to deceive

or mislead reasonable consumers, and were consumer-oriented so as to induce consumers to

purchase the Charcoal Toothpastes"), 195 ("Plaintiffs and the Class were damaged by the

difference in value between the Charcoal Toothpastes as advertised and the Charcoal Toothpastes

as actually sold."); (3) the SAC's claim under GBL § 350 for false advertising, *see id.* ¶¶ 203

("The misrepresentations in Defendant's advertising and labeling caused the Plaintiff and Class

members to purchase one or more of the Charcoal Toothpastes, and to pay a price premium for

such products."), 212 ("Plaintiffs and Class members have been damaged in the amount of the

purchase price of the Charcoal Toothpaste they purchased and/or the price premium paid and

are entitled to recover the difference in value between the Charcoal Toothpastes as advertised

and the Charcoal Toothpastes as actually sold."); and (4) the SAC's claim for intentional

misrepresentation/fraud, *see id.* ¶¶ 232 ("Defendant made the misrepresentations herein with the

intention of depriving Plaintiffs and other Class members of property or otherwise causing

injury."), 235 ("Plaintiffs and Class members were induced to spend money on the Charcoal

Products and they were damaged in the economic loss of money spent . . . on the Charcoal

Products that were not as represented, and that were not worth the full value paid.").

Plaintiffs attempt to distinguish the unjust enrichment claim from their tort and contract claims on two grounds.  Pl. Opp'n at 17 n.15 (citing SAC ¶ 241 n.135).

First, they note, damages on such a claim are not measured by restitution to the victims, but may entail disgorgement of defendants' total revenue on sales of the product.  *Id.*  But the opportunity for plaintiffs to glean a larger damage award does not distinguish "the violative conduct alleged" under the rubric of unjust enrichment from that underlying the other claims. *Obeid ex rel. Gemini Real Est. Advisors LLC v. La Mack*, No. 14 Civ. 6498 (LTS), 2018 WL 2059653, at *29 (S.D.N.Y. May 1, 2018) ("[W]here the violative conduct alleged is conterminous with a conventional tort or contract claim, regardless of whether the tort or contract claim is dismissed.").

Second, plaintiffs hazily state that the unjust enrichment claim "may also be premised on a potentially distinct and additional or alternative set of facts concerning consumers' expectation and the product's failure to meet them, whether it be failure or inability to perform."  SAC ¶ 241 n.135.  But their other claims similarly allege Hello's failure to meet consumers' expectations. *See, e.g.*, *id.* ¶ 176 ("Plaintiffs and the Class members did not receive the benefit of the bargain, as the Charcoal Toothpastes did not have the promised benefits, effectiveness, safety, value or other properties as represented.").  Plaintiffs do not identify any distinguishing feature of the unjust enrichment claim warranting its survival.

The Court accordingly dismisses the unjust enrichment claim as duplicative of other claims, including claims One, Three, Four, and Six, all of which the Court has sustained.

### F.     Challenges to Prayer for Injunctive Relief

In addition to pursuing money damages, plaintiffs seek injunctive relief.  Defendants move to dismiss for want of standing.

A plaintiff must demonstrate that they face a likelihood of future harm to be given prospective injunctive relief. *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020). That harm must be "actual and imminent" rather than "conjectural" or "hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quotations omitted). But plaintiffs have not pled facts that meet this standard. In claiming standing, plaintiffs in part look backward at their earlier purchases, stating that they are unable "to be sure that the products they purchased were safe and did not cause damage or detriment or negative consequences of which they are not yet aware." SAC ¶ 33. Plaintiffs also assert "an imminent threat of future harm due to the inability to rely on the veracity of the labels and advertising of Charcoal Toothpastes in the future, when deciding whether to make a purchase of another Hello dentifrice." *Id.* Along these lines, the SAC states that plaintiffs "would consider purchasing one or more of the Charcoal Toothpastes again if they could be sure that the representations and claims were truthful and accurate, and that the products are not mislabeled or falsely advertised." *Id.*; *see also id.* ¶ 34. ("Moreover, the dentifrices that Plaintiffs intend to buy in the future, . . . even if not branded as 'Hello' or in the same product in the line of Charcoal Toothpastes at issue here, may be under brands that are owned or acquired by Hello itself . . . . [O]n a broad level Plaintiffs' ability to trust in the accuracy of advertising and product labeling is, and will be compromised.").

These harms are too conjectural to give plaintiffs standing to enjoin future sales of the products at issue. Plaintiffs' retrospective allegations, regarding continuing concerns regarding toothpaste products they previously bought, do not logically support injunctive relief. And plaintiffs' claims of a potential interest in future purchases do not suffice either. As this Court has recently recognized in denying a similar prayer for injunctive relief, a plaintiff who merely alleges that she "would purchase a product if re-engineered or re-marketed does not show a real

or immediate threat of future injury." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 356 (S.D.N.Y. 2020).  "Alleging that one would not have purchased a product but for defendant's misrepresentation is effectively a concession that [plaintiff] does not intend to purchase the product in the future." *Id.* (quotations and citations omitted).  Simply put, plaintiffs have failed to allege facts making out a real or immediate threat of future injury.  While they are at liberty to pursue damage claims flowing from prior purchases, they lack standing to seek injunctive relief blocking future purchases.

## CONCLUSION

For the foregoing reasons, Court denies Hello's motion to dismiss the SAC's breach of express warranty, intentional misrepresentation/fraud, and GBL claims; and grants that motion as to the SAC's breach of implied warranty, negligent misrepresentation, and unjust enrichment claims.  The Clerk of Court is respectfully directed to terminate the motions pending at dockets 18 and 26.

The Court schedules an initial pretrial conference for April 15, 2021 at 1:30 p.m.  This conference will be held telephonically.  Counsel are directed to review the Court's Emergency Individual Rules and Practices in Light of COVID-19, found at https://nysd.uscourts.gov/hon-paul-engelmayer, for the Court's procedures for telephonic conferences.  Counsel are further directed to prepare a Civil Case Management Plan and joint letter in accordance with the Court's Individual Rules, to be submitted to the Court no later than April 12, 2021.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: March 4, 2021
　　　　New York, New York