**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHANNON RUSSELL AGUIRRE, EDWARD BLOTNICKI III, SANDRA BURNS, JOHN BRILEY, BENJAMIN CARTER, TINA CASH, DANIEL DURGIN, STEFANIE EMERICK, TAWANA HUSTON, ERIC FISHON, ERICA PARKS, SARAH PATELLOS, ROMONA REED, CHRIS SMITH, KRISTIN STELEA, PEGGY TATUM, TIMOTHY THOMAS, CHRISTINA VAIN, and TIA WINSTON, on behalf of themselves and others similarly situated, | Case No. 1:19-cv-09577-SDA<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS TO PLAINTIFFS** |
| Plaintiffs, | |
| v. | |
| HELLO PRODUCTS, LLC, | |
| Defendant. | |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL AND PROCEDURAL HISTORY OF THE ACTION ....................................... 3

III.   THE PROPOSED SETTLEMENT ............................................................................ 3

       A.    The Settlement Fund ................................................................................ 4

       B.    Cash Payments ........................................................................................ 4

       C.    Injunctive Relief ...................................................................................... 5

       D.    Attorneys' Fees and Service Awards ...................................................... 6

IV.    THE REQUESTED ATTORNEYS' FEES AND EXPENSES ARE REASONABLE ......... 7

       A.    Standards for Awarding Attorneys' Fees ................................................ 7

       B.    The Requested Fee is Reasonable Under the Percentage Method .............. 8

       C.    The Reasonableness of the Requested Fee is Confirmed by the Lodestar Method ... 10

       D.    The *Goldberger* Factors Support the Requested Award of Attorneys' Fees ............. 13

             1.   The Time and Labor Expended by Plaintiffs' Counsel, Including a "Lodestar
                  Crosscheck," Support the Requested Fee ................................................. 13

             2.   The Magnitude and Complexity of the Action Supports Approval .......................... 14

             3.   The Risks of the Litigation Weigh in Favor of Approval ......................................... 15

             4.   The Quality of the Representation Favors Approval of Plaintiffs' Counsel's Fees ... 16

             5.   The Requested Fee in Relation to the Settlement Is Reasonable .............................. 16

             6.   Public Policy Considerations ...................................................................... 17

             7.   The Class's Reaction to the Fee Request .................................................... 18

V.     THE REQUESTED SERVICE AWARDS ARE APPROPRIATE .................................... 19

VI.    CONCLUSION ................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
  522 F.3d 182 (2d Cir. 2008)..................................................................................................10

*Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
  2012 WL 2064907 (S.D.N.Y. June 7, 2012)........................................................................10

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)................................................................................................................9

*Cates v. Trustees of Columbia Univ. in City of New York*,
  2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021) .................................................................17, 19

*Chatelain v. Prudential-Bache*,
  805 F. Supp. 209 (S.D.N.Y. 1992)........................................................................................16

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)..................................................................................................15

*Dupler v. Costco Wholesale Corp.*,
  705 F. Supp. 2d 231 (E.D.N.Y. 2010)...................................................................................20

*Fleisher v. Phoenix Life Ins. Co.*,
  2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)....................................................................8, 19

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)..........................................................................................15

*Friedman v. Quest Energy Partners LP*, No. CIV-,
  2010 WL 4925133 (W.D. Okla. Nov. 29, 2010)...................................................................13

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)..........................................................................................8, 10, 13

*Gonzalez v. Pritzker*,
  2016 WL 5395905 (S.D.N.Y. Sept. 20, 2016).......................................................................19

*Guippone v. BH S&B Holdings, LLC*,
  2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ........................................................................20

*Hicks v. Morgan Stanley & Co.*
  No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)…………………………10

*In re Am. Bank Note Holographics*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)...................................................................................15

*In re Citigroup Inc. Bond Litig.*,
  988 F. Supp.2d 371 (S.D.N.Y. 2013).....................................................................................14

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014).....................................................................................10

*In re Currency Conversion Fee Antitrust Litig.*,
  263 F.R.D. 110 (S.D.N.Y. 2009) ...........................................................................................20

*In re Excess Value Ins. Coverage Litig.*,
  598 F. Supp. 2d 380 (S.D.N.Y. 2005)......................................................................................9

*In re Facebook Biometric Info. Priv. Litig.*,
  2022 WL 822923 (9th Cir. Mar. 17, 2022) ...........................................................................11

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .........................................................................12

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................10
*In re Hi-Crush Partners L.P. Sec. Litig.*,
   2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...............................................18
*In re Honest Mktg. Litig.*,
   2017 WL 8780329 (S.D.N.Y. Dec. 8, 2017) ..................................................20
*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
   2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) ...............................................17
*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................................18
*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................14
*In re Nortel Networks Corp. Sec. Litig.*,
   539 F.3d 129 (2d Cir. 2008) ..............................................................................11
*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ............................................................16
*In re Philip Servs. Corp. Sec. Litig.*,
   2007 WL 959299 (S.D.N.Y. Mar. 28, 2007) ..................................................7
*In re Prudential Sec. Ltd. P'ships Litig.*,
   985 F. Supp. 410 (S.D.N.Y. 1997) ...................................................................15
*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*,
   997 F.3d 1077 (10th Cir. 2021) ........................................................................12
*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999) ...............................................................17
*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   724 F. Supp. 160 (S.D.N.Y. 1989) ...................................................................11
*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ...................................................................16
*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ........................................................8, 18
*Maley v. Dale Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .............................................................11
*Miltland Raleigh-Durham v. Myers*,
   840 F. Supp. 235 (S.D.N.Y. 1993) ...................................................................19
*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ............................................................................................11
*MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*,
   2017 WL 1194372 (S.D.N.Y. Mar. 30, 2017) ...............................................12
*Nakkhumpun v. Taylor*,
   2016 WL 11724397 (D. Colo. June 13, 2016) ...............................................13
*Sand v. Greenberg*,
   2011 WL 1338196 (S.D.N.Y. Mar. 22, 2011) ...............................................20
*Savoie v. Merchants Bank*,
   166 F.3d 456 (2d Cir. 1999) ...............................................................................8
*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...............................................17
*Silberblatt v. Morgan Stanley*,
   524 F.Supp.2d 425 (S.D.N.Y. Nov. 19, 2007) .............................................10

*Stanaford v. Genovese*,
    2015 WL 4930209 (S.D. Fla. Aug. 17, 2015)....................................................................13

*Strauss v. Little Fish Corp.*,
    19-cv-10158, 2020 WL 4041511 (S.D.N.Y. July 17, 2020)…………..……………………………9

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
    2004 WL 1087261...............................................................................................................15

*Velez v. Novartis Pharm. Corp.*,
    2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ......................................................................9

*Victor v. Argent Classic Convertible Arbitrage Fund L.P.*,
    623 F.3d 82 (2d Cir. 2010)...................................................................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)............................................................................................8, 11

## **Rules**

Federal Rule of Civil Procedure 23(f) ..................................................................................16

Plaintiffs Shannon Russell Aguirre, Edward Blotnicki III, Sandra Burns, John Briley, Benjamin Carter, Tina Cash, Daniel Durgin, Stefanie Emerick, Tawana Huston, Eric Fishon, Erica Parks, Sarah Patellos, Romona Reed, Chris Smith, Kristin Stelea, Peggy Tatum, Timothy Thomas, Christina Vain, and Tia Winston (collectively, "Plaintiffs"), submit this Memorandum of Law in support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards to Class Representatives (the "Motion").[1] [2]

## I.    INTRODUCTION

Plaintiffs Patellos and Fishon (sometimes referred to as "Class Representatives") and Defendant Hello Products, LLC ("Hello"), agreed to the proposed Settlement, which will provide immediate and significant benefits to the Settlement Class while avoiding the further delay and uncertainty of protracted litigation.  The Settlement represents an outstanding result for the Settlement Class, particularly in light of several obstacles Plaintiffs faced.

Pursuant to the Settlement Agreement (ECF No. 73-3), Class Members are eligible to receive significant monetary benefits. A Settlement Fund of $1,400,000.00 will be established by Hello. *See* SA, ¶ 4.02. An Authorized Claimant will be entitled to receive a payment of approximately six dollars ($6.00) from the Settlement Fund for each Product the Authorized Claimant purchased during the Class Period. *Id.* ¶ 4.02.  No additional proof of purchase will be required, other than attestation to the purchase(s) under penalty of perjury. *Id.* Those who do not

---

[1] Unless otherwise indicated, all capitalized terms shall have the same meaning ascribed to them in the Class Action Settlement Agreement (the "Settlement Agreement"). *See* generally Class Action Settlement Agreement, ECF No. 73-3. References to "SA, ¶ __" are to paragraphs in the Settlement Agreement.

[2] Defendant has informed Plaintiffs that while Defendant has reviewed the motion as to form and does not object to the relief sought by Plaintiffs in the context of this Settlement, it does not agree with Plaintiffs' characterization of their claims or this action, and Defendant reserves the right to contest any representations made by Plaintiffs herein as they relate to the merits of the lawsuit, the elements of class certification, or whether Plaintiffs should be entitled to any relief, including attorneys' fees, in connection with this action were it to proceed in litigation as opposed to settlement.

have proof of purchase will be limited to a reimbursement of five (5) products. *Id.* Members of the Settlement Class who do have proof of purchase will be permitted to make claims for up to ten (10) products. *Id.* Settlement Class Members may receive a pro rata adjustment upward or downward depending on the number of Valid Claims submitted. *Id.* Simpluris is currently calculating the amount each Authorized Claimant will receive. *See* Exhibit "A", First Supplemental Declaration of Amy Lechner of Simpluris, Inc. Regarding Claims Processing "Simpluris Supp. Decl.", ¶¶ 5–6.

The Settlement Agreement also provides injunctive relief. SA, ¶ 4.04. Hello has agreed to the following actions to remain in effect for two (2) years following the entry of the Final Approval Order: (1) it will not make any claims on packaging for the Charcoal Toothpastes that are not supported as required by law; (2) unless it acquires additional support than it currently has, it will not represent that activated charcoal is as a standalone ingredient a "detoxifier," although Hello may continue to represent that its charcoal Toothpastes detoxify bad breath; and (3) it will operate a telephone line, messaging system, or other mechanism for consumers with questions, complaints, or concerns about use of the Products. *Id.*

Class Counsel fought long and hard to secure these benefits for the Settlement Class, all on a contingency basis. As compensation for its attorneys' work, and in recognition of the risks it faced and the significant investment it made, Class Counsel request a collective attorney fee award of **$420,000.00**. As discussed herein, the requested fee award is reasonable and justified.

In addition, Class Counsel seek collective reimbursement of out-of-pocket litigation expenses incurred in connection with the prosecution of this action in the amount of **$21,300.90**. *See* Exhibit "B", Declaration of William B. Federman in Support of Plaintiffs' Motion for Final Approval of Class Settlement and Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards to Plaintiffs ("Federman Decl."), ¶¶ 19, 23. These expenses, include court filings fees, legal research fees, and mediation fees, which were reasonable

and necessary for the successful prosecution of the Action. *Id.* ¶ 23.

Finally, Class Counsel seek Service Awards of $3,500.00 each to Plaintiffs Patellos and Fishon, and a Service Award of $350.00 for each Other Claimant, for their considerable efforts and time spent on behalf of the Class (a combined total of $12,950.00). The requested service awards are reasonable and in line with awards granted in similar matters. The service awards are warranted consideration of the time the Plaintiffs have spent in furtherance of this Action, without which there would be no Settlement.

The Notices disseminated to the Settlement Class Members stated Class Counsel would apply for an award of attorney's fees not to exceed $420,000.00, plus reasonable expenses, and service awards to Plaintiffs Patellos and Fishon and each Other Claimant in the amounts stated above. *See* Exhibit "C", Declaration of Amy Lechmner of Simpluris Regarding Notice ("Simpluris Decl."), at Exhibit "B." No Class Member filed an objection to these requests. *Id.* ¶ 14. The favorable response of the Settlement Class provides further strong support for the reasonableness of the requested fee and expense award and the service awards to the Plaintiffs Patellos and Fishon and each Other Claimant.

## II.   FACTUAL AND PROCEDURAL HISTORY OF THE ACTION

In the interest of brevity, for a history of the factual and procedural background of this case and the events leading to the Settlement, Plaintiffs refer the Court to the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Motion for Final Approval"), filed contemporaneously herewith. *See also* Federman Decl., ¶¶ 3–5.

## III.   THE PROPOSED SETTLEMENT

The Settlement proposes to resolve the potential claims of thousands of individuals who purchased Hello's Charcoal Toothpastes. In exchange, the Settlement Agreement provides Defendant will contribute $1,400,000.00 to fund the Settlement Fund, which will be used to make

all Court-approved settlement payments, including, without limitation, Cash Awards, Notice and Administration Costs (except as described below), Attorneys' Fee and Expense Award(s), and Service Award(s). SA, ¶ 4.01. In addition, Hello will implement and maintain, for two (2) years measures to address Hello's Charcoal Toothpaste labeling. Finally, the Parties agreed to the payment of Attorneys' Fees and Service Awards out of the Settlement Fund, as described in more detail below. *Id.* ¶¶ 5.01–.02. These benefits represent an excellent recovery for the Settlement Class. It is unlikely Plaintiffs could have obtained more for the Settlement Class had they prevailed at trial.

### A.  The Settlement Fund

Pursuant to the Settlement Agreement, Hello will contribute $1,400,000.00 to an interest-bearing account, which shall constitute the Settlement Fund. *See id.* ¶¶ 4.02, 4.05. In addition to the Settlement Fund amount, Hello will also pay Notice Costs of up to $100,000.00 directly to the Settlement Administrator on an as-incurred basis. *Id.* ¶ 4.01. Any Notice Costs exceeding $100,000.00 will be paid from the Settlement Fund. *Id.* Hello's total potential financial contribution will not exceed $1,500,000.00. *Id.* Regardless of the number of Valid Claims submitted, the Settlement Fund, nor any portion thereof, will be returned or refunded to Defendant.[3]

The Settlement Fund will be used to pay the following, in the same order: (1) any necessary taxes and expenses; (2) all costs associated with the Settlement Administrator, including Notice Costs to the extent not already paid by Hello; (3) costs associated with processing claims, and all costs relating to providing CAFA Notice; (4) any Attorneys' Fee and Expense Award approved by the Court for Class Counsel; (5) any Service Award(s) approved by the Court; and (6) any Cash Awards to Authorized Claimants as allowed by this Settlement Agreement and approved by the Court. *Id.* ¶ 4.06.

---

[3] This is true unless the Settlement is terminated. *See* SA, ¶ 14.01–.03.

### B. Cash Payments

The Settlement Fund, established pursuant to the Settlement Agreement, will provide the following fair and reasonable cash payments to eligible Settlement Class Members:

Settlement Class Members with No Proof of Purchase: Settlement Class Members who submit a timely and valid Claim Form will be entitled to receive a payment of approximately $6.00 from the Settlement Fund for each Product the Settlement Class Member purchased during the Class Period. *See id.* ¶ 4.02. No proof of purchase will be required, but the Class Settlement Member must attest under penalty of perjury that the Settlement Class Member made the purchase. *Id.* Settlement Class Members with no proof of purchase will be permitted to make claims for up to five (5) Products. *Id.* Each household may only submit one Claim Form. *Id.*

Settlement Class Members with Proof of Purchase: Settlement Class Members who have proof of their purchases and provide such proof with a timely and valid Claim Form, will be permitted to make claims for up to (10) Products. *Id.* However, the same limit of one Claim Form per household still applies. *Id.*

All cash payments, regardless of proof of purchase, will be subject to a pro-rata adjustment. *Id.* ¶ 4.03. Settlement Class Members who submit a timely and valid Claim Form will receive a pro rata adjustment upward or downward from the estimated $6.00 per claim payment, depending on the number of Valid Claims that are submitted, and the amount of the Net Settlement Fund, to be calculated by the Settlement Administrator. *Id.* Simpluris is currently determining how much each Authorized Claimant will receive from the Settlement Fund. Simpluris Supp. Decl. ¶¶ 5–6.

The Settlement Administrator will send payments directly to each Authorized Claimant via physical check, PayPal, Venmo, Amazon, or electronic Automated Clearing House transactions within thirty (30) calendar days of the Effective Date. SA, ¶ 4.08. If a physical check is issued and not cashed within one hundred eighty (180) days from the date of issuance, the check will become

null and void, and the uncashed funds will be distributed to the National Indian Health Board. *Id.* ¶ 4.09. In the event the National Indian Health Board is unable or declines to accept these funds, the Parties will meet and confer and select a similar nonprofit organization to receive these funds. *Id.*

The above protocol for payments allows Class Members to receive reimbursement for purchases made, regardless of their ability to provide proof of those purchases. By doing so Class Members are afforded flexibility and relief that they would otherwise not likely be able to receive.

### C.  Injunctive Relief

The Settlement will also provide all Settlement Class Members with benefits in the form of injunctive relief relating to Hello's labeling of its Charcoal Toothpastes.

Hello has agreed to do the following actions following the entry of the Final Approval Order: (1) it will not make any claims on packaging for the Charcoal Toothpastes that are not supported as required by law; (2) unless it acquires additional support than it currently has, it will not represent that activated charcoal is as a standalone ingredient a "detoxifier," although Hello may continue to represent that its Charcoal Toothpastes detoxify bad breath; and (3) it will operate a telephone line, messaging system or other mechanism for consumers with questions, complaints or concerns about use of the Products. *Id.* ¶ 4.04.  The foregoing will remain in effect for two (2) years following the entry of the Final Order. *Id.*

### D.  Attorneys' Fees and Service Awards

The Settlement Agreement provides for reasonable attorneys' fees awards and Services Awards, upon the Court's approval.

Class Counsel is authorized to make an application to the Court for an award of reasonable attorneys' fees, which is not to exceed thirty percent (30.00%) of the Settlement Fund ($420,000.00), plus reasonable expenses incurred in the Action. *Id.* ¶ 5.02. If approved by the Court, this shall be paid from the Settlement Fund, will serve as the sole payment to Class Counsel.

*Id.*

Class Counsel is also authorized to petition the Court for an order permitting a Service Award of up to $3,500.00 for Plaintiffs Patellos and Fishon, and up to $350.00 for each Other Claimant (a combined total of $12,950.00). *Id.* ¶ 5.01. The Service Award(s) will be paid from the Settlement Fund within ten (10) days after the Effective Date. *Id.*

The above payments are subject to the Court's approval of the Settlement as fair, reasonable, adequate, and in the best interest of Settlement Class Members.

## IV.    THE REQUESTED ATTORNEYS' FEES AND EXPENSES ARE REASONABLE

The Settlement confers significant benefits on the Settlement Class.  In fact, the combined monetary value of the benefits made available to the Settlement Class Members is $1,500,000.00.[4] Thus, Class Counsel's requested award of attorneys' fees in the amount of $420,000.00, equals only twenty-eight percent (28.00%) of the total value of the benefits made available to the Settlement Class and a mere thirty percent (30.00%) of the Settlement Fund. *See id.* ¶ 5.02; Federman Decl., ¶ 19.  Moreover, the requested fee, if awarded, would result in only a slight multiplier of 1.09 of Plaintiffs' Counsel's current lodestar.[5]  As discussed further below, the requested fee is fair and reasonable.

### A.    Standards for Awarding Attorneys' Fees

Federal Rule of Civil Procedure 23(h) permits the Court to award reasonable attorneys' fees and expenses in class action settlements as authorized by law or the parties' agreement. *See* Fed. R. Civ. P. 23(h).  Here, Class Counsel's request for attorneys' fees and expense reimbursement is authorized by both law and by the Settlement Agreement. *See Victor v. Argent Classic Convertible*

---

[4] This number is derived by adding the amount of the Settlement Fund ($1,400,000.00) plus an additional $100,000.00 contributed towards Notice costs by Hello. SA, ¶¶ 4.01–.02.
[5] This number is derived by dividing the total requested fee ($420,000.00) by the lodestar ($385,856.50).

*Arbitrage Fund L.P.,* 623 F.3d 82, 86 (2d Cir. 2010) ("It is well established that the common fund doctrine permits attorneys whose work created a common fund for the benefit of a group of plaintiffs to receive reasonable attorneys' fees from the fund…Class action lawsuits are the prototypical example of instances where the common fund doctrine can apply."); *In re Philip Servs. Corp. Sec. Litig.*, No. 98 Civ. 835, 2007 WL 959299, at *1 (S.D.N.Y. Mar. 28, 2007) (where "an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class, . . . the attorney is entitled to the reasonable value of the services performed in creating that class recovery, as set by the court").

According to the Second Circuit, courts may use one of two methods to determine what constitutes a reasonable attorneys' fee: the "percentage of the fund" method or the "lodestar" method. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005). The Second Circuit has acknowledged, however, that "the trend in this Circuit is toward the percentage method[.]" *Id.*; *see also Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 47 (2d Cir. 2000) (expressing a preference for the percentage method because "the lodestar method proved vexing" and resulted in "an inevitable waste of judicial resources"); *Savoie v. Merchants Bank,* 166 F.3d 456, 460 (2d Cir. 1999) (similar).

Regardless of whether the Court applies the percentage or lodestar method here, its ultimate task is to ensure that the fees awarded are "reasonable" under the circumstances. *Goldberger*, 209 F.3d at 47. The determination of "reasonableness" is within the Court's discretion. *Id.*; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005). The requested $420,000.00 in attorneys' fees is reasonable under the circumstances presented here. Class Counsel has devoted hundreds of hours to this case to obtain a favorable result for the Class. *See* Federman Decl., ¶ 19.

### B.    The Requested Fee is Reasonable Under the Percentage Method

As discussed above, the prevailing method for evaluating attorneys' fees in this Circuit is

the percentage of the fund approach.  Under this method, courts assess whether the requested fee is a reasonable percentage of the recovery obtained in the settlement. "'The federal courts have established that a standard fee in complex class action cases like this one, where plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit, which includes the value of both monetary and nonmonetary relief, and '[d]istrict courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater.'" *Fleisher v. Phoenix Life Ins. Co.*, No. 11-8405, 2015 WL 10847814, at *12 (S.D.N.Y. Sept. 9, 2015) (quoting *Velez v. Novartis Pharm. Corp.*, No. 04-09194, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010).

It is appropriate to base the percentage on the full amount, i.e., the gross compensation available for the Settlement Class Members to claim plus the additional benefits conferred on the Settlement Class by Defendants' payment of attorneys' fees and litigation expenses and the Notice and Settlement Administration Costs. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980) ("Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery.").

Here, Defendant has agreed to establish a Settlement Fund of $1,400,000.00, and also agreed to contribute an additional amount of $100,000.00 towards Notice Costs. SA, ¶ 4.01. The requested award of $420,000.00 in attorneys' fees is reasonable under the percentage of the fund method because it only equates to 30.00% of the Settlement Fund and a meager 28.00% of the total value of the benefits conferred to the Settlement Class. This does not even include the additional value provided to the Class by way of the injunctive relief.  *See id.* ¶ 4.04; *In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d 380, 387 (S.D.N.Y. 2005) (courts should consider the benefit of injunctive relief as relevant to determining what percentage of the common fund to allocate to

attorneys' fees). Pursuant to the terms of the Settlement Agreement, the Parties agreed Class Counsel was authorized to make an application to the Court for an award of reasonable attorneys' fees of up to thirty percent (30.00%) of the Settlement Fund. SA, ¶ 5.02. Thirty percent of the Settlement Fund equates to $420,000.00, which is the amount Plaintiffs' request in fees. Accordingly, the $420,000 attorneys' fee request is decidedly modest, particularly considering that "[d]istrict courts in this Circuit typically approve fee requests between 30% and 33% of the settlement." *Strauss v. Little Fish Corp.*, 19-cv-10158, 2020 WL 4041511, at *9 n.1 (S.D.N.Y. July 17, 2020) (collecting cases)); *Hicks v. Morgan Stanley & Co.,* No. 01 Civ. 10071, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005) (awarding 30% of $10 million settlement fund, explaining that a "30% fee is consistent with fees awarded in comparable class action settlements in the Second Circuit" and "does not produce a windfall"). When viewed in this context, it is evident that Class Counsel's requested fee is reasonable.

### C.   The Reasonableness of the Requested Fee is Confirmed by the Lodestar Method

Courts in the Second Circuit often perform a lodestar cross-check to ensure an otherwise reasonable percentage fee would result in a windfall. *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014). The lodestar method consists of multiplying the number of hours devoted by counsel by the normal, non-contingent hourly billing rate of counsel. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). Of course, where the lodestar is used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, No. 09-686, 2012 WL 2064907, at *2 (S.D.N.Y. June 7, 2012) (quoting *Goldberger*, 209 F.3d at 50). "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case (as well as encouraged by the strictures of Rule 11)." *Silberblatt v. Morgan Stanley*, 524 F.Supp.2d 425, 434 (S.D.N.Y. Nov. 19, 2007) (internal citations

omitted).

Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id*. (citing *Goldberger*, 209 F.3d at 47).

Performing the lodestar cross-check here confirms that the fee requested by Class Counsel is reasonable and should be approved.  In this entirely contingent action, Plaintiffs' Counsel expended  over 700 hours of professional time in investigating, prosecuting and ultimately settling these claims.[6]  *See* Federman Decl., ¶ 19.  Plaintiffs' Counsel's total current lodestar — derived by multiplying these hours by the firm's current hourly rates[7] for its attorneys and professional staff — is $385,856.50.  *Id*. This does not include future work to be done by Class Counsel in following up on the claims process and interfacing the Claims Administrator and Class Members.

The next step is to calculate the lodestar multiplier. The lodestar multiplier is calculated by dividing the fee award by the lodestar. Thus, the total requested fee here represents a modest lodestar multiplier of 1.09.[8]  This is notably lower than the usual multiplier typically awarded in this Circuit and others.  *See, e.g., In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 134 (2d Cir. 2008) (holding that a $34 million fee award, representing a 2.04 multiplier, was "toward the lower end of reasonable fee awards"); *Wal-Mart*, 396 F.3d at 123 (approving multiplier of 3.5 on

---

[6] This does **not** include entire amount of time spent preparing the fee application nor the time that was excluded based on billing judgment.  *See* Federman Decl., ¶ 18.

[7] The Supreme Court has approved use of current rates in the lodestar calculation. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989). Using current rates "compensate[s] for the delay in receiving compensation, the inflationary losses, and the loss of interest." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989) (citation omitted).

[8] This number was calculated by divding $420,000 (fee award) by $385,856.50 (lodestar), which equals 1.09 (lodestar multiplier).

appeal); *Maley v. Dale Global Techs. Corp.*, 186 F. Supp. 2d 358, 369-71 (S.D.N.Y. 2002) (describing a 4.65 lodestar multiple as "modest" and "well within the range awarded by courts in this Circuit and courts throughout the country"); *see also In re Facebook Biometric Info. Priv. Litig.*, 2022 WL 822923, at *1–2 (9th Cir. Mar. 17, 2022) (affirming 4.71 multiplier in class action privacy case).

The 704.80 hours expended by Plaintiffs' Counsel were devoted on a contingent basis and were necessary to the successful litigation of this Action. In particular, Plaintiffs' Counsel, *inter alia*: (1) researched and drafted multiple complaints; (2) negotiated and presented a proposed management structure for the various cases to be consolidated into one action; (3) researched and prepared the consolidated complaint and amended consolidated complaints; (4) prepared opposition briefing in response to Defendant's motion to dismiss; (5) conducted informal discovery, including the review of hundreds of pages of relevant documents and information; (6) preparing a thorough mediation statement and settlement demand; (7) participated in two Zoom mediation sessions with Magistrate Judge Stewart Aaron; (8) engaged in post-mediation settlement negotiations with Defendant, which also involved numerous conversations with, and input obtained from, each of the Plaintiffs; (9) reached agreement on the settlement in principle; (10) obtained and reviewed proposals from various potential claims administrators; (11) drafted and negotiated the settlement agreement and the exhibits thereto, including the notices and claim form; (12) prepared and filed the motions to approve the Settlement and the supporting documents; and (13) has been overseeing the settlement process, including communicating with Settlement Class Members who have questions about the Settlement and/or the claims process. *See* Federman Decl., ¶ 16.

In addition, the rates billed by Plaintiffs' Counsel, ranging from $250.00 to $900.00 per hour for attorneys, (*Id.* ¶ 19), are similar to billing rates approved by judges in this District in the

last several years, and market rates have only risen since then. *See MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, No. 16-8103, 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (approving hourly rates of over $1,000 an hour as "not uncommon" in complex litigation); *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02 Civ. 3400, 2010 WL 4537550, at *25 (S.D.N.Y. Nov. 8, 2010) (approving attorney billing rates similar to those of Plaintiffs' Counsel and emphasizing that "the *median* billing rate for partners at many leading law firms exceeds $900/hour") (emphasis in original). Further, Class Counsel's billing rates have been evaluated and found to be reasonable by numerous courts across the country. *See, e.g., In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 997 F.3d 1077, 1095 (10th Cir. 2021) (affirming district court's fee award, wherein the district court found Federman & Sherwood's billing rates to be reasonable); *Nakkhumpun v. Taylor*, No. 12-CV-01038-CMA-CBS, 2016 WL 11724397, at *5 (D. Colo. June 13, 2016) (finding Federman & Sherwood's billings reasonable and approving fee request); *Stanaford v. Genovese*, No. 9:13-CV-80923 (KLR), 2015 WL 4930209, at *1 (S.D. Fla. Aug. 17, 2015) (same); *Friedman v. Quest Energy Partners LP*, No. CIV-08-1025-M, 2010 WL 4925133, at *6 (W.D. Okla. Nov. 29, 2010) (same).

Here, the requested fee award of $420,000.00 closely tracks Plaintiffs' Counsel's total current lodestar of $385,856.50, which does not include all time spent on this Motion nor time that will be required to finalize the Settlement. *See* Federman Decl., ¶ 18. Indeed, if the requested fee is awarded, it would result in only a slim multiplier of 1.09, not including additional work to be done in the future. Accordingly, the lodestar cross-check confirms that the requested fee is reasonable and approvable.

### D.    The *Goldberger* Factors Support the Requested Award of Attorneys' Fees

Under either the lodestar multiplier approach or the percentage of the common fund approach, the "*Goldberger* factors" ultimately determine the reasonableness of a fee request.

*Goldberger*, 209 F.3d at 50. These include: (1) time and labor expended by counsel; (2) magnitude and complexity of the litigation; (3) risks of the litigation; (4) requested fee in relation to the settlement; (5) quality of representation; and (6) public policy considerations. *Id.*

Although none of the *Goldberger* factors is controlling, each of the foregoing factors weighs strongly in favor of approving the requested fee.

### 1. The Time and Labor Expended by Plaintiffs' Counsel, Including a "Lodestar Crosscheck," Support the Requested Fee

As discussed above, Plaintiffs' Counsel devoted over 700 hours to this Action, yielding a "lodestar" amount of $385,856.50. *See* Federman Decl., ¶ 19. The many hours expended by Class Counsel, which resulted in the favorable Settlement, are plainly reasonable in view of the work performed in this complex action. Class Counsel spent significant time and effort thoroughly investigating and litigating the case, successfully opposing Defendant's motions to dismiss, conducting informal discovery, assessing the strengths and weaknesses of the claims and defenses, and effectively and efficiently settling the litigation on terms highly beneficial to the Settlement Class. *See id.* ¶ 5.

Again, based on the requested fee award, Counsel's current lodestar of $385,856.50 would yield a very modest multiplier of approximately 1.09. The substantial time and effort devoted to this case by Class Counsel to obtain the extremely valuable Settlement confirms the fee request is reasonable.

### 2. The Magnitude and Complexity of the Action Supports Approval

The magnitude and complexity factor also supports the requested award. "[C]lass actions 'have a well-deserved reputation as being most complex.'" *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998). And because class actions require more expertise, counsel who volunteer to represent a class deserve a larger fee. *See In re Citigroup Inc. Bond Litig.*, 988 F. Supp.2d 371, 379 (S.D.N.Y. 2013) ("The upshot is that the magnitude and complexity of

14

the litigation also weigh in favor of a significant award."). This litigation is no exception.

This Action raised complex issues of law and fact that required great skill to maneuver. Indeed, defense counsel pursued numerous avenues of legal and factual attacks against the named Plaintiffs and the claims, as demonstrated by the briefs Hello filed in this action. While Plaintiffs were successful in surviving these challenges, that result was no foregone conclusion. And although Plaintiffs and Class Counsel believe their claims could have ultimately prevailed on the merits, the factual and legal issues involved in this dispute are unquestionably complex and it is far from clear what the result would be if the case had proceeded to trial. *See, e.g., NASDAQ Mkt.- Makers Antitrust Litig.*, 187 F.R.D. at 477 ("There can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result."). Plaintiffs and Class Counsel are also cognizant of the time and expense that would have been required to prosecute this Action through class certification, summary judgment, trial, and any subsequent appeals. Accordingly, this factor weighs in favor of final approval.

### 3. The Risks of the Litigation Weigh in Favor of Approval

The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted). "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. v. A.C.L.N., Ltd.,* No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (finding that it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Sec. Ltd. P'ships Litig.,* 985 F. Supp.

15

410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").

Here, Class Counsel undertook this Action on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute the action without a guarantee of compensation or even the recovery of out-of-pocket expenses. At the time of filing of this litigation, there were many complex issues of fact and law that could potentially undermine Plaintiffs' ability to succeed on the merits, including the risk that Hello would be successful in its aggressive motions to dismiss. In addition, Plaintiffs also faced significant hurdles to class certification. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory"). And even if Plaintiffs were successful in obtaining class certification, Defendant could have appealed the certification decision under Federal Rule of Civil Procedure 23(f) and argued for decertification. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification.").

Class Counsel is also cognizant that bringing any case to trial involves inherent risks, including the possibility that the jury fails to return a unanimous verdict in Plaintiffs' favor. Moreover, in complex litigation, even a victory at trial does not spell ultimate success. Both trial and judicial review are unpredictable and can erode a recovery or eliminate it altogether. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747-48 (S.D.N.Y. 1985).

The outcome of this Action was far from predestined. Class Counsel worked diligently to achieve an excellent result in the face of substantial risks. Accordingly, this factor also weighs in favor of awarding the requested fee. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 991 F. Supp. 2d 437, 441 (E.D.N.Y. 2014) ("Counsel should be rewarded for undertaking [those risks] and for achieving substantial value for the class.").

16

**4.      The Quality of the Representation Favors Approval of Plaintiffs' Counsel's Fees**

Class Counsel also submit that the quality of their representation supports the reasonableness of the requested fee.  Class Counsel has many years of experience in complex litigation of data breaches and other class actions.  *See* Federman Decl., at Exhibits 1–2.  In this case, Class Counsel worked diligently and efficiently to prosecute the action against Defendant. Class Counsel's ability to obtain a substantial recovery from a well-funded opponent like Defendant represented by zealous and highly competent counsel is a testament to the skill with which Class Counsel have prosecuted this case.

**5.      The Requested Fee in Relation to the Settlement Is Reasonable**

The next *Goldberger* factor compares the requested fee award to the Settlement. "Courts have interpreted this factor as requiring the review of the fee request in terms of the percentage it represents of the total recovery."  *Cates v. Trustees of Columbia Univ. in City of New York*, 2021 WL 4847890, at *7 (S.D.N.Y. Oct. 18, 2021) (finding class counsel's request for one-third of $13 million settlement fund, or $4,333,333.33, to be reasonable).

As described herein, the requested fee amounts to thirty percent (30.00%) of the Settlement Fund available to the Settlement Class.  This falls well within the range of fees awarded in settlements of similar class actions. *See, e.g., id.* ("Courts in this District routinely approve fee awards of one-third of the common fund or more.") (collecting cases); *see also* Section IV.B, *supra* (discussing relevant cases). Considering the percentage amount and lodestar multipliers of the vast majority of fee awards, the requested fee is reasonable.

**6.      Public Policy Considerations**

The public policy factor also supports Plaintiffs' requested fee award. "In awarding attorneys' fees in common fund cases 'the Second Circuit and courts in this district ... also have taken into account the social and economic value of class actions, and the need to encourage

17

experienced and able counsel to undertake such litigation.'" *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2019 WL 4734396, at *3 (S.D.N.Y. Sept. 23, 2019) (quoting *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999)). "Attorneys' fees should 'reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.'" *Id.* Fee awards "should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *Id.* (quoting *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *18 (S.D.N.Y. Mar. 24, 2014)).

Here, Class Counsel obtained a favorable settlement in an efficient manner. Without private counsel taking on the risk of this lawsuit and having the skill and resources to pursue the claims vigorously, the Settlement Class here would have recovered nothing, and important public interests would not have been vindicated. Awarding a reasonable percentage of the common fund properly incentivizes skilled counsel to bring meritorious cases even where, at the outset, the prospect of any recovery is uncertain, and the costs are daunting. *See WorldCom*, 388 F. Supp. 2d, at 359 ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."). Approval of the requested fees and expenses would be fully consistent with these important public policy considerations.

### 7. The Class's Reaction to the Fee Request

"In addition to the criteria set forth in *Goldberger*, courts in the Second Circuit consider the reaction of the class to the fee request in deciding how large a fee to award." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *18 (S.D.N.Y. Dec. 19, 2014).

The Notices informed members of the Settlement Class that Class Counsel intended to seek an award of attorney's fees not to exceed a total of $420,000 plus other reasonable costs and

expenses. *See* Simpluris Decl., at Ex. "B."  No Settlement Class Member objected to this fee and expense request. *Id.* ¶ 14.  The absence of any objection to the fee request from any Class Members strongly militates in favor of the fee request.

### E.  The Request for Reimbursement of Litigation Expenses is Reasonable

In addition to a reasonable fee award, Class Counsel respectfully seeks reimbursement of $21,300.90 in litigation expenses reasonably and necessarily incurred in prosecuting the Action. Federman Decl., ¶ 23.  It is well accepted that in the context of a class settlement, "[a]ttorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients."  *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010) (ordering reimbursement of requested expenses) (quoting *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)).

Class Counsel has submitted its declaration attesting to the accuracy of their expenses and itemizing the various categories of expenses incurred.  Federman Decl., ¶ 23.  These expenses were reasonable and necessary in this Action and include such costs as fees paid for legal research, filing fees, investigation of the claims, and copying costs in connection with this Action.  *See Cates*, 2021 WL 4847890, at *8 ("Reimbursable expenses include expert fees, travel, conference telephone, postage, delivery services, and computerized legal research."); *see also Fleisher*, 2015 WL 10847814, at *23 (noting as typical expenses in complex cases "fees paid to experts, mediation fees, notice costs, computerized research, document production and storage, court fees, reporting services, and travel in connection with th[e] litigation").  Moreover, these expenses are of the type typically billed by attorneys to paying clients in the marketplace. The litigation expenses were reasonably incurred in this Action, and Class Counsel respectfully request that they be reimbursed.

### V.  THE REQUESTED SERVICE AWARDS ARE APPROPRIATE

Finally, Class Counsel seek service awards of $3,500 each to Plaintiffs Patellos and Fishon

in recognition of their service and diligence in protecting the interests of absent Settlement Class Members. Class Counsel also seek an award of $350.00 for each Other Claimant. This results in a combined total of $12,950.00 in requested Service Awards. "Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a named plaintiff, and any other burdens sustained by the plaintiffs." *Gonzalez v. Pritzker*, No. 10-3105, 2016 WL 5395905, at *5 (S.D.N.Y. Sept. 20, 2016) (awarding $10,000 awards to each of the ten named plaintiffs).

Here, Plaintiffs Patellos and Fishon invested a significant amount of time representing the Class throughout the course of the litigation. They took personal time to provide detailed information to Class Counsel — information that became the basis for the Class allegations. They reviewed the complaints and other pleadings prior to filing. They also devoted several hours to regularly communicating with Class Counsel throughout the litigation. In addition, they were very involved in the settlement negotiations and frequently coordinated with Class Counsel about the specific terms for a potential class settlement. *See* Federman Decl., ¶¶ 26–27.

Each Other Claimant also performed an important and valuable service for the benefit of the Settlement Class. Each met, conferred, and corresponded with Plaintiff's Counsel as needed for the efficient process of this litigation. *Id.*

The sacrifices of time and the reputational risk undertaken by the Class Representatives and each Other Claimant in furtherance of this Action on behalf of absent Class Members warrants the Court's approval of the requested service awards. The requested awards of $3,500.00 for the Plaintiffs and $350.00 for each Other Claimant are well below amounts that courts in the Second Circuit ordinarily grant in similarly complex class actions. *See, e.g.*, *In re Honest Mktg. Litig.*, No. 16-01125, 2017 WL 8780329, at *2 (S.D.N.Y. Dec. 8, 2017) (awarding each of the nine named

plaintiffs $5,000 in light of the risks they faced commencing the action, time and effort spent assisting counsel litigate, and their public interest service); *Guippone v. BH S&B Holdings, LLC*, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) (approving $10,000 award in a settlement of approximately $900,000 for a class of approximately 300 members); *Sand v. Greenberg*, 2011 WL 1338196 (S.D.N.Y. Mar. 22, 2011) (finding $10,000 service award "reasonable" and "very similar to allocation plans that courts routinely approve in the context of settlement"); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245-46 (E.D.N.Y. 2010) (awarding $25,000 to lead plaintiff in consumer class action and $5,000 to another plaintiff); *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 131 (S.D.N.Y. 2009) (holding that $45,000 and $35,000 service awards are "within the range of what other courts have found to be reasonable"). In fact, the requested awards are considerably less than amounts awarded by this very Court in complex litigation. *See Beach v. JPMorgan Chase Bank et al.,* 17-CV-00563, slip op. (Oct. 7, 2020) (Furman, J.) (awarding service awards in the amount of $10,000 to each of the four plaintiffs).

The very favorable Settlement would not have been achieved without the efforts and commitments of Plaintiffs and each Other Claimant. Given their contributions to the successful prosecution of this Action, Plaintiffs should each be granted well-deserved service awards of $3,500.00 and each Other Claimant should be awarded $350.00.

## VI.   CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court grant their motion for an award of attorneys' fees, litigation expenses, and service awards to Plaintiffs.

Dated: December 6, 2022

Respectfully submitted,

/s/ *William B. Federman*
William B. Federman
(S.D. New York #WF9124)
FEDERMAN & SHERWOOD

21

10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com


David Pastor, admitted *pro hac vice*
Pastor Law Office, LLP
63 Atlantic Avenue, 3rd Fl.
Boston, MA 02110
(617) 724-9700
Dpastor@pastorlawoffice.com

*Counsel for Plaintiffs and the Proposed Class*

**C**ERTIFICATE OF **S**ERVICE

     I hereby certify that on December 6, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

                                  /s/ *William B. Federman*
                                  William B. Federman